UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. B-03-120 |
| FORD MOTOR COMPANY, AND AUTOMOTRIZ DEL NORESTE, S.A. DE C.V. | § § § § | |
| Defendants. | § § | |

**DEFENDANT FORD MOTOR COMPANY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT – DECEPTIVE TRADE PRACTICES ACT CLAIMS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

In accordance with FED. R. CIV. P. 56, defendant, Ford Motor Company ("Ford"), moves the Court for summary judgment on plaintiffs' pled claims for recovery under the Texas Deceptive Trade Practices – Consumer Protection Act. As grounds therefor, Ford shows –

1.     STATEMENT OF MATERIAL FACTS.

    (a)    This is a product liability case arising out of a rollover accident involving a 2000 Ford Explorer;

    (b)    The accident occurred on January 11, 2003;

    (c)    Plaintiffs seek recovery of damages under the Texas Deceptive Trade Practices Act;

    (d)    The vehicle in question was purchased in Mexico;

    (e)    The purchaser of the vehicle is not a party to this lawsuit;

    (f)    There is a "lack-of-privity" between the plaintiffs in this lawsuit and the sale of this vehicle by Ford Motor Company as the product manufacturer;

    (g)    There is no evidence of any representation, much less a misrepresentation by Ford Motor Company, respecting this vehicle to any plaintiff.

2.   **DECEPTIVE TRADE PRACTICES ACT ("DTPA") CLAIMS.**

In their Original Petition, plaintiffs allege that they are entitled to recover money damages because their alleged vehicle design defects are violations of the Texas Deceptive Trade Practices – Consumer Protection Act:

### X.

### DECEPTIVE TRADE PRACTICE

Defendants are further liable for violation of Section 17.46 and Sections 17.50(a)(1)(2) and other sections of the Texas Deceptive Trade Practices Act (DTPA, TEX. BUS. & COM. CODE ANN.), which violations were a producing cause of the occurrence in question and include:

A.  Representations that the products in question, and their component parts, possessed qualities, characteristics, uses and benefits which they did not possess; and

B.  Representations that the products in question, and their component parts, were merchantable when, in fact, they were not fit for the ordinary purposes for which such products were to be used.

Further, Defendants' conduct was done knowingly and/or intentionally. Defendants have been provided notice of their breach of warranty, of their violation of the Deceptive Trade Practices Act and Plaintiffs' damages pursuant to Section 17.50(a) *et seq* of the DTPA. Under the Deceptive Trade Practices Act, Defendants, as a result of its knowing breach of express and implied warranties, are liable for the actual damages suffered by Plaintiffs, plus additional amounts awarded by the trier of fact and pursuant to Section 17.50(b)(2) of the Deceptive Trade Practices Act, as well as court costs and reasonable attorneys fees.

Plaintiffs' Original Petition at ¶ X, pages 8-9.

2

3.  **ELEMENTS OF A DTPA CLAIM.**

The basic elements of a DTPA action for failure to disclose material information and for misrepresentations are:

(a) The plaintiff is a consumer;

(b) The defendant engaged in a false, misleading, or deceptive act that is specifically enumerated in a subdivision of section 17.46(b); and

(c) The act constituted a producing cause of the consumer's damages.

TEX. BUS. & COM. CODE § 17.50(a)(1); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

In addition to those elements, plaintiffs, to recover under the DTPA on their breach of warranty claims, must also show: (a) the existence of the warranty; (b) breach of the warranty, and (c) the breach was a producing cause of damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a); *Johnston v. McKinney American, Inc.*, 9 S.W.3d 271, 282 (Tex. App. – Houston [1st Dist.] 1999, pet. denied). Further, to show a breach of warranty, plaintiffs must show: (d) the goods suffer from a defect that renders them unfit because of a lack of something necessary for adequacy. *Church & Dwight Co., Inc. v. Huey*, 961 S.W.2d 560, 569 (Tex. App. – San Antonio 1997, pet. denied)[1].

By virtue of the 1995 amendments to the Texas Deceptive Trade Practice – Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41, et seq., recovery under the DTPA is limited to "economic damages" (defined as pecuniary loss). A plaintiff or claimant seeking recovery under the DTPA *may not* recover damages for physical pain, loss of consortium, disfigurement, physical impairment, or loss of companionship and society. Limited recovery of mental anguish

---

[1] These additional elements are required because the DTPA does not create warranties; rather they must be established independently of the DTPA. *McDade v. Texas Comm. Bank*, 822 S.W.2d 713, 718 (Tex. App. – Houston [1st Dist.] 1991, writ denied).

3

damages is, however, available if the trier of fact first finds that the defendant's conduct was committed intentionally. TEX. BUS. & COM. CODE § 17.50(b)(i).

