CIVIL ACTION NO. B-03-120

**DEFENDANT FORD MOTOR COMPANY'S OPPOSED MOTION TO EXCLUDE TESTIMONY OF RONALD HUSTON UNDER RULES 402, 403, AND 702 OF THE FEDERAL RULES OF EVIDENCE AND *DAUBERT V. MERRELL DOW PHARMACEUTICALS***

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| [STATEMENT OF ISSUES TO BE RULED UPON] | | 1 |
| BACKGROUND | | 1 |
| LEGAL ANALYSIS [SUMMARY OF THE ARGUMENT] | | 3 |
| I. | ADMISSIBILITY OF EXPERT OPINIONS | 3 |
| II. | DR. HUSTON IS NOT QUALIFIED TO OPINE ON THE CAUSE OF BETTY PAYAN'S INJURIES. | 4 |
| | A. Dr. Huston is not qualified to testify on the cause of injuries. | 4 |
| | B. The Texas Supreme Court and the United States Court of Appeals for the Sixth Circuit have held Dr. Huston is not qualified to testify on causation of injury. | 5 |
| III. | DR. HUSTON'S TESTIMONY IS BASED ON UNRELIABLE DATA. | 7 |
| | A. Dr. Huston's opinion is not based on a reconstruction of the accident. | 7 |
| | B. Dr. Huston does not know what roof deformation occurred during the accident. | 9 |
| | C. Dr. Huston does not explain why the rubbing mark on the headliner supports his opinion. | 10 |
| | D. Dr. Huston's sitting height analysis is based on erroneous data. | 11 |
| | E. Dr. Huston's testimony is based on unreliable surrogate testing. | 13 |
| IV. | CONCLUSION | 13 |

i

CIVIL ACTION NO. B-03-120

**DEFENDANT FORD MOTOR COMPANY'S OPPOSED MOTION TO EXCLUDE TESTIMONY OF RONALD HUSTON UNDER RULES 402, 403, AND 702 OF THE FEDERAL RULES OF EVIDENCE AND *DAUBERT V. MERRELL DOW PHARMACEUTICALS***

**TABLE OF CITATIONS**

- Rule 402, Federal Rules of Evidence.

- Rule 403, Federal Rules of Evidence.

- Rule 702, Federal Rules of Evidence.

- *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994).

- *Castellow v. Chevron USA*, 97 F.Supp.2d 780, 792 (S.D. Tex. 2000).

- *Christophersen v. Allied-Signal Corporation*, 939 F.2d 1106 (5th Cir. 1991).

- *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

- *DePaepe v. General Motors*, 141 F.2d 715 (7th Cir. 1998).

- *Gammill v. Jack Williams Chevrolet*, 983 S.W.2d 1 (Tex. App. -- Ft. Worth 1996).

- *General Electric v. Joiner*, 522 U.S. 136 (1997).

- *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083 (10th Cir. 2000).

- *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994).

- *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

- *Mukhtar v. California State University, Hayward*, 299 F.3d 1053 (9th Cir. 2002).

- *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299 (6th Cir. 1997).

- *Wellman v. Norfolk and Western Railway*, 98 F.Supp.2d 919 (S.D. OH 2000).

Doc ID MENNB-114217
08423-071

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. B-03-120 |
| FORD MOTOR COMPANY, et al. | § § | |
| Defendants. | § § § | |

### DEFENDANT FORD MOTOR COMPANY'S OPPOSED MOTION TO EXCLUDE TESTIMONY OF RONALD HUSTON UNDER RULES 402, 403, AND 702 OF THE FEDERAL RULES OF EVIDENCE AND *DAUBERT V. MERRELL DOW PHARMACEUTICALS*

TO THE HONORABLE JUDGE OF THE COURT:

Defendant Ford Motor Company hereby moves to exclude the testimony of Plaintiffs' expert, Dr. Ronald Huston, pursuant to Rules 402, 403, and 702, Fed.R.Evid., and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* because Dr. Huston is not qualified to opine on the cause of Betty Payan's death and because his testimony is not based on a reliable foundation.

Defendants further request an evidentiary hearing pursuant to Rule 104, Fed.R.Evid., to evaluate the proposed testimony of Dr. Huston.

### BACKGROUND

This case arises from a January 11, 2003 rollover accident on a toll highway in Monterrey, Mexico, involving a 2000 Ford Explorer in which Betty Payan was killed.

