UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN<br>　　　　Plaintiffs, | §<br>§<br>§<br>§<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. B-03-120 |
| FORD MOTOR COMPANY, AND AUTOMOTRIZ DEL NORESTE, S.A. DE C.V.<br>　　　　Defendants. | §<br>§<br>§<br>§<br>§ | |

## DEFENDANT FORD MOTOR COMPANY'S MOTION IN LIMINE

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendant Ford Motor Company files this Motion *in Limine*. Ford moves *in limine*, before the *voir dire* examination of the jury panel has begun, before any opening statements are made to the jury, and before any evidence is introduced, for an order instructing plaintiffs and all of plaintiffs' witnesses to refrain from making any mention through interrogation, *voir dire* examination, opening statement, arguments or otherwise, either directly or indirectly, concerning any of the matters hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court, outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case. These matters are as follows:

**1.**
## ALLEGED DEFECTS NOT PREVIOUSLY LISTED IN PETITION, DISCOVERY RESPONSES OR SUPPORTED BY EXPERT TESTIMONY

Any reference or argument as to any alleged defects which have not been previously pleaded in Plaintiffs' pleadings or disclosed as required by FED. R. CIV. P. 26.

Agreed _____     Granted _____     Denied _____

**2.**
## ALLEGED DISCOVERY DISPUTES AND DOCUMENTS ALLEGEDLY NOT PRODUCED BY DEFENDANTS

Any alleged discovery disputes involving any Defendant in this case or any other case. Any reference to documents allegedly not produced by any Defendant in response to discovery or letter requests from the Plaintiffs' counsel unless Plaintiffs have filed a motion to compel and obtained a ruling thereon, as required by law. This motion further extends to reading to the jury objections made in response to individual discovery requests. FED. R. EVID. 401, 402, 403.

Agreed _____     Granted _____     Denied _____

**3.**
## DESTRUCTION OF DOCUMENTS

Any reference to conspiracy claims, "cover up" theories, or spoliation of documents, including any suggestion that any Defendant has destroyed documents, engaged in fraudulent, deceitful or criminal conduct, or is withholding or hiding any documents, and any comment or suggestion on the lack of any document Plaintiffs believe should exist. FED. R. EVID. 401, 402, 403.

Agreed _____     Granted _____     Denied _____

**4.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING OTHER UNRELATED ALLEGED DEFECTS OR RECALLS

The evidence should be limited to this product and the defects alleged in this lawsuit. Evidence, testimony, or argument about defects not involved in this case or recalls of this product or other Ford products for problems not involved in this case is improper. FED. R. EVID. 401, 403, 404(b), 611.

Agreed _____     Granted _____     Denied _____

Doc ID EADYM-115179
08423-071

**5.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THE FORD PINTO

This case does not involve the Ford Pinto. References to the Ford Pinto, a vehicle manufactured nearly 30 years ago, can only be for improper purposes. The "Pinto" has become synonymous with many unflattering attributes. This accident does not involve a fuel-fed fire. Furthermore, a defendant's "dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *State Farm Mutual Automobile Ins. Co. v. Campbell,* 538 U.S. 408 (2003). "A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* References, evidence, testimony, or argument about the Pinto have no bearing upon any issue in this case and are intended only to divert the jury's attention from issues in this case and unfairly prejudice Ford before the jury by association with the Pinto. FED. R. EVID. 401, 403, 611.

Agreed            Granted            Denied

**6.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THE GRUSH/ SAUNBY FUEL SYSTEM INTEGRITY REPORT

Any reference to or evidence, testimony, or argument regarding a report prepared in the early 1970s by Ford engineers Ernie Grush and Carol Saunby (the "Grush/Saunby Report") concerning FMVSS 301 Fuel System Integrity. This matter must be excluded under Federal Rules of Evidence 401 and 402 because it is irrelevant to any fact of consequence in this proceeding. There is no nexus between the plaintiffs' specific injuries in this case and the Grush/Saunby report. This evidence should also be excluded under Federal Rule of Evidence 403 because any probative value it might conceivably have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay.

Agreed            Granted            Denied

**7.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING WELL-KNOWN PRODUCT LIABILITY LAWSUITS (*E.G.*, BREAST IMPLANTS, DALKON SHIELD, GM SIDE SADDLE TANK PICKUP TRUCKS, CROWN VICTORIA POLICE INTERCEPTORS, ETC.)

Any reference to or evidence, testimony or argument regarding other well-known product liability cases, such as breast implants, Dalkon Shield, Ford Pinto, GM Side Saddle Tank Pickup Trucks, Ford Crown Victoria Police Interceptor cases, etc. Such information is not relevant to the issues *in this case.* "Due Process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties 'hypothetical' claims against a defendant under the guise of the reprehensibility analysis . . . ." *State Farm Mutual Automobile Ins. Co. v. Campbell,* 538 U.S. 408 (2003). Alternatively, the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and

3

prolongation of the trial that its admission into evidence would cause. FED. R. EVID. 401, 402, 403, 611.

Agreed _____    Granted _____    Denied _____

### 8.
### EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING PUNITIVE DAMAGES, VERDICTS OR JUDGMENTS AGAINST FORD

These references improperly ask the jury to infer fault and liability in this case based upon some other lawsuit with different facts and, most likely, decided under different legal principles. The U.S. Supreme Court has recently held that laundry lists of unrelated conduct without any nexus to the injuries to the plaintiff in the case in question *will not* consistent with basic due-process principles support a punitive damage verdict. *State Farm Mutual Automobile Ins. Co. v. Campbell,* 538 U.S. 408 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."). There does not exist any verdict or judgment that bears any relation to the specific harm alleged in this case. That is the standard for admissibility. *Id.* at 1522-23. Interjection of such irrelevant information would further cause unfair prejudice to Ford, would confuse the issues *in this case,* and would prolong the trial by requiring Ford to respond. FED. R. EVID. 401, 403, 611.

Agreed _____    Granted _____    Denied _____

### 9.
### FIRESTONE TIRE RECALL

Argument, evidence of, or testimony concerning the voluntary recall by Firestone and/or Ford of ATX, ATX II, and certain Wilderness AT tires, *except for purposes of voir dire.* This case involves neither a Firestone tire nor an alleged tire failure. FED. R. EVID. 402, 403.

