UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN<br>　　　　Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY, AND AUTOMOTRIZ DEL NORESTE, S.A. DE C.V.<br>　　　　Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO. B-03-120 |

### DEFENDANT FORD MOTOR COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE, OR ALTERNATIVELY, MOTION *IN LIMINE* NO. 21 TO EXCLUDE "FRAUD-ON-NHTSA" ALLEGATIONS

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendant Ford Motor Company ("Ford") hereby submits this brief in support of its motion to exclude any reference to or evidence, testimony, or argument regarding any allegation of concealment or misrepresentation by Ford to the National Highway Traffic Safety Administration ("NHTSA"). These so-called "fraud-on-NHTSA" allegations are irrelevant to this action because federal law preempts any state law cause of action that relies upon contentions of fraud against a federal agency. Accordingly, any reference to such allegations must be excluded under Rule 402 of the Federal Rules of Evidence. Moreover, even if the Court were to determine that these "fraud-on-NHTSA" allegations have some relevance, any such relevance is substantially outweighed by the "inevitable conflict" these allegations create with the federal regulatory scheme and the manifest danger of extreme prejudice to Ford. Rule 403 therefore independently mandates the exclusion of any reference to these allegations.

1

Doc ID EADYM-115751
08423-071

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Any contentions plaintiffs may raise related to alleged "fraud-on-NHTSA" will inevitably conflict with the federal regulatory scheme and are therefore preempted. Plaintiffs' complaint alleges that, had Ford not misled NHTSA or concealed relevant information from the agency, NHTSA would have ordered a recall, which in turn might have prevented the accident that caused the injuries at issue in this lawsuit.

**II.   LEGAL ARGUMENT**

    **A.    <u>Any "Fraud-on-NHTSA" Claim Is Preempted By Federal Law.</u>**

Federal law preempts any allegation by plaintiffs contending that Ford committed fraud on NHTSA. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001). In a landmark ruling, the U.S. Supreme Court held that allegations of fraud on federal agencies "inevitably conflict" with the federal legislative and regulatory scheme giving federal agencies broad discretion to balance their policy objectives in regulating disclosures made to them, and are therefore preempted. *Id.* at 350.

In contentions mirrored in this case, the plaintiffs in *Buckman* asserted claims under state law that were based upon alleged violations of requirements to disclose information to a federal agency, there the Food and Drug Administration ("FDA"). *Id.* at 343-44. Plaintiffs alleged that the defendants made fraudulent representations to the FDA regarding an allegedly defective medical device and that as a result the devices were improperly put on the market and were subsequently used to plaintiffs' detriment. *Id.* at 347. In analyzing the preemption issue presented in *Buckman*, the Supreme Court emphasized that the states have always been far removed from any involvement in the determination of claims that a federal agency has been defrauded:

2

> Policing fraud against federal agencies is hardly a field which the States have traditionally occupied .... To the contrary, the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law.

*Id.* at 347 (internal quote and citation omitted). Starting from its conclusion that there was accordingly no basis for a presumption against preemption, the Supreme Court held that the state law fraud-on-the-agency claim in *Buckman* conflicted with and was therefore preempted by federal law. *Id.* at 347, 353.

Specifically, the Court concluded that there is an inescapable conflict between a state-law claim based on regulatory fraud and the federal law governing required disclosures to the agency. "State-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." *Id.* at 350 (emphasis added). The Court explained the nature of the conflict as follows:

> The conflict stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration, and that this authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives. The balance sought by the Administration can be skewed by allowing fraud-on-the-FDA claims under state tort law.

*Id.* at 348. The Court pointed out, among other factors, that if regulated manufacturers were required to assess their disclosure obligations to the agency "in the shadow of 50 States' tort regimes," they would fear that their disclosures "will later be judged insufficient in state court. Applicants would then have an incentive to submit a deluge of information that the Administration neither wants nor needs...." *Id.* at 350-51. In addition, permitting state-law suits for fraud on a federal agency would subject the agency to inquiries into its internal deliberations and second-guessing by state courts of the outcome of particular investigations or proceedings. The prospect of such intrusive inquiries and attendant litigation poses significant potential for diverting an agency's resources and distorting its internal decision-making processes.