In addition to the proof requirements under TEX. BUS. & COM. CODE ch. 17, when as here the claims involve "design defects," the existence of a "safer alternative design" must be shown. *See* TEX. CIV. PRAC. & REM. CODE §§ 82.001(2) and 82.005; *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661 (Tex. 1991). A "products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death…allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." TEX. CIV. PRAC. & REM. CODE § 82.001. Plaintiffs' DTPA claims fall squarely within the definition of a "products liability action." Section 82.005 then provides that "[i]n a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that…there was a "safer alternative design." That term has a specific meaning under Texas law. It is a product design other than the one actually used that in reasonable probability (a) "would have prevented or significantly reduced the risk of the claimant's personal injury…or death without substantially impairing the product's utility;" and (b) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge." *See* TEX. CIV. PRAC. & REM. CODE § 82.005(b).

**4.    NO EVIDENCE OF ACTIONABLE DTPA CONDUCT.**

There is no evidence that Ford engaged in any deceptive advertising. There is no evidence of any misrepresentation.

Here, plaintiffs have no evidence to show that: (1) any plaintiff is a "consumer" under the DTPA: (2) Ford engaged in false, misleading, or deceptive acts; (3) those alleged acts were a

4

producing cause of plaintiffs' injuries; (4) any warranty was breached; (5) such alleged breach was a producing cause of plaintiffs' injuries; (6) that the vehicle or its component parts suffered from any defect that rendered it (them) unfit; or (7) that Ford's conduct was "intentional." For these reasons, summary judgment on plaintiffs' DTPA claims is proper.

With respect to each and every one of plaintiffs' claimed "design defects," which plaintiffs also claim is a DTPA violation, they must show a "safer alternative design." There is no evidence which will allow them to meet that burden.

5.   **PLAINTIFFS ARE NOT "CONSUMERS" UNDER THE DTPA.**

The claims of the Plaintiffs are brought under the Texas Wrongful Death Act for the death of Betty Payan. These claims are derivative in nature, so any defense that would have been available against the decedent is available against the beneficiaries. *See Russell v. Ingersol-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992); *Felan v. Ramos*, 857 S.W.2d 113, 118 (Tex.App.—Corpus Christi 1993, writ denied). Additionally, Sally Payan, a passenger in the vehicle, has asserted a direct claim against Ford under the DTPA based on her own personal injuries. (Ford has moved in a separate motion for summary judgment as to those claims based on lack of any personal injuries to Sally Payan.)

In order to bring a DTPA claim, a plaintiff must establish its status as a "consumer." Proving consumer status under the DTPA requires, in part, that plaintiff prove that it "sought or acquired, by purchase or lease," goods or services. TEX.BUS.& COM. CODE § 17.45(4). Whether a plaintiff is a "consumer" is a question of law. *See Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex.App.—San Antonio 2002, pet. denied).

The word "sought" is defined to include a search for or an effort to locate or discover goods or services. *See, e.g., Herrin v. Medical Protective Co.*, 89 S.W.3d 301, 310 (Tex.App.—Texarkana 2002, pet. denied); *Nast v. State Farm*, 82 S.W.3d 114, 123 (Tex.App.—San Antonio

5

2002, no pet.); *Williams v. Hills Fitness Center*, 705 S.W.2d 189, 191 (Tex.App.—Texarkana 1985, writ ref'd. n.r.e.). When goods or services are sought, the plaintiff must show that it initiated the purchasing process in good faith by proving that it (1) presented itself to the seller as a willing buyer with the subjective intent or specific objective of purchasing, and (2) possessed at least some credible indications of the capacity to consummate the transaction. *Houston v. Mike Black Auto Sales*, 788 S.W.2d 696, 699 (Tex.App.—Corpus Christi 1990, no writ.); *Martin v. Lou Poliquin Enters.*, 696 S.W.2d 180, 184-85 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

The word "acquired" is defined to include the purchase of goods or services by the plaintiff or by others. In most cases, the plaintiff is the consumer who acquired the goods or services that are the subject of the lawsuit. In some cases, the plaintiff does not need to be the one who actually acquires the goods or services. Under the DTPA, the plaintiff can "acquire" goods or services that have been purchased by another. **When someone other than the plaintiff acquired the goods or services, the plaintiff must establish the primary purpose of the acquisition was to benefit the plaintiff.** *Bohls*, 75 S.W.3d at 479; *Clark Equip. Co. v. Pitner*, 923 S.W.2d 117, 127-28 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *see, e.g., Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex. 1997) (buyer of business was consumer of accounting services, even though seller paid for audit, because buyer required seller to secure audit for buyer's benefit); *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex. 1985) (employee was consumer of insurance policy that employer paid for); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 408 (Tex.App.—Houston [14th Dist.] 1997, writ dism'd) (beneficiaries of estate were not consumers because law firm's services were not obtained primarily for beneficiaries' benefit).