Betty Payan's daughter, Sally Payan, was a passenger in the vehicle at the time of the accident and she suffered minor injuries.

Based on their alleged facts regarding the accident, Plaintiffs seek recovery from Ford under theories of strict products liability, negligence, gross negligence, misrepresentation, breach of warranty, and violations of the Texas Deceptive Trade Practices Act. *See* Plaintiffs' Original Petition. To succeed, Plaintiffs must prove that the 2000 Ford Explorer was defective and unreasonably dangerous and that any alleged defects in the Explorer caused Betty Payan's death. For this purpose, Plaintiffs have designated four professional expert witnesses: Dr. Ronald Huston, Dr. Dean Jacobson, Stephan Irwin, and Gerald Rosenbluth. *See* Plaintiffs' Designation of Experts, copy attached hereto as Exhibit A.

Plaintiffs' expert designation states that Dr. Huston is Plaintiffs' "Bio Mechanic Expert," and his report states that he will testify that:

> In summary, it is the opinion of this investigator that **the injury producing forces on Ms. Payan were due to compressive forces on her body due to the intruding vehicle roof.** It is also the opinion of this investigator that during the accident Ms. Payan was wearing her seat belt and therefore, had her head room been maintained, as with a non-deforming, or lesser deforming roof, the compressive injury producing forces would not have occurred.

Report of Dr. Ronald Huston ("Dr. Huston Report") at page 6 [emphasis added], copy attached hereto as Exhibit B.

Dr. Huston opines that, at some point during the rollover sequence, the subject vehicle's roof deformed inward and made a single impact with Betty Payan's head, causing her fatal head injury. *See* Transcript of March 15, 2005 Deposition of Dr. R. Huston ("Dr. Huston Depo."), relevant excerpts attached hereto as Exhibit C, at page 95, lines 12 to 19 ("It would be my belief

2

that the injury would have been a single impact"). The inward deformation, in Dr. Huston's opinion, compressed Betty Payan's sitting height by five inches. *Id.* at page 96, line 6 to 11.

## LEGAL ANALYSIS

I. **ADMISSIBILITY OF EXPERT OPINIONS**

The introduction of expert testimony is governed by Federal Rule of Evidence 702, which provides, in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

The Supreme Court has held that, once an objection to an expert's testimony is raised, the trial court must perform certain "gatekeeper" duties under Rule 702 and determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 592 (1993); *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) ("where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline'") (quoting *Daubert*, 509 U.S. at 592). In fact, although a trial court has discretion in the manner in which the gatekeeper duty is conducted, it has no discretion regarding the fulfillment of its gatekeeper duty, which must be performed before the jury is permitted to hear the evidence. *See Mukhtar v. California State University, Hayward*, 299 F.3d 1053,

3

1063 (9th Cir. 2002), *amended en banc* at 319 F.3d 1073 (9th Cir. 2003); *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). Further, the trial court is required to make specific findings on the record that it performed its gatekeeper obligations and any basis for finding the testimony admissible under *Daubert*. *Goebel,* 215 F.3d at 1088-89.

A trial court fulfills its gatekeeper obligation by undertaking two separate inquires. First, the court must determine whether the witness is qualified to offer the opinions he or she is espousing. Fed.R.Evid. 702. Second, the proponent of the witness bears the burden of proving that its witness's opinions are both relevant and reliable. *See Daubert*, 509 U.S. at 589-90, 592; *Kuhmo Tire*, 526 U.S. at 141, 149, 152 (the trial judge must determine whether the witness is qualified testimony and it must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline).

## II.   DR. HUSTON IS NOT QUALIFIED TO OPINE ON THE CAUSE OF BETTY PAYAN'S INJURIES.

### A.   Dr. Huston is not qualified to testify on the cause of injuries.

Courts must ensure that those who purport to be experts have expertise concerning the actual subject about which they are offering an opinion. *Christophersen v. Allied-Signal Corporation*, 939 F.2d 1106, 1112-1113 (5th Cir. 1991), *cert. denied*, 503 U.S. 912, 117 L. Ed. 2d 506, 112 S. Ct. 1280 (1992); *See also Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("the issue with regard to expert testimony is not the qualifications of a witness, but whether those qualifications provide a foundation for a witness to answer a specific question").