Agreed _____    Granted _____    Denied _____

### 10.
### EXCLUDING ANY REFERENCE TO ISSUES INVOLVING SAUDI ARABIA/GULF STATES/VENEZUELA FIRESTONE PROBLEMS AND FORD'S RESPONSE TO SUCH CLAIMS

Any reference to issues involving problems and/or Ford's response to claims of problems with Firestone tires and/or Explorers in other parts of the world, *e.g.,* Saudi Arabia, Gulf Coast States, Malaysia, Oman, Venezuela, etc. Those tires and vehicles, and the issues in those countries, are unrelated to this accident. FED. R. EVID. 401, 402. Such documents and references can only be intended to inflame the jury, and create prejudice toward Ford. Additionally, allowing the plaintiffs to explore these issues will needlessly prolong the trial and confuse the jury. FED. R. EVID. 401, 402, 403, 611.

Agreed _____    Granted _____    Denied _____

4

**11.**

**EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR
ARGUMENT CONCERNING THE DESIGN-AND-DEVELOPMENT HISTORY
OF THE BRONCO II AND THE FIRST-GENERATION EXPLORER (UN46)**

Any reference to or evidence, testimony or argument regarding other Ford sport utility vehicles, including the Bronco II and the "first generation," 1990 ½ - 1994 Ford Explorer, known as the "UN46" Explorer. This evidence must be excluded under Rules 401 and 402 of the Federal Rules of Evidence because it is irrelevant to any fact that is of consequence in this proceeding. Moreover, the evidence should also be excluded under Rule 403, FED. R. EVID., because any probative value it might conceivably have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury and undue delay.

Agreed _____        Granted _____        Denied _____

**12.**

**EXCLUDING ANY REFERENCE TO VOLVO VEHICLES,
VOLVO DOCUMENTS, PARTICULARLY VOLVO
DOCUMENTS MARKED "CONFIDENTIAL" AND COVERED
BY A PROTECTIVE ORDER ISSUED BY ANOTHER COURT**

Volvo documents designated as "confidential" pursuant to the terms of a protective order should not be shown to the jury or made public unless and until this Court determines (1) the confidentiality of the information contained therein which in turn requires an examination of the protective order pursuant to which the document was disseminated (and which the person with possession agreed to abide); and (2) the relevancy of the information contained therein. Plaintiffs may argue that information regarding the Volvo XC-90 vehicle is relevant to safer alternative design. Texas law explicitly provides that, in a products liability action, the claimant bears the burden to prove that there was an alternative design that was economically and technologically feasible "*at the time the product left the control of the manufacturer.*" TEX. CIV. PRAC. & REM. CODE § 82.005 (Vernon 2003) (emphasis added). *Nissan Motor Company v. Armstrong,* 145 S.W.3d 131, 139 (Tex. 2004) ("Whether a product was defective must be judged against the technological context existing at the time of its manufacture."); To prove a design defect, the plaintiffs must show that (1) there was a safer alternative; (2) the safer alternative would have prevented or significantly reduced the risk of injury, without substantially impairing the product's utility; and (3) the safer alternative was both technologically and economically feasible when the product left the control of the manufacturer. *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473 (Tex. App. – Houston [1st Dist.] 2000, pet. denied).

Yet this lawsuit involves a 2000 Ford Explorer. The Volvo XC90 was not introduced into any market until 2003. When it was introduced, the XC-90 combined a stronger roof with several technologies not henceforth available, to wit, side curtain airbags and an industry first – roll stability control. For this reason, any information related to Volvo, or the Volvo XC90 in particular, should be excluded. Furthermore, there is no material dispute that an automobile manufacturer can build a stronger roof. The issue is whether that design is a better overall safer design and would have been a "safer alternative design" *in this accident*. Merely showing the jury Volvo advertisements is not probative of the material issues in dispute.

5

Agreed _____          Granted _____          Denied _____

**13.**
**EXCLUDING ANY REFERENCE TO SIDE CURTAIN AIRBAGS**

Any reference to side curtain airbags. There is no real evidence to support a claim relating to such, and, moreover, such information is irrelevant and prejudicial and may violate the rule against subsequent remedial measures. FED. R. EVID. 401, 402, and 403.

Agreed _____          Granted _____          Denied _____

**14.**
**EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY,**
**OR ARGUMENT CONCERNING THE WEAVER DOCUMENTS**

Any reference to a 1968 study authored by J.R. Weaver. This 36 year old study should be excluded because it has been superseded by more recent research and is therefore is irrelevant and immaterial to any of the issues in this lawsuit. Further, its propensity to confuse the jury and its unfairly prejudicial effect substantially outweigh any probative value it could possibly have.

Ford anticipates that Plaintiff will attempt to introduce documents authored by J.R. Weaver in 1968. The Weaver study contains information that was created and studied more than 30 years before the date of the subject crash and 32 years before the production of the Ford Explorer involved in this lawsuit. While the Weaver study called attention to the issue of rollover- related head and neck injuries, it merely speculated about the nature of those injuries. It provided nothing in the way of scientific answers. A series of studies conducted during the ensuing three-plus decades provided those answers, proving that roof deformation does not cause neck and head injuries in rollover crashes.

Only relevant evidence is admissible at trial. *See* Rule 402, FED. R. EVID. "'Relevant evidence' means evidence having any tendency to make, the existence of any fact that is of consequence to the determination of the action more probably or less probable than it would be without the evidence." Rule 401, FED. R. EVID. What an engineer may have speculated 36 years ago has no relevance to the proceedings in this matter, especially in light of the vast amount of research conducted in the mean time. The Weaver documents, while historically interesting, are as scientifically relevant today as a pre-Copernican study of the Solar System. Finally, allowing such evidence would require a lengthy explanation to the jury of the historical context of the documents, which would waste time, unfairly prejudice Ford, and would likely confuse and mislead the jury. Rule 403, FED. R. EVID.