3

Numerous courts have recognized that state-law-based allegations that second-guess the judgments of federal agencies-even based on a claim that the agency lacks complete information-"inevitably conflict" with the regulatory and administrative systems of the United States government. For example, in a prescient opinion several years prior to *Buckman*, the Eleventh Circuit held preempted state common law fraudulent misrepresentation claims that relied upon an allegation of fraud-on-the-Coast Guard to prove causation. *Lewis v. Brunswick Corp.*, 107 F.3d 1494 (11th Cir. 1997) overruled in part by *Sprietsma v. Mercury Marine*, 537 U.S. 154 L.Ed.2d 466, 123 S. Ct. 518 (2002).[1] The court concluded that:

> Regulatory fraud claims of this nature are impliedly preempted for fundamental, systemic reasons. Permitting such claims would allow juries to second-guess federal agency regulators through the guise of punishing those whose actions are deemed to have interfered with the proper functioning of the regulatory process. If that were permitted, federal regulatory decisions that Congress intended to be dispositive would merely be the first round of decision making, with later more important rounds to be played out in the various state courts. Virtually any federal agency decision that stood in the way of a lawsuit could be challenged indirectly by a claim that the industry involved had misrepresented the relevant data or had otherwise managed to skew the regulatory result. ... Congress could not have intended for the [regulatory] process it so carefully put into place to be so easily and thoroughly undermined.

*Id.* at 1505.

And post-*Buckman*, in *Morgan v. Brush Wellman*, the court dealt with a conspiracy claim alleging that "Brush Wellman and other defendants participated in a 50-year conspiracy to keep the actual dangers of beryllium exposure secret" and that "the United States, through the Department of Energy ["DOE"] and OSHA, was a victim of this conspiracy. Allegedly because of the effectiveness of this conspiracy, DOE and its contractors failed" to properly address the

---

[1] Specifically, the plaintiffs in *Lewis* claimed that the defendant "exaggerated the performance differences between [boat engines with and without propeller guards] to discourage government agencies from adopting a safety standard requiring propeller guards." *Id.* at 1497.

4

dangers of beryllium exposure. 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001). The *Brush Wellman* court held that claims of fraud-on-the-DOE were preempted under *Buckman*:

> [Similar to *Buckman*], in this case, the DOE must balance policy objectives including economics and national security needs. The DOE determined that [the beryllium exposure] standard was appropriate in light of these policy objectives, and plaintiffs' allegations that the exposure standard for beryllium was the result of a conspiracy of fraud conflicts with the DOE's ability to set nuclear policy consistent with its own judgment and objectives.

*Id.* at 722. Indeed, the Court has concluded on numerous, similar occasions that "conflict is imminent when two separate remedies are brought to bear on the same activity." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 380 (2000); *Wisconsin Dep't of Indus. v. Gould, Inc.*, 475 U.S. 282, 286 (1986); *Garner v. Teamsters*, 346 U.S. 485, 498-99 (1953).

The same "inevitable conflict" created by the fraud-on-the-agency claims in *Buckman* with respect to the FDA also exists here with respect to NHTSA. That agency is charged with providing uniformity of federal regulation over motor vehicle safety, just as is the FDA for medical devices. *See, e.g.*, S. Rep. No. 89-1301, at 2, 4 (1966) (Motor Vehicle Safety Act), *reprinted in* 1966 U.S.C.C.A.N. 2709, 2712, 2714. Like the FDA, NHTSA has promulgated detailed reporting requirements to assist it in carrying out their statutory and regulatory duties. *See* 49 C.F.R. Part 573 (NHTSA defect reporting requirements); 49 C.F.R. Part 577 (NHTSA defect notification requirements). NHTSA also has broad information gathering powers and established investigative procedures. *See* 49 C.F.R. Part 510; U.S. Dep't of Transp., DOT HS 805-709, *Motor Vehicle Defects and Recall Campaigns* at 5-6 (Jan. 1990) (discussing three-tier NHTSA investigation process provided in 49 C.F.R. § 554).