6

Here, neither decedent Betty Payan (through whom the Plaintiffs' wrongful death claims are derived) nor passenger Sally Payan have "consumer" status. The Explorer that Betty Payan was driving was not her vehicle, but was rather the vehicle allegedly owned by her mother, Isabel Ennis Reynoso, a/k/a Betty Reynoso (*Deposition of Sally Payan*, Exhibit 1, at 25). Actually, the vehicle was purchased by a third party, Susanna Reynoso, from a Ford dealership in Matamoras, Mexico for Betty Reynoso's use (*Id.* at 31; Deposition of Enrique Payan, Exhibit 2, at 35). In fact, Betty Reynoso was not even present at the dealership for purchase of the Explorer. (Deposition of Sally Payan at 26.) The primary driver of the Explorer was Betty Reynoso's hired driver (*Id.* at 33). The only other people who would regularly drive the vehicle besides Betty Reynoso's driver were Susanna Reynoso and another third party, Betty Filizola, but even they would drive the vehicle "not often at all." (*Id.* at 34). Before the time of the accident, Sally Payan had only been in the Explorer for one other trip. (*Id.* at 34-35). There is no evidence that decedent Betty Payan ever used the Explorer before the day of the accident, or that she had anything to do with its purchase. Neither Sally Payan, Enrique Payan, or Betty Payan had anything to do with the purchase of the Explorer. (*Id.* at 26; Deposition of Enrique Payan at 20).

The summary judgment evidence clearly shows that the primary purpose of the purchase of the Explorer was not to benefit Betty Payan or Sally Payan. Therefore, they did not have consumer status under the DTPA. Numerous courts have analyzed virtually identical fact situations and have made the same determination. *See, e.g., Chamrad v. Volvo Cars of North America*, 145 F.3d 671 (5th Cir. 1998); *Rodriguez v. Ed Hicks Imports*, 767 S.W.2d 187 (Tex.App.—Corpus Christi 1989, no writ).

In *Chamrad*, plaintiff James Chamrad was injured in a vehicle accident. He sued the manufacturer of the vehicle, Volvo. The Volvo was purchased by Chamrad's girlfriend, who

7

paid for the car and put the title in her name. Although Chamrad visited some Volvo dealerships with his girlfriend in the course of helping her evaluate which vehicle to purchase, he never visited the dealership where the Volvo was actually purchased. At all relevant times, Chamrad owned his own vehicle, and the Volvo belonged to his girlfriend and was for her use.

After analyzing relevant Fifth Circuit and Texas authority concerning consumer status, the Fifth Circuit Court of Appeals affirmed the trial court's summary judgment in favor of Volvo. The court determined that Chamrad was "no more than an incidental beneficiary of the purchase." 145 F.3d at 672. The Court noted that, in order to claim consumer status, "the underlying transaction must be consummated with an intent to benefit the claimant." *Id*.

In *Rodriguez*, the plaintiff suffered injuries when the radiator on his girlfriend's automobile exploded, spraying him with scalding liquid. The Corpus Christi Court of Appeals affirmed summary judgment on the DTPA claim based on lack of consumer status. The plaintiff admitted that he was not involved in any in the purchase of the vehicle. The vehicle was purchased by his girlfriend's mother for his girlfriend's use. The Court concluded that he had no relationship to the transaction and, therefore, was not a consumer under the DTPA. 767 S.W.2d at 191.

Because neither Betty Payan nor Sally Payan were "consumers" in regards to the Explorer in question, the DTPA claims of all Plaintiffs should be dismissed.

## 6.   SUMMARY JUDGMENT STANDARD.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct.

8

2505, 91 L.Ed.2d 202 (1986). The Supreme Court has explained that a movant for summary judgment need not support its motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the nonmovant's case, the burden shifts to the nonmovant to make a showing sufficient to establish each element as to which that party will have the burden at trial. *Celotex,* 477 U.S. at 322-25.

Summary judgment is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *See* FED. R. CIV. P. 56(c); *Celotex,* 477 U.S. at 323. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The proof must be of such quality that "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 586-87.

WHEREFORE, PREMISES CONSIDERED, Ford prays that this motion be granted and that plaintiffs take nothing on all pled claims for recovery based upon alleged "fraud."

Respectfully submitted,

BROWN McCARROLL, L.L.P.
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (Fax)

By: _____William L. Mennucci, for Chris Blackerby w/ permission_____
Chris A. Blackerby, Attorney in Charge
State Bar No. 00787091
So. Dist. of Texas No. 20016

9

THOMPSON, COE, COUSINS & IRONS, L.L.P.
William L. Mennucci
State Bar No. 00788042
So. Dist. of Texas No. 18172
701 Brazos Street, Suite 1500 Austin Centre
Austin, Texas 78701
(512) 708-8200 Telephone
(512) 708-8777 (Fax)

and

Matthew Goldstein
SNELL & WILMER, L.L.P.
One South Church Ave.
Suite 1500
Tuscon, AZ 85701
(520) 882-1200
(520) 884-1294 (Fax)

**ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY**

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing instrument has been forwarded as set forth below to the following attorney(s) on this __13__ day of May, 2005:

Benigno (Trey) Martinez
Tony Martinez
MARTINEZ, BARRERA Y MARTINEZ, L.L.P.
1201 East Van Buren
Brownsville, TX 78520

_____
Chris A. Blackerby

*[Signed: William L Mennucci, for Chris Blackerby w/ permission]*

Doc ID EADYM-113385
08423-071