In the present case, Dr. Huston's central opinion is that Betty Payan's fatal injury was caused by impact with the deforming roof of the subject vehicle. *See* Dr. Huston Depo. at

4

Doc ID MENNB-114217
08423-071

page 38, line 9 to page 39, line 6. However, despite his credentials, Dr. Huston is not qualified to opine on causation of injuries.

No doubt, Dr. Huston is a licensed engineer with a long academic career. *See* Resume of Ronald L. Huston, PhD, P.E., copy attached hereto as Exhibit D. His resume consists of 47 pages and is divided into many sections and sub sections. *Id.* However, there is nothing in his background that qualifies him to testify concerning the cause of Betty Payan's injuries. He has no training in medicine. *Id.* He does not have a medical degree. *Id.* He is not a medical doctor. *Id.* He has no experience in medical facilities. *Id.* He is simply a mechanical engineer whose medical credentials, if any, are inadequate to render him capable of ascertaining causes of injury.

That Dr. Huston is not qualified to opine on injury causation is evident in his resume. It is also evident in his deposition testimony wherein he admits he has not authored any articles relevant to his opinion on how Betty Payan sustained her injuries. *See* Dr. Huston Depo. at page 20, lines 2 to 23, Exhibit C. Accordingly, because Dr. Huston does not have expertise concerning the actual subject about which he opines, his testimony must be excluded under *Daubert*. Moreover, exclusion of Dr. Huston's testimony is supported by the decisions of other courts that have found his testimony inadmissible.

    **B.    The Texas Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that Dr. Huston is not qualified to testify on causation of injury.**

In *Gammill v. Jack Williams Chevrolet*, 983 S.W.2d 1 (Tex. App. -- Ft. Worth 1996) plaintiffs in a product liability action proffered Dr. Huston as an expert witness to opine about defective rear seatbelts and the cause of injuries to vehicle occupants. This testimony was excluded by the Court of Appeals which held that "[d]espite Dr. Huston's impressive background

5

as a professor and as an engineer, in research and as an author, we find nothing in the record to show that he was qualified to express opinions regarding the condition of Jaime's body or the cause of her death." *Gammill*, 983 S.W.2d at 12.

On appeal, the Texas Supreme Court reversed the Court of Appeals' decision excluding Dr. Huston's seatbelt testimony. *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713 (Tex. 1998). However, the court affirmed the exclusion of Dr. Huston's testimony on injury causation, holding that "Huston, too, lacks any qualifications to testify concerning the cause of Jaime's death." *Id.* at 791.

Similarly, in *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299 (6th Cir. 1997), the Sixth Circuit held that a trial court failed to perform its gatekeeping function when it allowed Dr. Huston to testify that a defective shoulder belt on the defendant company's truck had caused the plaintiff's injuries. Specifically, the court held:

> We conclude that the trial court erred when it allowed Smelser's expert, Ronald Huston, to offer his opinion that a defective shoulder belt in the company pick-up truck, and not the rear-end collision, caused Smelser's back injuries and aggravated his neck injuries. The court did not adequately assess the reliability of the methodology underlying Dr. Huston's opinions both as to defect and causation and also failed to recognize that Dr. Huston's opinion as to the cause of Smelser's specific injuries went beyond his expertise in biomechanics. Accordingly, it failed to adequately perform its gatekeeping functions as recently defined by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

*Id. at 301.*

The Texas Supreme Court and the Sixth Circuit both found that Dr. Huston's testimony on injury causation constitutes a medical opinion, far beyond his field of expertise. *See also Wellman v. Norfolk and Western Railway*, 98 F.Supp.2d 919, 927 (S.D. OH. 2000) (explaining

Doc ID MENNB-114217
08423-071

*Smelser*). Since Dr. Huston offers the same injury causation testimony excluded by these courts in the present case, this Court must similarly exclude this testimony.

III.   **DR. HUSTON'S TESTIMONY IS BASED ON UNRELIABLE DATA.**

To be reliable, an expert scientific opinion must be grounded, at the very least, on some demonstrable underlying scientific data or logical inference therefrom. Moreover, nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert, and a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *General Electric v. Joiner*, 522 U.S. 136, 146 (1997).

Dr. Huston's opinion is unreliable because it is based on faulty and speculative data, most of which does not relate to his conclusion. Specifically, Dr. Huston opines that Betty Payan's fatal injuries resulted from roof deformation based on the following:

   A.   The vehicle's involvement in a rollover accident;
   B.   The presence of 9 1/2 inches of inward roof deformation;
   C.   The presence of a rubbing mark on the subject vehicle's headliner;
   D.   An analysis of Betty Payan's sitting height relative to the roof deformation; and
   E.   The results of surrogate testing performed by Gerald Rosenbluth.