Agreed _____          Granted _____          Denied _____

6

**15.**
## ANY REFERENCE TO HEARSAY STATEMENTS FROM
## ANY MEDIA ARTICLES OR TELEVISION OR RADIO PROGRAMS

Any reference to or evidence concerning television or radio programs regarding an alleged "investigation" of any alleged defect in any Ford automobile, in that, by definition, all interviews, reports and other information on such a television or radio program are hearsay unrelieved by any exception to the hearsay rule and because any non-scientific publications or reports, including the statements, opinions, conclusions or analyses contained therein, are not relevant and the probative value, if any, is outweighed by the danger of unfair prejudice to Ford, confusing the issues, and misleading the jury. This includes all news stories or purported "investigative reports." FED. R. EVID. 403, 802.

Agreed    _____    Granted    _____    Denied    _____

**16.**
## NON-SCIENTIFIC PUBLICATIONS, NEWSPAPER ARTICLES, ETC.

Any reference to or evidence, testimony or argument regarding any non-scientific publications, newspaper articles, news reports, videos, and transcriptions of media coverage related to any make or model of Ford, including statements, opinions, conclusions, or analyses contained therein. Such information is not relevant to the issues in this case and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and prolongation of the trial that its admission into evidence would cause. Further, such information is inadmissible hearsay and may contain hearsay-within-hearsay. FED. R. EVID. 403, 802, 805.

Agreed    _____    Granted    _____    Denied    _____

**17.**
## ANY EXPERT OPINION TESTING LINKING A DIFFERENT
## WARNING TO CHANGING THE OUTCOME IN THIS ACCIDENT

Any expert testimony regarding warnings. Under Texas law, expert testimony on defect is needed. *Cf. Nissan Motor Company v. Armstrong*, 145 S.W.3d 131 (Tex. 2004) (". . . we have consistently required competent expert testimony and objective proof that a defect caused the acceleration . . . courts elsewhere do too. This requirement is not peculiar to unintended acceleration cases"); *see also Goodyear Tire & Rubber Company v. Rios*, 143 S.W.3d 107 (Tex. App. – San Antonio 2004, *pet. pending*) (jury could not determine, without the benefit of expert testimony which warning or instruction should have been used). Here, Plaintiffs have not designated any expert *qualified* to give testimony on vehicle "warnings," and the effect of such warnings in changing human behavior. FED. R. EVID. 702. Ford would further object to any presently designated witnesses attempting to link a change in the vehicle warnings provided (written or audible) as changing the outcome in this case on the grounds that the methodology underlying the opinion (if it exists) is unreliable, and does not "fit" the facts of this case. FED. R. EVID. 702.

7

Agreed _____    Granted _____    Denied _____

**18.**
## FAILURE TO WARN, RECALL OR RETROFIT SUBSEQUENT TO DELIVERY

Any mention or reference, either directly or indirectly, the import of which is to infer that Defendant had a duty, subsequent to the delivery of the vehicle in question, to notify, or publicize to purchasers, or to warn purchasers, of the alleged need for an alternative design or other such post-delivery modification, or that this Defendant failed to take any of the action as described above subsequent to delivery of the vehicle in question. FED. R. EVID. 403; *Arkwright-Boston Manufacturers Mutual Ins., Co. v. Westinghouse Electric Co.*, 844 F.2d 1174 (5th Cir. 1988) (applying Texas law); *Syrie v. Knoll Int'l*, 748 F.2d 304, 311-12 (5th Cir. 1984) ("Because Texas does not impose on manufacturers the duty to warn about or to recall products for which a safer design has been developed, we find that the district court did not err in refusing to instruct the jury on negligence regarding a manufacturer's post-marketing failure to warn or recall."); *see also Nissan Motor Company v. Armstrong*, 145 S.W.3d 131 (Tex. 2004) ("Whether a product was defective must be judged against the technological context existing at the time of its manufacture."); *Torrington v. Stutzman*, 46 S.W.3d 829, 836-37 (Tex. 2000) (court acknowledged that post dale duty to warn was not recognized); *GMC v. Saenz on Behalf of Saenz*, 873 S.W.2d 353 (Tex. 1993) ("The determination of whether a duty to warn exists is made at the time the product leaves the manufacturer."); *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420 (Tex. 1997) ("…whether a product is dangerous is determined when it leaves the manufacturer's hands and enters the stream of commerce; subsequent acts have no bearing on the issue."); *Dion v. Ford Motor Company*, 804 S.W.2d 302 (Tex. App. -- Eastland 1991, writ denied) (no general post sale duty to warn or recall in Texas). *This motion is supported by a separate brief.*

Agreed _____    Granted _____    Denied _____

**19.**
## TEST REPORTS AND/OR TEST VIDEOTAPES REFERRING TO,
## OR DEPICTING TESTS MORE THAN TWENTY-YEARS AGO

Plaintiffs' exhibit list contains a large number of exhibits which are test reports and/or test videotapes which are more than 30-40 years old. Nearly all of these tests and reports predate the enactment of FMVSS 216 – the federal standard for roof performance in accidents. Discussion of the relationship between roof strength and injury in vehicles which were not required to comply with 216 has no relevance and can only serve to confuse the issue of current roof design when vehicles are required to meet 216. In addition, rates of restraint usage and restraint designs were so different in the pre-216 era that whatever was said about roof strength and injury in the old documents has no relevance to the design of a 2000 vehicle. Neither the vehicles built in the 60s and 70s nor the technology are comparable with that of today. The same is true of the science applicable to test protocols. These exhibits should not be offered on any material fact which is in genuine dispute. Presentation of the evidence is neither relevant nor an efficient use of Court resources since it requires Ford, typically during its case several weeks later to teach a course in the evaluation of vehicles, safety systems, crash energy management, etc. simply to explain to the jury why these old test reports have no more bearing on the material

8

facts in dispute, than the Vietnam era, Communism, psychedelic drugs, etc. all of the same vintage. FED. R. EVID. 401, 403, 611.

Agreed     _____     Granted     _____     Denied     _____

### 20.
### EVIDENCE OF OTHER ACCIDENTS, LAWSUITS, OR CLAIMS

Evidence of all prior accidents involving Ford vehicles, absent a proper foundation first being laid (outside the presence of the jury) showing all of the following: (1) That the evidence of the other accident is admissible in its own right – for example, that the "evidence" of that accident is not just an inadmissible unproven hearsay allegation asserting that it occurred. (2) That the other accident was similar to this one in that it involved the same instrumentality, i.e., a substantially similar product containing the same allegedly defective feature. And (3) That the other accident is relevant to an issue here in that the allegedly defective feature was not merely *present* in that other incident but that there is some reasonable basis for believing that it was involved in *causing* that incident.