Most significantly, like the FDA, NHTSA must exercise discretion in deciding the scope and manner of its investigations and in making judgments about whether a particular regulated product complies with the federal statutory requirements for safety. *See, e.g.*, 45 Fed. Reg.

5

10,796, 10,796 (Feb. 19, 1980) (NHTSA) ("Offices within the agency exercise their collective judgment as to the necessity for an investigation, given the particular facts of any case."); 49 U.S.C. §§ 30118(d), 30120(d) (NHTSA can choose not to order notice or a recall if risks presented are "inconsequential to motor vehicle safety"); *Id.* § 30119(d)(3); U.S. Dep't of Transp., DOT HS 805-709, *Motor Vehicle Defects and Recall Campaigns* at 5-6 (Jan. 1990) (NHTSA) (discussing initial screening of reports of defect as a way "to quickly discriminate" between isolated problems and those that bear further investigation); General Accounting Office/CED-82-00, *Changes to the Motor Vehicle Recall Program Could Reduce Safety Hazards* at 6-7, 31 (Aug. 24, 1982) (similar); *cf.* 44 U.S.C. §§ 3501, 3507 (Paperwork Reduction Act; mandating consideration of burden on responding parties when assessing need for reporting requirement by *any* agency).

As with the FDA, federal law amply empowers NHTSA to police any "fraud on the agency" when the agency decides that a manufacturer has failed to comply with the reporting obligations. Both agencies may invoke 18 U.S.C. § 1001, the general fraud-on-the-federal-government provision. In addition, NHTSA, like the FDA, is empowered to police fraud by using their authority to impose civil penalties and bring civil actions. *See, e.g.*, 49 U.S.C. §§ 30121(b), 30163, 30165(a), 30166(g)-(h); 49 C.F.R. Part 31, § 510.12, Part 578. Like the FDA, NHTSA has broad discretion to consider many factors in determining whether to impose a penalty, and, if so, in what amount. *See, e.g.*, 49 U.S.C. §§ 30165(b)-(c), 30166. If fraud on NHTSA had resulted in a safety defect, NHTSA could order a recall to repair or replace the vehicle. *See* 49 U.S.C. §§ 30118-21; 49 C.F.R. § 577.6; 42 U.S.C. § 7541(c).

Thus, the same considerations recognized in *Buckman* also motivated Judge Sarah Evans Barker of the United States District Court for the Southern District of Indiana to dismiss certain

claims in the federal multi-district litigation proceeding regarding Firestone tires (the "Firestone MDL"). *See In re Bridgestone/Firestone, Inc., ATX, ATXII and Wilderness Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935 (S.D. Ind. 2001). After noting that "[t]he Safety Act ... sets forth a comprehensive scheme for prospective relief from dangerous features in vehicles," Judge Barker concluded that:

> [T]he Secretary can determine that a defect or noncompliance is sufficiently inconsequential as to not warrant notification or a remedy. Should NHTSA reach this decision about a particular defect or noncompliance, a court ruling essentially overturning the Secretary's decision on the basis of state law would obviously upset the congressional intent of leaving the question to an agency with the expertise, experience, and resources to reach sound decisions. ... In a more practical vein, the prospect of conflict between judicial proceedings on the basis of state law and action by the agency is patently clear in the information-gathering process envisioned by the Safety Act.

*Id.* at 945-46 (internal citations and quotations omitted).

Concluding in *Buckman*, the Supreme Court observed that "if the existence of ... federal enactments is a critical element of [plaintiff's] case ... we think this sort of litigation would exert an extraneous pull on the scheme established by Congress, and it is therefore preempted by that scheme." 531 U.S. at 353. It is clear that the federal enactments discussed above (*e.g.*, the Motor Vehicle Safety Act and the regulations promulgated thereunder) are a "critical element" of plaintiffs' case here. As such, plaintiffs' claims are preempted by federal law and evidence, testimony, and argument relating to these allegations should be precluded.