None of this alleged evidence forms a reliable basis for Dr. Huston's conclusions for the reasons set forth below.

   A.   **Dr. Huston's opinion is not based on a reconstruction of the accident.**

Dr. Huston admits that in order to understand the mechanism of injury in an accident, an expert must have an understanding of the accident's reconstruction. *See* Huston Depo. at page 52, lines 4 to 7, Exhibit C. However, he rendered his opinions without reviewing the accident reconstruction for this case. *See* Dr. Huston Report at page 3, Exhibit B; Dr. Huston

7

Depo. at page 26, line 24 to page 27, line 3, Exhibit C. His testimony and his expert report are therefore based only on his experience and not any objective analysis of the subject accident itself. Dr. Huston Depo. at page 87, line 23 to page 88, line 9, Exhibit C. In fact, Dr. Huston admitted that he rendered his opinion based on an assumption of what the reconstruction would show. *Id.*

Dr. Huston knew nothing of the accident when he opined on the cause of Betty Payan's injuries. During his deposition, Dr. Huston admitted he did not know the speed of the subject vehicle at the time of the accident, what pre-trip steering occurred, or what braking inputs, yaw rates, yaw angles, or side slip angles were experienced prior to the rollover sequence. *See* Dr. Huston Depo. at page 55, line 23 to page 57, line 24, Exhibit C. Even if one were to accept Dr. Huston's testimony that the only portion of the accident relevant to his opinions is from the time the vehicle's tires leave the roadway until the time it comes to a rest (*Id.* at page 59, lines 3 to 24), he cannot testify on any specific dynamics of the rollover sequence of the subject accident. *Id.* page 60, lines 13 to 17. Specifically, Dr. Huston does not know: what the angle of roll was at any point during the rollover sequence (*Id.* at page 60, lines 18 to 21); what area of the vehicle came in contact with the ground at any point during the rollover or when damage to the vehicle occurred during the rollover (*Id.* at page 60, line 22 to page 61, line 16); and whether all the roof deformation occurred in one impact or incrementally in a series of impacts following each successive roll (*Id.* at page 62, line 7 to page 63, line 7 and page 63, lines 21 to 25). He also cannot testify as to how much roof deformation occurred in any particular roll (*Id.*).

Doc ID MENNB-114217
08423-071

**B.  Dr. Huston does not know what roof deformation occurred during the accident.**

Dr. Huston testified that he observed 9-1/2 inches of inward roof deformation to the subject vehicle that compressed Betty Payan's sitting height by five inches. *See* Dr. Huston Depo. at page 110, line 24 to page 111, line 4; page 96, lines 6 to 11, Exhibit C. He opines that Betty Payan's fatal injury would not have resulted had the roof only deformed two to three inches. *Id.* at page 126 lines 13 to 20.

Obviously, the total amount of roof deformation is relevant to Dr. Huston's opinion only insofar as it occurred prior to Ms. Payan's fatal injury, and not after. Yet, Dr. Huston cannot testify as to the amount of roof deformation that occurred during the first roll, when he believes Betty Payan received her injuries, as opposed to that which occurred during subsequent rolls and ground strikes. *See* Dr. Huston Depo. at page 65, line 24 to page 66, line 10, Exhibit C. Specifically, Dr. Huston testified:

> Q:  Okay. All you know is that at the end of the rollover sequence there was, in your opinion, approximately nine inches of roof deformation over the seating position for the driver; is that right?
>
> A:  Yes.
>
> Q:  So you can't tell me how much roof deformation occurred before Mrs. Payan received her spinal injury; is that fair?
>
> A:  Yes.
>
> Q:  And you can't tell me how much roof deformation occurred after she received her spinal injury, can you?
>
> A:  That's right.

*Id.* at page 112, line 14 to page 113, line 17.

9

Nevertheless, Dr. Huston concludes that significant deformation, in excess of three inches, caused Betty Payan's fatal head injury. *See* Dr. Huston Depo. at page 126 lines 13 to 20. Yet, he offers nothing to suggest that the deformation he believed *could have* happened on the first roll, *actually did* happen. Therefore, because his opinion that deformation sufficient to cause Betty Payan's fatal injuries on the first roll is mere speculation, Dr. Huston's testimony that the roof deformation caused Betty Payan's injuries is not admissible expert testimony under *Daubert*. *See DePaepe v. General Motors*, 141 F.2d 715, 720 (7th Cir. 1998) ("With all respect to the district court, the whole point of *Daubert* is that experts can't 'speculate'").