In particular, Ford seeks to exclude any mention of other accidents, unless plaintiffs first offer proof outside the presence of the jury of similarity as required by applicable law and identify for the Court the grounds for the offer, *e.g.* to prove defect, etc.   *See Jackson v. Firestone Tire & Rubber Co.*, 788 F. 2d 1070, 1082-83 (5th Cir. 1986); *see also Johnson v. Ford Motor Co.*, 988 F. 2d 573, 579-80 (5th Cir. 1993); *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F. 2d 1434, 1440 (10th Cir. 1992).   Any such predicate necessitates expert testimony, which Ford insists meet the prerequisites of FED. R. EVID. 702.   This motion extends to so-called other similar incident witnesses.   Aside from other grounds, admission of such testimony would be a violation of the holding in *State Farm Mutual Automobile Ins. Co. v. Campbell,* 538 U.S. 408 (2003).

Recently, in *Nissan Motor Company v. Armstrong,* 145 S.W.3d 131 (Tex. 2004), the Texas Supreme Court issued a detailed opinion which now serves as clear precedent for cases involving the issues surrounding the admissibility of "other incidents" evidence.   In that product-liability case, for example, the court held that claims letters were hearsay and therefore inadmissible. *Id.* at 139 – 40.   The Court further rejected the argument that other alleged similar incidents were admissible to show notice, i.e., "Nissan's *knowledge* of the truth of the matters asserted," concluding instead that "[t]he hearsay rules cannot be avoided by this kind of circular reasoning." *Id.* at 142.   Even assuming the hearsay threshold could have been overcome, "the relevance of other accidents depends upon the purpose for offering them." *Id.* at 138 – 39.   Mere claims of previous accidents is not admissible to prove a product is defective. *Id.* at 138, 148.   It is incumbent upon the party seeking to admit the other incident to first establish that the defect causing the other accident or claim is the *same* defect allegedly causing this accident. *Id.* at 138 – 39.   In that regard, proof of defect has always required expert testimony. *Id.* at 137.   Ford, therefore, insists that all expert testimony concerning deficit and the "cause" of the other alleged accident or claim meet the prerequisites of FED. R. EVID. 702.

Aside from other grounds, admission of evidence of out-of-state accidents and claims would be a violation of the holding in *State Farm Mutual Ins. Co. v. Campbell*, 538 U. S. 408,

123 S. Ct. 1513 (2003). Irrespective of other grounds, if offered as evidence to support a claim for recovery of punitive damages, accidents and *claims which post-date this accident are always inadmissible. Nissan Motor Company,* 145 S.W.3d at 139 ("Nor can exemplary damages be assessed based upon hindsight, deciding whether a defendant ignored an extreme risk requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight."). This motion specifically encompasses the anticipated testimony from Plaintiffs' experts on other accidents.

Finally, any evidence of alleged 'other similar incidents" should be excluded and reference to such by any witness, expert or otherwise, prohibited because there has been no disclosure or production of such evidence in the discovery of this case. To allow such evidence now would sanctify a trial by ambush and unfair surprise and prejudice to Ford.

*This motion is supported by a separate brief.*

Agreed _____    Granted _____    Denied _____

## 21.
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING FRAUD-ON-NHTSA CLAIMS

Any reference to Ford Motor Company's claimed non-compliance with the National Highway Traffic Safety Administration ("NHTSA"), including reference to or testimony of so-called "fraud-on-NHTSA" claims, either by Ford or the auto industry. The United States Supreme Court has held that federal law preempts all such claims. *Buckman Co. v. Plaintiffs' Legal Comm.*, 121 S. Ct. 1012 (2001). *This motion is supported by separate brief.*

Agreed _____    Granted _____    Denied _____

## 22.
## EXCLUDING ANY REFERENCE TO ISSUES REGARDING FMVSS 216 TESTING

Any reference to, or argument that the subject 2000 Explorer, its product line, or other product lines do not comply with Federal Motor Vehicle Safety Standard 216 ("FMVSS 216") – the standard that concerns roof crush. The 2000 Ford Explorer complies with FMVSS 216 and could not have been sold by Ford if it did not. Ford also moves *in limine* to preclude Plaintiffs from referring to, either directly or indirectly, or introducing any evidence, about activities undertaken by Ford prior to the adoption of FMVSS 216 in 1973 because such evidence is irrelevant and unduly prejudicial. Evidence concerning these activities by Ford decades ago are so remote in time and the differences between the vehicles researched then and the 2000 Ford Explorer are vast, making any such evidence entirely irrelevant. Fed. R. EVID. 401, 402. Furthermore, such evidence lacks foundation, constitutes inadmissible hearsay and is unfairly prejudicial. Fed. R. EVID. 801 (c), 802, and 403.

Agreed _____    Granted _____    Denied _____

Doc ID EADYM-115179
08423-071

**23.**

**REFERENCES OR INFERENCES THAT FORD MOTOR COMPANY
OR THE AUTO INDUSTRY IMPROPERLY INFLUENCED THE
NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION**

The Petitioning Clause of the First Amendment fully protects citizens' efforts to persuade public officials in all departments of government to adopt a particular position with respect to the passage or enforcement of laws.[1]  Not even ordinary liability, much less punitive liability, may be imposed on the basis of such activity.  *See, e.g., California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11, 513-14 (1972); *United Mine Workers v. Pennington*, 381 U.S. 657, 669-70 (1965); *Eastern R.R. President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135-40 (1961); *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F. 2d 1075, 1083-84 (5th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989).