B.  **Evidence, Testimony, And Allegations Related To Fraud-On-The-Agency Contentions Will Cause Undue Prejudice And Confusion And Should Therefore Be Precluded.**

Even if this Court should determine that "fraud-on-NHTSA" allegations have some relevance to the issues presented in this case, it should nonetheless preclude all such allegations under Rule 403 of the Federal Rules of Evidence. This rule allows a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.

7

"'Unfair prejudice' means 'an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'"

Here, "fraud-on-NHTSA" allegations are unduly prejudicial and confusing because they inevitably lead the jury to second-guess NHTSA's decision-making process and/or predicate a finding of liability against Ford on an impermissible basis. The NHTSA-related contentions contained in plaintiffs' complaint "inevitably conflict" with the federal regulatory scheme authorizing NHTSA to act (or not act) because such contentions inevitably lead the jury to consider the very issues that *Buckman* prohibits them from addressing. *See also, e.g., Wilderness Tires*, 153 F. Supp. 2d at 945 ("NHTSA's broad discretion coupled with the specificity of the sections of the Safety Act dealing with [recall] notification and [recall] remedies cause us to conclude that Congress intended to establish comprehensive administrative regulation of recalls to promote motor vehicle safety.").

Indeed, the Court in *Buckman* was so vigilant in its protection of federal-agency discretion that the Court found that "parties injured by fraudulent representations to federal agencies would have no remedy even if [a court believed that] such a remedy would have no adverse consequences upon the operation or integrity of the regulatory process." *Buckman*, 531 U.S. at 355 (Stevens, J., concurring) (recounting majority view); *see also Id.* at 350 (finding that such state law claims inevitably conflict with federal law) (Rehnquist, C.J., opinion of the Court).

This Court must maintain the same level of vigilance, and should therefore grant this motion *in limine*.

Doc ID EADYM-115751
08423-071

## III.   CONCLUSION

Any "fraud-on-NHTSA" contention advanced by plaintiffs are preempted by federal law. Thus, any reference to or evidence, testimony or argument relating to such a "fraud-on-NHTSA" theory is irrelevant and inadmissible under FEDERAL RULE OF EVIDENCE 402.

Furthermore, even if this Court finds that plaintiffs' "fraud-on-NHTSA" allegations are relevant, the probative nature of such allegations are substantially outweighed by the "inevitable conflict" these allegations create with the federal regulatory scheme and the manifest danger of extreme prejudice to Ford.  Accordingly, any reference to or evidence, testimony or argument regarding a "fraud-on-NHTSA" theory must be excluded under FED. R. EVID. 403.

Doc ID EADYM-115751
08423-071

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: /s/ Michael W. Eady
William L. Mennucci (Attorney in Charge)
State Bar No. 00788042
Federal Bar I.D. 18172
bmennucci@thompsoncoe.com
Michael W. Eady (Of Counsel)
State Bar of Texas No. 06332400
Federal Bar I.D. 14591
meady@thompsoncoe.com
701 Brazos Street
Suite 1500 Austin Centre
Austin, Texas 78701
(512) 708-8200 Telephone
(512) 708-8777 Fax

OF COUNSEL:

Gerald Giordano
SNELL & WILMER, L.L.P.
One South Church Tower
Suite 1500
Tucson, Arizona 85701
(520) 882-1214 (telephone)
(520) 884-1294 (fax)

Jaime A. Saenz
State Bar No. 17514859
RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Facsimile: (956) 541-2170

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

Doc ID EADYM-115751
08423-071

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing instrument has been forwarded as set forth below to the following attorney(s) on this 10th day of June, 2005:

Benigno (Trey) Martinez
Tony Martinez
MARTINEZ, BARRERA Y MARTINEZ, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520

*/s/ Michael W. Eady*
Michael W. Eady

Doc ID EADYM-115751
08423-071