### C. Dr. Huston does not explain why the rubbing mark on the headliner supports his opinion.

Outside of the roof deformation itself, the only physical evidence cited by Dr. Huston for his opinion that Betty Payan's injuries were caused by roof deformation is a mark on the subject vehicle's headliner above the driver's seat where fabric is rubbed or scrubbed down. *See* Dr. Huston Depo. at page 67, lines 7 to 23, Exhibit C. He opines that this mark "is evidence of driver contact with a downward deforming roof." *See* Dr. Huston Report at page 5, Exhibit B.

First, Dr. Huston cannot definitively say that the mark he found in the headliner came from Betty Payan's head rather than from other possible sources, such as contact by emergency medical personnel while the vehicle rested on its roof at the accident scene. Never does Dr. Huston explain why the mark is indicative of head contact with an "intruding roof" rather than Betty Payan's head coming in contact with the roof when the roof is stopped on the ground. In other words, he has not explained why presence of the mark after the accident is not at least as consistent with Betty Payan having a "diving injury" as with his opinion that the injury was a

Doc ID MENNB-114217
08423-071

result of deformation. Therefore, his opinion, insofar as it is based on the presence of this mark, is little more than a subjective belief and unsupported speculation.

### D.   Dr. Huston's sitting height analysis is based on erroneous data.

Dr. Huston's testified that the "intruding roof" compressed Betty Payan's sitting height by five inches. Dr. Huston Depo. at page 96, line 6 to 11, Exhibit C. His opinion that Betty Payan's fatal head injury was caused by a five-inch compression is based, in large part, on his analysis of Betty Payan's sitting height relative to the roof. He opines that:

> The measured sitting height in the driver's sitting position after the roof deformation was only approximately 29 inches. Thus, during the rollover sequence Ms. Payan's sitting height would have been compressed approximately 5 inches or more.

Dr. Huston Report at page 5, Exhibit B.

This conclusion regarding Betty Payan's sitting height is based on what Dr. Huston believed Ms. Payan's height and weight to be at the time he authored his report. As noted in his report, Dr. Huston found that:

> The medical records for Ms. Payan state her stature was 167 cm and with mass: 75 kg. In English units this is 5 feet 7 3/4 inches with weight 165 lb. Anthropometric data for women show that persons with a stature of 5 ft 7 3/4 in have a sitting height of approximately 34 and 3/4 in.

Dr. Huston Report at page 5, Exhibit B. He therefore concludes that:

> The measured sitting height in the driver's sitting position after the roof deformation was only approximately 29 inches. Thus, during the rollover sequence Ms. Payan's sitting height would have been compressed by approximately 5 inches or more.

*Id.*

Doc ID MENNB-114217
08423-071

In actuality, following his sitting height analysis and report in this case, Dr. Huston learned that Betty Payan was actually 5 feet 5-3/4 inches in height, two inches less than that previously assumed:

> [My report] says that she was 167 centimeters stature and in English she was 5'7 3/4". That's an error. That actually is 5'5 3/4".

*See* Dr. Huston Depo. at page 6, line 21 to page 7, line 9, Exhibit C.

This error in Dr. Huston's analysis means that Ms. Payan's head could not be compressed five inches since Dr. Huston's sitting height analysis erroneously assumed Ms. Payan sat two inches higher than she likely did. Clearly, Dr. Huston's opinion that Ms. Payan's head was compressed by five inches should change following his discovery that her sitting height was actually two inches less than that previously thought. However, this admitted error in Dr. Huston's analysis has not been corrected. Moreover, the sitting height used by Dr. Huston is more than four inches less that that used by Plaintiffs' other expert, Gerald Rosenbluth, in Mr. Rosenbluth's surrogate testing. *See* Rosenbluth Surrogate Testing Data (Reporting a surrogate sitting height of 33.50"), copy attached hereto as Exhibit E.