Agreed _____  Granted _____  Denied _____

**24.**

**ALL NON-FINAL REPORTS FROM THE NATIONAL
HIGHWAY TRAFFIC SAFETY ADMINISTRATION**

Federal Rule of Evidence 803(8) provides an exception to the hearsay rule only for "final reports" of a public agency or office.  *See Smith v. Isuzu Motors Ltd.*, 137 F.3d 859 (5th Cir. 1998) (affirming exclusion of memoranda prepared by staff members of NHTSA as outside the exception in Rule 803(8) – "[I]f memoranda reflecting the preliminary opinions of agency staff members were admissible under Rule 803(8)(A), then Rule 803(8)(C)'s limitations would be meaningless."); *see also Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993) (holding that a document prepared by the Food and Drug Administration which contained only proposed findings was not admissible pursuant to FED. R. EVID. 803(8)(C); *Koonce v. Quaker Safety Products & Mfg. Co.*, 798 F.2d 700, 720 (5th Cir. 1986) (holding that a memo outlining future inquiries into safety measures and offering opinions on expected results was not admissible under FED. R. EVID. 803(8)(C)).  Miscellaneous correspondence is hearsay.  Accordingly, this Court should exclude Plaintiffs' Exhibit List Nos. 176, 177, 178, 179, 180, 181, 182, 183 and 184, various referred to as "letters," "staff items" and "Washington Affairs Safety Status Report."  FED. R. EVID. 801, 802.  The fact that these same documents were used during a deposition does not avoid or solve the hearsay problem.  Ford requests that this Court exclude these documents and grant a limine order precluding all argument and testimony related to these documents.

Agreed _____  Granted _____  Denied _____

---

[1]    The First Amendment to the United States Constitution provides:  "Congress shall make no law . . . abridging the right of the people . . . to petition the government for a redress of grievance."

**25.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING ALLEGED DISCOVERY DISPUTES (IN THIS ACTION OR ANY OTHER ACTION)

Any alleged discovery disputes with Ford in this case *or any other case*. This matter must be excluded because it is irrelevant and prejudicial. This motion extends to any reference to conspiracy claims, "cover up" theories, or spoliation of documents, including any suggestion that Ford has destroyed documents, engaged in fraudulent, deceitful or criminal conduct, or are withholding or hiding any documents, and any comment or suggestion on the lack of any document plaintiffs believe should exist. Specifically, this motion is directed to accusation or argument that Ford intentionally destroyed documents. This motion *in limine* also specifically includes reading to the jury discovery objections made by Ford in response to written discovery or referring to discovery orders in other cases. FED. R. EVID. 401, 402, 403. *This motion is supported by separate brief.*

Agreed _____    Granted _____    Denied _____

**26.**
## REFERENCES TO PRIVILEGED MATERIAL

Any mention or reference made, in any form, about any matters which have transpired between Ford's attorneys and Ford Motor Company and its employees and representatives (including conversations between the attorneys and such persons and/or all transactions connected thereto) about evidence or matters which this Court has determined or determines during the course of the trial to be privileged, and any mention whatsoever that Ford Motor Company has claimed a privilege or has refused to produce any documents on inadmissibility or other grounds, as such matters are not properly evidence in the case and are inadmissible and would prejudice the jury. FED R. EVID. 501; TEX. R. EVID. 513.

Agreed _____    Granted _____    Denied _____

**27.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING LEGAL ADVICE OF COUNSEL OR FORD'S OFFICE OF GENERAL COUNSEL

Any reference to legal advice being sought by Ford employees, or the legal advice rendered by Ford's counsel. Counsel should not be allowed to refer to the request for legal advice or the involvement of legal counsel for the purpose of having the jury infer fault or wrongdoing merely on account of attorney involvement. Before references are made about Ford's Office of General Counsel, counsel for plaintiffs should be required to explain to this Court, outside the jury's presence, how the reference is probative of any fact the jury will be asked to decide and why such references do not violate the public policy made the basis of FED. R. EVID. 501 and TEX. R. EVID. 503.

Agreed _____    Granted _____    Denied _____

Doc ID EADYM-115179
08423-071

**28.**

## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT INTERPRETING DOCUMENTS PRODUCED BY FORD AS EVIDENCE OF FORD'S KNOWLEDGE OR INTENT

This motion extends to testimony by experts hired by plaintiffs who have never worked at Ford, interpreting Ford documents and then proffering "expert opinions" concerning "Ford's" state of mind. Ford moves *in limine* to exclude plaintiffs' witnesses from testifying about the meaning or contents of Ford documents that can be understood by the jury without expert assistance. Ford makes this motion on the following grounds: (1) the admission of such testimony would violate FED. R. EVID. 702 because plaintiffs' witnesses have no scientific, technical or other specialized knowledge about Ford, its decision-making process, or its employees, and areas respecting a party's knowledge, intent, motive, etc. do not require expert testimony since it involves neither scientific, technical or "specialized knowledge"; (2) testimony about documents that are not admissible or have not been admitted into evidence violates the "best evidence" rule; and (3) the probative value, if any, of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay. *This motion is supported by a separate brief.*

Agreed _____     Granted _____     Denied _____

**29.**

## EXCLUDING ANY ARGUMENT THAT THE JURY AWARD AN AMOUNT OF PUNITIVE DAMAGES IN EXCESS OF THAT RECOVERABLE BY STATUTE

The recovery of exemplary damages is strictly limited by law. *See* TEX. CIV. PRAC. & REM. CODE § 41.008. Maximum recovery is limited to (a) two times the amount of economic damages; plus (b) an amount equal to any non-economic damages found by the jury, not to exceed $750,000.

Arguments to the jury to award amounts in excess of that recoverable by law serve no purpose. In fact, permitting counsel to make such arguments is counter to the entire legislative intent to reign in runaway jury verdicts. No situation exists in Texas jurisprudence permitting counsel to exhort a jury to award damages which are not recoverable or permissible. Punitive damages are no exception.

Agreed _____     Granted _____     Denied _____

**30.**

## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING FORD'S NET WORTH, CASH RESERVES, REVENUES, INCOME OR ASSETS

Any reference to or evidence, testimony or argument regarding the size, wealth, financial condition, net worth per vehicle, profit information or nationwide vehicle sales of Ford Motor Company for purposes of imposing punitive damages, as well as limiting the scope of constitutionally permissible evidence supporting a punitive damage verdict/judgment. The U.S.