Under *Daubert*, any step that renders an analysis unreliable renders the expert's testimony inadmissible. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994). This is true regardless of whether an error completely changes an otherwise reliable methodology or merely misapplies that methodology. *Id.* In the present case, Dr. Huston admits he used the wrong height for Betty Payan in his analysis, a material error that he does not correct. It therefore calls into question the validity of his very opinion that the roof deformation caused Betty Payan's fatal injury and justifies exclusion. *Castellow v. Chevron USA*, 97 F.Supp.2d 780,

Doc ID MENNB-114217
08423-071

792 (S.D. Tex. 2000) (Mathematical errors call into question the validity of opinions and undermine the value of expert calculations to a factfinder).

### E. Dr. Huston's testimony is based on unreliable surrogate testing.

Dr. Huston testified that "[i]t's my opinion based upon also the surrogate study that I did after the preparation of the report that if in this instance the roof had not come down that she would not have experienced the injuries that she did..." *See* Dr. Huston Depo. page 38, line 38, line 23 to page 39, line 6, Exhibit C. As explained in Ford's Motion to Exclude the Testimony of Gerald Rosenbluth, contemporaneously filed herewith and incorporated herein by this reference, this surrogate study relied upon by Dr. Huston is based on a flawed and unscientific methodology.

### IV. CONCLUSION.

Dr. Huston's opinions on the causation of Betty Payan's injuries discussed above are inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and Rules 402, 403, 702, Fed.R.Evid. Accordingly, Ford requests entry of an order excluding this testimony in its entirety and/or for such other relief as this Court deems just.

Respectfully submitted,

BROWN McCARROLL, L.L.P.
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (Fax)

By: _____ William L McConnico
Chris A. Blackerby, Attorney in Charge   Chris
State Bar No. 00787091                   Blackerby
So. Dist. of Texas No. 20016             w/ permission

13

THOMPSON, COE, COUSINS & IRONS, L.L.P.
William L. Mennucci
State Bar No. 00788042
So. Dist. of Texas No. 18172
701 Brazos Street, Suite 1500 Austin Centre
Austin, Texas 78701
(512) 708-8200 Telephone
(512) 708-8777 (Fax)

and

Matthew Goldstein
SNELL & WILMER, L.L.P.
One South Church Ave.
Suite 1500
Tuscon, AZ 85701
(520) 882-1200
(520) 884-1294 (Fax)

**ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY**

Doc ID MENNB-114217
08423-071

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing instrument has been forwarded as set forth below to the following attorney(s) on this __13__ day of May, 2005:

Benigno (Trey) Martinez
Tony Martinez
MARTINEZ, BARRERA Y MARTINEZ, L.L.P.
1201 East Van Buren
Brownsville, TX 78520

_____
Chris A. Blackerby

*William L Manucci*
*for Chris Blackerby,*
*w/ permission*

16

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. B-03-120 |
| FORD MOTOR COMPANY, et al. | § § | |
| Defendants. | § § § | |

**CERTIFICATE OF CONFERENCE IN SUPPORT OF:**

**DEFENDANT FORD MOTOR COMPANY'S OPPOSED MOTION TO EXCLUDE TESTIMONY OF DR. RONALD HUSTON UNDER RULES 402, 403, AND 702 OF THE FEDERAL RULES OF EVIDENCE AND *DAUBERT V. MERRELL DOW PHARMACEUTICALS***

TO THE HONORABLE JUDGE OF THE COURT:

Undersigned counsel, Matthew Goldstein, for Ford Motor Company ("Ford"), certifies that counsel for Ford has conferred with respondent and, after personal consultation and good faith efforts to do so, counsel cannot agree on the disposition of Ford's Opposed Motion to Exclude Testimony of Dr. Ronald Huston Under Rules 402, 403, and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*.

. . .

. . .

. . .

Respectfully submitted,

SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, Arizona 85701
(520) 882-1218 Telephone
(520) 884-1294 Fax

By: _____
Matthew A. Goldstein
Admitted Pro Hac Vice

- and -

William L. Mennucci
State Bar No. 00788042
Michael W. Eady
State Bar No. 06332400
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos Street, Suite 1500 Austin Centre
(512) 708-8200 Telephone
(512) 708-8777 Fax


ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing has been served on all counsel of record via facsimile and regular mail on this 13th day of May, 2005:

Tony Martinez, Esq.
Martinez, Barrera & Martinez, L.L.P.
1201 East Van Buren
Brownsville, Texas  78520

**Attorneys for Plaintiffs**

_____
Matthew Goldstein, Esq.