Doc ID EADYM-115179
08423-071

Supreme Court has severely limited the authority of individual states to regulate conduct beyond the borders of that state through an award of punitive damages. *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513 (2003). Those restrictions, in turn, limit the scope of evidence which may be used at trial. Net worth information fails both bars. Not only does use of net worth information allow extra-territorial regulation through punitive damage awards based upon that evidence, but due process further prohibits punishing a defendant based upon wealth which is unrelated to the plaintiff's specific harm *This motion is supported by a separate brief.*

Agreed _____    Granted _____    Denied _____

### 31.
### EXCLUDING ARGUMENTS SEEKING PUNISHMENT ON BEHALF OF INDIVIDUALS WHO ARE NOT PARTIES, OR REFERENCES TO SALES OF VEHICLES AND ACCIDENTS OUTSIDE THE STATE OF TEXAS

More generally, plaintiffs' counsel should be prohibited from asking the jury to award punitive damages based on Ford's sales of other vehicles, the occurrence of other accidents, or the alleged risk or danger to non-parties, whether within or outside the State of Texas. The Supreme Court has stated:

> Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis.... Punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains.

*State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1523 (2003).

To permit plaintiffs to argue to the jury in this case that the amount of any punishment should be based in part on other vehicle sales or on injuries (whether real or hypothetical) to non-parties would engender the very risk of excessive, multiple punishments about which the Supreme Court expressed concern in *State Farm*. Nor do simple notions of federalism permit any state court to regulate conduct outside the State of Texas. 123 S. Ct. at 1523 ("A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction."); *id.* at 1522 ("A State cannot punish a defendant for conduct that may have been lawful where it occurred. As a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction. Any proper adjudication of conduct that occurred outside [the forum state] to other persons would require their inclusion [in the case]....") (citations omitted).

Agreed _____    Granted _____    Denied _____

14

**32.**
## LIMITATION OF PUNITIVE DAMAGES

Reference to the statutory limit on the recovery of punitive damages imposed by Texas Civil Practice and Remedies Code §41.007. Any mention of the limit would be confusing, prejudicial, and contrary to the law of Texas. *See* TEX. CIV. PRAC. & REM. CODE §41.008 ("The provisions of subsections (a) and (b) may not be made known to the jury by any means, including *voir dire*, introduction into evidence, argument or instruction"); FED. R. EVID. 403.

Agreed    _____    Granted    _____    Denied    _____

**33.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING OPINIONS THAT FORD'S CONDUCT RISES TO THE LEVEL SUFFICIENT TO AWARD PUNITIVE DAMAGES, OR THAT THE PRODUCT WAS "UNREASONABLY DANGEROUS"

Any opinions that Ford acted with "malice" or "gross negligence." Use of "expert testimony" to bolster that which is nothing more than argument of counsel is improper, and this Court should (a) instruct counsel not to elicit such opinions, and (b) instruct witnesses to refrain from volunteering such opinions. FED. R. EVID. 701, 704; *see, e.g., K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357 (Tex. 2000) (holding that trial court properly granted pretrial motion to exclude expert opinions, about which the jury was equally competent to form an opinion); *GET Southwest, Incorporated v. Bruce*, 998 S.W.2d 605 (Tex. 1999) (stating that "where, as here, the issue involves only general knowledge and experience rather than expertise, it is within the province of the jury to decide, and admission of expert testimony on the issue is error"). Opinions which merely tell the jury what result to reach should be excluded by the trial court. *See Torres v. County of Oakland*, 758 F. 2d 147, 150-51 (6th Cir. 1985). When, as here, the proposed testimony offers a legal opinion, it is inadmissible. *See Estate of Sowell v. U.S.*, 198 F. 3d 169 (5th Cir. 1999); *Askanese v. Fatjo*, 130 F. 3d 657 (5th Cir. 1977). The test of whether the proposed testimony is a legal opinion is to "determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Torres v. County of Oakland*, 758 F. 2d at 151. If they do, exclusion is appropriate. *Id; see also Strong v. E. I. DuPont de Nemours Co., Inc.*, 667 F. 2d 682, 685-86 (8th Cir. 1981)(trial court properly prohibited witnesses from testifying that the lack of adequate warnings and instructions constituted defects which made the products unreasonably dangerous.) On these matters, the jury is capable of drawing its own inferences from the available evidence.

Agreed    _____    Granted    _____    Denied    _____

Doc ID EADYM-115179
08423-071

**34.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY OR ARGUMENT CONCERNING ASKING THE JURY TO "SEND A MESSAGE" OR ACT AS "THE CONSCIENCE OF THE COMMUNITY"

References in opening statement, closing argument, or at any other point of the trial, that jury members should "send a message" to Ford's boardroom, or act as "conscience of the community," or to consider similar and equally improper factors in determining whether to award compensatory or punitive damages, or in determining the size of such awards. Such instructions are inherently prejudicial because they, on their face, urge the jury to render its verdict based on "passion and prejudice." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 426 (1994). Arguments pitting the local jurors against a large, out-of-state corporation "distract the jury from its 'sworn duty to reach a fair, honest and just verdict according to the facts and evidence presented at trial.'" *Whitehead v. Food Max*, 163 F.3d 265, 277 (5th Cir. 1988) (quoting *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1238-39 (5th Cir. 1985) ("Our condemnation of a 'community conscience' argument is not limited to the use of those specific words, it extends to all impassioned and prejudicial pleas intended to invoke a sense of community loyalty, duty and expectation. Such appeals serve no proper purpose and carry the potential of substantial injustice when invoked against outsiders."); *Griffith v. Mt. Carmel Medical Ctr.*, 842 F. Supp. 1359, 1362 (D. Kan. 1994) (stating plaintiffs' counsel made comments referring to their own personal indignation, asking the jurors to "send a message," and suggesting that the jurors put themselves in plaintiffs' position were "inappropriate"); *see also, Hoffman v. Brandt*, 65 Cal. 2d 549, 552-53 (1966) (reversing "a deliberate attempt by counsel to appeal to social or economic prejudices of the jury"); *Malkasian v. Irwin*, 61 Cal. 2d 738, 847-47 (Cal. Ct. App. 1964); *cf. United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992) (prosecutor's inflammatory remark that jury should be a "bulwark" against drugs improperly incited jurors to be the "conscience of the community"); *United States v. Solivan*, 937 F.2d 1146, 116-53 (6th Cir. 1991) (reversing conviction based on prosecutor's closing argument urging jurors to "send a message;" finding such appeals "extremely prejudicial and harmful"); *Pierce v. Platte-Clay Electric Cooperative*, 769 S.W.2d 769, 779 (Mo. 1989) (such "send a message" arguments are inappropriate); *New York Central R.R. Co. v. Johnson*, 279 U.S. 310, 319 (1929) (references to defendant as "eastern railroad" that had "come into this town" and witnesses "sent on from New York" "have so often been condemned as an appeal to local or sectional prejudice as to require no comment"). Because there is no place in this trial for such unfairly prejudicial argument, the Court should preclude Plaintiffs from attempting to engage in such tactics.

Agreed _____    Granted _____    Denied _____

16

**35.**
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THE SIZE, LOCATION, SPECIALIZATION OR REPRESENTATION BY FORD'S COUNSEL

Any reference to or evidence, testimony or argument regarding whether the attorneys for Ford in this lawsuit regularly represent Ford, other defendants, corporations or insurance companies or manufacturers in lawsuits; that they specialize in product-liability cases or cases involving "car rollovers"; that they have ever represented Ford across the country in lawsuits "just like this one"; that defense counsel is supervising, coordinating, regional or national counsel for Ford or some other automobile manufacturer; the number of attorneys who are members of the firms in which Ford's attorneys practice or the number of attorneys or firms who have appeared on Ford's behalf in this case; the cities in which Ford's counsel has offices, or the residences of any counsel representing Ford in this lawsuit as the same is irrelevant and prejudicial. FED. R. EVID. 401, 402, 403.

Agreed _____    Granted _____    Denied _____

**36.**
## COMMENTS OR ARGUMENTS ABOUT FORD'S CORPORATE STATUS OR OUT-OF-STATE RESIDENCE

Ford Motor Company's status as a foreign corporation and the location of its corporate headquarters in Michigan are irrelevant. Arguments which incorporate these facts serve no purpose other than to inflame the passion and prejudice of the jury by invoking anti-corporate and regional biases. These types of arguments are universally condemned. *See Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 275-78 (5th Cir. 1998) (granting new trial because, *inter alia,* counsel's closing argument improperly emphasized defendant's status as a national corporation with out-of-state headquarters); *Pappas v. Middle Earth Condominium Ass'n,* 963 F.2d 534, 539-41 (2d Cir. 1992) ("No verdict may stand when it is found in any degree to have been reached as a result of appeals to regional bias or other prejudice."); *Westbrook v. Gen. Tire & Rubber Co.,* 754 F.2d 1233, 1238, 1241 (5th Cir. 1985) ("us-against-them plea can have no appeal other than to prejudice by pitting 'the community' against a nonresident corporation"); *City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749, 757-58 (6th Cir. 1980) (new trial ordered because comments "which were intended to inform and emphasize that [defendant] had its corporate 'residence in another state'...'obviously designed to prejudice the jurors'") (citation omitted); *LeBlanc v. Am. Honda Motor Co.,* 688 A.2d 556, 560-61 (N.H. 1997) (counsel's improper appeals to bias against Japanese corporation warranted new trial); *Reetz v. Kinsman Marine Transit Co.,* 330 N.W.2d 638, 646 (Mich. 1982) (affirming appellate court's ordering of new trial because, *inter alia,* comment by counsel created an image of defendant "as an unfeeling, powerful corporation" such that "[e]ven a juror who harbored no prejudice against corporations or millionaires might have been swayed by these inflammatory remarks to alter his view of the evidence"); *Gordon v. Nall,* 379 So.2d 585, 586-87 (Ala. 1980) (remarks by counsel during closing argument that corporate defendant "doesn't have a heart, it doesn't have a soul, it has a board of directors" were highly prejudicial and required reversal; "[s]uch argument serves no purpose but to inflame the jury to the prejudice of a party that happens to be a corporation"); *Shell Oil Co. v. Pou,* 204 So.2d 155, 157 (Miss. 1967) (condemning argument "that the

17

defendant was a corporation, had no soul, could neither go to heaven nor hell and that 'the way that the law punishes a corporation for not paying their debts in a case like this, if you find that they owe actual damage, is to require them to pay a punitive damage'" because "[a]ppeals to passion and prejudice are always improper and should never be allowed"); *Southern-Harlan Coal Co. v. Gallaier*, 41 S.W.2d 661, 663 (Ky. 1931) ("No attempt should be made to prejudice the jury by the fact that the defendant is a corporation"); *Rockwell Int'l Corp. v. Wilhite*, No. 1997-CA-000188-MR, 2003 WL 21826306, at *21 (Ky. Ct. App. Aug. 8, 2003) (reversing punitive award because plaintiff had inflamed passion and prejudice by making improper references to defendant's out-of-state residence and corporate status); Annotation, *Counsel's Appeal to Racial, Religious, Social, or Political Prejudices or Prejudice Against Corporations as Ground for a New Trial or Reversal*, 78 A.L.R. 1438, 1485-86 (1932) ("judgments against corporations have been reversed because of argument of counsel for the adverse party tending to arouse prejudice against the corporation because of its nonresidence") (collecting cases); *cf. Nishihama v. City & County of San Francisco*, 112 Cal. Rptr. 2d 861, 865 (Cal. Ct. App. 2001) ("[A]rguments aligning the plaintiff with 'our families, our children'...tend[] to deflect the jury from their task.").

Agreed    _____    Granted    _____    Denied    _____

## 37.
## EXCLUDING ANY REFERENCE TO DEFENDANTS' COUNSEL'S ARGUMENTS IN OTHER CASES

Counsel's arguments in other cases, including statements made by Mr. Anthony Sonnet during closing arguments of the punitive damage phase in a case styled *Benetta Buell-Wilson, et al. v. Ford Motor Company, et al.*, California Superior Court, San Diego County, No. GIC800836 *("Buell-Wilson")*. First, statements made by an attorney during closing arguments are simply not evidence. *Torres v. State*, 975 S.W.2d 345, 353 (Tex. App.—Corpus Christi 1998, n.p.h.) ("The State did suggest this in its closing statement, but statements by counsel are not evidence. . . ."); *Moreno v. State*, 1, S.W.2d 846, 855 (Tex. App.—Corpus Christi 1999, pet'n denied) (distinguishing between evidence presented at trial and statements made during closing argument); *Alfaro v. State*, 2002 Tex. App. LEXIS 7958 (Tex. App.—Corpus Christi 2002, n.p.h.) ("[t]he complained-of-statement of the prosecutor was made during the State's closing statement and, therefore, does not constitute evidence."); *In Re A.L.R.*, 2002. Tex. App. LEXIS 8959 (Tex. App.—Austin 2002, n.p.h.) ("[t]his assertion was made by trial counsel during closing argument and does not amount to evidence."); *Day v. State*, 2001 Tex. App. LEXIS 8597 (Tex. App.—Dallas 2001, pet'n denied) ("[s]tatements made during closing argument are not evidence. . . ."); 1 Cal. Jury Instr. Civ. 0.50 (Jan. 2004)(" [s]tatements made by the attorneys during the trial are not evidence."). Second, any such reference can only serve to confuse the jury and unduly lengthen the trial by requiring Defendants' counsel to respond to such "out-of-context" remarks. FED. R. EVID. 401, 403. Merely requiring counsel to approach the bench and explain the necessity and relevance of referring to remarks by Defendants' counsel in other cases will exemplify the point made herein.

Agreed    _____    Granted    _____    Denied    _____

Doc ID EADYM-115179
08423-071

**38.**

## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CHARACTERIZING FORD'S COUNSEL OR EXPERTS AS "HIRED GUNS," "A TRAVELING ROAD SHOW" OR "CIRCUS," "A DOG AND PONY SHOW," OR OTHER SIMILAR DEROGATORY REMARKS

Any statements by plaintiffs' counsel characterizing Ford's counsel or experts as "hired guns," "a traveling road show" or "circus," "a dog and pony show," or other similar derogatory remarks. These statements are untrue and would be highly prejudicial to Ford. FED. R. EVID. 403.

Agreed _____     Granted _____     Denied _____

**39.**

## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT REFERRING TO "VICTIMS"

Any reference to Plaintiffs in this case or their decedents as "victims". This term incorrectly implies the existence of a "criminal" legal proceeding and serves only to improperly inflame certain jurors and to violate their oath not to let bias, sympathy, or prejudice play any part in their deliberations. The terms "injured party" and "plaintiff," or even using the Plaintiffs' names, are viable alternatives which do not pose the same problem. FED. R. EVID. 403.

Agreed _____     Granted _____     Denied _____

**40.**

## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING PERSONS IN THE COURTROOM ASSISTING COUNSEL

Any reference to persons present or not present in the courtroom at any time during trial, including observers of the trial or inquiries regarding the identity of any observers. FED. R. EVID. 401, 403.

Agreed _____     Granted _____     Denied _____

**41.**

## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THE ABSENCE OR IDENTITY OF FORD'S CORPORATE REPRESENTATIVE

Any reference to the fact that Ford may not have a representative at trial at any particular time or to Ford's choice of its corporate representative as not being the appropriate person to respond to plaintiffs' allegations. The existence or nonexistence of a corporate representative is non-evidentiary. It has no bearing upon any issue to be decided by the jury. It asks the jury to infer liability or conscious indifference from something unrelated to the product's manufacture, design, or sale. The remark asks the jury to disobey the Court's instructions and decide the case not solely upon the evidence presented.

Doc ID EADYM-115179
08423-071

Agreed _____    Granted _____    Denied _____

## 42.
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING OBJECTIONS OF COUNSEL DURING DEPOSITIONS

Reading or playing anything included in deposition transcripts or trial transcripts other than questions by the lawyers and answers by the witnesses, specifically comments or sidebar remarks by the lawyers. Reading objections to the jury diverts attention from the witness testimony and is merely intended to place the lawyer in a bad light and ask the jury to infer the client is liable because the lawyer appears to a layperson to be obstructionist.

Agreed _____    Granted _____    Denied _____

## 43.
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING SETTLEMENT OFFERS

Any offer of settlement or compromise made on behalf of Ford to plaintiffs, or on behalf of plaintiffs to Ford, and/or any comments by any Ford employee or agent regarding any proposed settlement or settlement process in this *or any other case*. This motion *in limine* extends to comments such as, "Ford settled that case," or that such settlements are "secret," or that the amounts paid are "concealed" from the public, thereby improperly asking the jury to equate settlement with admitted liability. This motion further extends to statements about "sealing" of amounts paid to settle any case. FED. R. EVID. 401, 402, 403, 408.

Agreed _____    Granted _____    Denied _____

## 44.
## HEARSAY/STATEMENTS BY PLAINTIFFS' TREATING PHYSICIANS

Evidence of statements made by medical doctors who treated anyone injured in this accident. Any such statements are inadmissible hearsay. FED. R. EVID. 802.

Agreed _____    Granted _____    Denied _____

## 45.
## EXCLUDING ANY REFERENCE TO OR EVIDENCE, TESTIMONY, ORAL ARGUMENT CONCERNING ANY REQUEST BY FORD TO EXCLUDE CERTAIN EVIDENCE

Any reference to the fact that Ford has filed this motion or any other motion or has requested the Court to exclude any evidence at trial.

Agreed _____    Granted _____    Denied _____

Doc ID EADYM-115179
08423-071

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.


By: *Michael W. Eady*
     William L. Mennucci (Attorney in Charge)
     State Bar No. 00788042
     Federal Bar I.D. 18172
     bmennucci@thompsoncoe.com
     Michael W. Eady (Of Counsel)
     State Bar of Texas No. 06332400
     Federal Bar I.D.14591
     meady@thompsoncoe.com
     701 Brazos Street
     Suite 1500 Austin Centre
     Austin, Texas 78701
     (512) 708-8200 Telephone
     (512) 708-8777 Fax

OF COUNSEL:

Gerald Giordano
SNELL & WILMER, L.L.P.
One South Church Tower
Suite 1500
Tucson, Arizona 85701
(520) 882-1214 (telephone)
(520) 884-1294 (fax)

Jaime A. Saenz
State Bar No. 17514859
RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
Telephone:  (956) 542-7441
Facsimile:  (956) 541-2170

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

21

Doc ID EADYM-115179
08423-071

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been forwarded as set forth below to the following attorney(s) on this 10th day of June, 2005:

Benigno (Trey) Martinez
Tony Martinez
MARTINEZ, BARRERA Y MARTINEZ, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520

*Michael W. Eady*
Michael W. Eady

22