UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN §§§§§ Plaintiffs, § § vs. § § FORD MOTOR COMPANY, AND § AUTOMOTRIZ DEL NORESTE, S.A. DE § C.V. § Defendants. § | CIVIL ACTION NO. B-03-120 |

**DEFENDANT FORD MOTOR COMPANY'S MOTION
TO EXCLUDE, OR ALTERNATIVELY, MOTION IN
LIMINE NO. 30 LIMITING FINANCIAL EVIDENCE**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendant Ford Motor Company ("Ford") hereby files this brief in support of its motion to exclude evidence of Ford's size, wealth, financial condition, net worth, and gross profit information. As described more particularly below, Ford alternatively moves for entry of an order in limine excluding at trial any reference to or evidence, testimony, or argument regarding punitive damages evidence in the form of evidence of Ford's wealth, size, and gross revenues.

**I.   LEGAL ARGUMENT**

**A.   A Defendant's Wealth May Not Consistent with Substantive Due Process be Utilized as a Basis to Arbitrarily Inflate a Punitive Damage Award.**

Assuming the Plaintiffs are entitled to an award of punitive damages, which they are not, the U.S. Supreme Court has now twice rejected the use of evidence of wealth to uphold otherwise unconstitutional punitive damage award. *See BMW of North America, Inc. v. Gore,*

1

Doc ID EADYM-115760
08423-071

517 U.S. 559, 116 S.Ct. 1589 (1996); *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

Although the legal justifications for punitive damages are analogous to that for criminal punishment, all the procedural and substantive protections heretofore available to the criminal defendant have not been extended to the civil context. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex. 1994); *see also Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001) ("Although those awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding."). Punitive damages therefore "pose an acute danger of arbitrary deprivation of property." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994). Imposed indiscriminately, punitive damages have a devastating potential for harm. *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 42 (1991) (O'Connor, J., dissenting) ("[g]reat care must be taken to avoid use of the civil process to assess criminal penalties that can be imposed only after the heightened protections of a criminal trial have been observed, including, of course, its higher standards of proof."); *see also Moriel*, 879 S.Ct. at 17 ("Our duty in civil cases, then, like the duty of criminal courts, is to ensure that defendants who deserve to be punished in fact receive an appropriate level of punishment, while at the same time preventing punishment that is excessive or otherwise erroneous.").

Constitutional concerns are heightened when, as here, plaintiffs seek to present evidence to justify a higher award of punitive damages, which "has little bearing as to the amount of punitive damages that should be awarded." *State Farm*, 123 S.Ct. at 1520. State legislatures "enjoy broad discretion in authorizing and limiting permissible punitive damages awards." *Cooper Industries*, 532 U.S. at 431. Nonetheless, the Due Process Clause of the Fourteenth

Amendment to the United States Constitution imposes "substantive limits on that discretion." *Id.* at 433; *Honda Motor Co. v. Oberg*, 512 U.S. 415 (1995); *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991). Consistent with the Due Process Clause of the Fourteenth Amendment, state courts may not impose arbitrary punishments on a tortfeasor. *Cooper Industries*, 532 U.S. at 433. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *Gore*, 517 U.S. at 574.

In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589 (1996), the U.S. Supreme Court adopted three guideposts by which the constitutionality of any punitive damage award would be judged: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damage award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. 517 U.S. at 574-75, 116 S.Ct. at 1598. In adopting these guideposts, the *Gore* Court *rejected* Dr. Gore's contention, and that espoused by nearly every state allowing recovery of punitive damages, that a defendant's wealth alone could not justify a heightened penalty:

> The fact that [a defendant] is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several states impose on the conduct of its business. Indeed, [a corporation's] status as an active participant in the national economy implicates the federal interest in preventing individual states from imposing undue burdens on interstate commerce."

*Gore*, 517 U.S. at 585.

3

Doc ID EADYM-115760
08423-071

Despite the *Gore* court's *purposeful omission* of wealth as a guidepost pertinent to the constitutional analysis, many state legislatures and courts retained the use of wealth or "net worth" as the main factor in justifying a higher "amount" of damages. In Texas, for example, the legislature has gone as far as to mandate that courts instruct juries when determining the amount of exemplary damages to consider evidence relating to "the net worth of the defendant." TEX. CIV. PRAC. & REM. CODE § 41.011(a)(6).

In response to this reluctance to heed the holdings in *Gore*, the U.S. Supreme Court granted certiorari in *State Farm Mut. Automobile Ins. Co. v. Campbell, supra*. A Utah jury awarded the Campbell's $2.6 million in compensatory damages and $145 million in punitive damages in a third-party insurance bad faith case. The trial court subsequently reduced the award to $1 million and $25 million. On appeal, the Utah Supreme Court, adopting the plaintiffs' arguments here and elsewhere, reinstated the full amount of the jury's award, identifying as grounds therefor State Farm's national scheme or pattern of reprehensible conduct and "massive wealth."[1] In stark contrast, the U.S. Supreme Court rejected both arguments and

---

[1] The first of seven "Crookston" factors utilized by Utah courts to determine whether the amount of a punitive damage award is excessive, is "the relative wealth of the defendant." *Campbell v. State Farm Mut. Automobile Ins. Co.*, 65 P.3d 1134, 1146 (Utah), *rev'd* 123 S.Ct. 1513 (2003), *citing Crookston v. Fire Ins. Exch.*, 817 P.2d 789 (Utah 1991). In pretrial terms, the factors are no different from the factors in TEX. CIV. PRAC. & REM. CODE § 41.011. Utah, like Texas, improperly accepted the arguments peddled by the plaintiffs that a corporation's wealth was an essential factor given the need to "sufficiently deter and punish." 65 P.3d at 1146-47. The subsequently constitutionally rejected reasoning utilized in Utah will sound familiar:

> State Farm's wealth is enormous. As the trial court found, "[t]he evidence indicates that State Farm's surplus increased from $2.65 billion in 1977 to $25 billion in 1995. Its assets increased from $6.3 billion in 1977 to $54.75 billion in 1995, at an average increase of $4.3 million per working day in surplus, and $9.3 million per working day in assets.... A punitive damages award equal to one percent of State Farm's wealth would be $547.5 million. The remitted amount of $25 million in punitive damages represents less than 1/20th of one percent of State Farm's wealth (.0457 per cent)." Moreover, the jury's punitive damage award of $145 million is only 0.26 of one percent of State Farm's wealth as computed by the trial court, to whose judgment on this factual matter we defer. In our view, neither percentage is unreasonable, given the need to sufficiently deter and punish State Farm.

65 P.3d at 1147.

Doc ID EADYM-115760
08423-071

concluded that the judgment represented "an irrational and arbitrary deprivation of the property of the defendant." *Campbell*, 123 S.Ct. at 1526. "Under the principles outlined in *BMW of North America*" the U.S. Supreme Court declared, "this case is neither close nor difficult . . . It was error to reinstate the jury's $145 million punitive damages award." *Id.* at 1521.

The constitutional due process limitations and basic notions of federalism imposed as constraints on all punitive damage awards limit, and in the case of wealth, eliminate evidence which has no connection with the specific harm suffered by the plaintiffs.

    (1)    Ford's Net Worth is Unrelated to the Actual Harm Suffered by these Plaintiffs.

The U.S. Supreme Court characterized the Utah Supreme Court's reliance on State Farm's "massive assets" and "massive wealth" to support the $145 million punitive damage award as "arguments that seek to defend a departure from well-established constraints on punitive damages." 123 S.Ct. at 1520. Those constitutional constraints are of course the Gore guideposts. "[W]hen punitive damages are warranted, each award must comport with the principles set forth in *Gore*." *Id.* Notably, none of those Gore guideposts includes mention of the defendant's wealth or net worth.

A corporation's "massive wealth," as termed by the Utah Supreme Court, "had little to do with the actual harm sustained by the Campbells." *Id.* The same is true here.

Ford Motor Company's net worth has little to do with the actual harm sustained by the plaintiffs in this case. To utilize "net worth" would be to do what is forbidden under the federal constitution -- basing punishment upon conduct without "a nexus to the specific harm suffered by the plaintiff." 123 S.Ct. at 1523.

---

Never once did the Utah Supreme Court undertake any, much less a meaningful, constitutional analysis of using wealth in this manner.

5

Doc ID EADYM-115760
08423-071

In *Cooper Industries*, the U.S. Supreme Court discussed Cooper Industries' "gross profits" in the context of the second Gore factor -- the disparity between the actual damage award and the punitive damage award. The court, in a manner foreshadowing its opinion in *State Farm v. Campbell*, rejected the use of "gross profits" in that analysis, holding that a punitive damage award *must be tethered to the profits generated by the misconduct causing the plaintiffs' harm*, not the specific defendant's entire profits. The wrongful conduct in *Cooper Industries* was using photography of a competitor's product to market the defendant's similar product. The district court, in affirming a $4.5 million punitive award, may have relied upon the plaintiffs' calculation that the defendant anticipated "gross profits of approximately $3 million" from its sale of its product in the first five years. 532 U.S. at 442. But, as the U.S. Supreme Court recognized, that was not the proper analysis, because "it would be unrealistic to assume that all of [the defendant's] sales . . . would have been attributable to its misconduct." *Id.* In other words, the defendant's "wrongdoing surely could not be treated as the principal cause of [the defendant's] entire sales volume for a 5-year period." Id.

Raw corporate earnings, assets, wealth, net worth and the like have no place in any trial merely to inflate a punishment unless the plaintiffs can demonstrate that the company's entire net profit is related to the plaintiffs' specific harm in this case. That cannot be done.

    (2)    A State May Impose Punitive Damages No Greater than Necessary to Satisfy its Legitimate Objectives.

In *Gore*, the U.S. Supreme Court rejected Alabama's attempted justification of nationwide misconduct on the part of BMW as a constitutional basis for upholding a large punitive damage verdict, stating that a state's "power to impose burdens on the interstate market for automobiles is not only subordinate to the federal powers over interstate commerce . . . but is also constrained by the need to respect the interests of the other states." *Gore*, 517 U.S. at 574.

6

A basic tenet of federalism is that "each state may make its own reasoned judgment about what conduct is permitted as proscribed within its borders, and each state alone can determine what measure of punishment if any, to impose on a defendant who acts within its jurisdiction." *State Farm*, 123 S.Ct. at 1523. "No state may punish a defendant for conduct that may have been *lawful* where it occurred." *Id.* (emphasis added). As a general rule, a state likewise does not have "a legitimate concern in imposing punitive damages to punish a defendant for *unlawful* acts committed outside of the state's jurisdiction." 123 S.Ct. at 1522. Furthermore, no state may "use the punitive damage deterrent as a means of imposing its regulatory policies on the entire Nation." *Gore*, 517 U.S. at 585. Punishment therefore "must be analyzed in the light of [in-state conduct], with consideration given only to the interests of [the state's] consumers rather than those of the entire Nation." *Id.* at 574.

Basic principles of federalism do not permit state courts to use punitive damage awards to regulate conduct outside that state's borders. *See White v. Ford Motor Company*, 312 F.3d 998 (9th Cir. 2002) (limitation on extraterritoriality is a separate analysis from whether an award is excessive). That legal principle eliminates from the factfinder's consideration entire categories of evidence previously admitted without question. In *White*, the plaintiffs alleged a design defect in a Ford vehicle and urged the Nevada jury to award punitive damages "that would punish Ford for its conduct toward consumers in all states." 312 F.3d at 1015. Evidence was presented to the jury of "the number of vehicles Ford sold nationally." *Id.* There, as in almost every Texas case, the plaintiffs' counsel extolled the jury to "vindicate the interests of all Ford truck owners everywhere with a verdict that would make the front page of every newspaper in the country." *Id.* In light of *Gore*, both the argument by plaintiffs' counsel and the evidence admitted by the trial court were improper. The Ninth Circuit correctly recognized that "BMW imposed a

Doc ID EADYM-115760
08423-071

territorial limitation on punitive damages in the interest of federalism," and that allowing the jury "to measure damages by [the alleged] harm to the whole country was substantive error . . . of federal constitutional law." *Id.* at 1013, 1015-16.

Unlike the Ninth Circuit, the Utah Supreme Court not only ignored *BMW*'s territorial limitations, the Utah Supreme Court attempted to backdoor the same type of evidence under *BMW*'s first guidepost -- reprehensibility. From the outset, the Campbells, like the White family, framed their case as a chance to rebuke the defendant for its pattern of nationwide abusive tactics "orchestrated at the highest levels of corporate management."[2] *State Farm*, 123 S.Ct. at 1521-22. The trial court admitted a plethora of out-of-state conduct based upon the Campbells' contention that it "demonstrated, in a general sense, State Farm's motive against its insured." *Id.* at 1522-23.

The Campbells' reliance on purported nationwide wrongdoings was improper. Federalism requires that "[a] jury must be instructed, [sic], that it *may not use* evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred." 123 S.Ct. at 1522-23 (emphasis added), *citing Gore*, 517 U.S. at 572-73. Due process "does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id.* The precise award in any case "must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." 123 S.Ct. at 1524.

---

[2]The trial court, according to the Utah Supreme Court, made "nearly twenty-eight pages of extensive findings concerning State Farm's reprehensible conduct." 65 P.2d at 1147-48. Those findings included repeated and deliberate cheating of its customers, deliberate concealment and destruction of documents and systematically harassing and intimidating claimants, witnesses and attorneys. *Id.*

The *Gore* reprehensibility guidepost does not permit courts to expand the scope of the evidence and case as was done in Utah, "so that a defendant may be punished for any malfeasance," which in the *Campbell* case extended for a 20 year period. 123 S.Ct. at 1524. "A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.*

If, as the U.S. Supreme Court has declared, a jury must be instructed not to consider lawful out-of-state conduct, and an award based upon that evidence violates due process because it is irrational and arbitrary, then the trial court's ruling to exclude evidence such as net worth, nationwide sales, etc. is a foregone conclusion. In fact, by making note of the Utah court's overruling State Farm's motion for exclusion of evidence of dissimilar out-of-state conduct based upon *Gore*, the U.S. Supreme Court has telegraphed its opinion that State Farm's motion was both the correct procedural vehicle and should have been granted. Not only does net worth information merely reflect inadmissible lawful out-of-state conduct, it bears absolutely no relationship to the harm alleged in this case.

B. **The Constitutionally Upheld Limitations on the Recovery of Punitive Damages Under Texas Law Moot Any Issue Concerning Ford Motor Company's Ability to Pay Any Judgment.**

There is no recognized right to recover punitive damages. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). Punitive (or exemplary) damages are imposed for the stated purposes of punishment and deterrence. *Id.* Punitive damages are imposed to vindicate the public's rights and are nothing more than a windfall to the plaintiff in a given case. *Id.* As such, the legislature is constitutionally free to set whatever limits it deems appropriate and which serve its interests in punishment and deterrence. *See Seminole Pipeline Co. v. Broad Leaf Partners*, 979 S.W.2d 730, 751 (Tex. App. -- Houston [14th Dist.] 1998, no pet.) (rejecting

constitutionality of "open courts," "due course of law," "trial by jury challenges" to exemplary caps); *Waste Disposal Center, Inc. v. Larson*, 74 S.W.3d 578 (Tex. App. -- San Antonio 2002, no pet.) (rejecting constitutional challenges of "open courts," "equal protection" and "separation of powers" to exemplary damage caps); *Hall v. Diamond Shamrock Refining Co.*, 82 S.W.3d 5 (Tex. App. -- Corpus Christi 2001, no pet.) (rejecting all constitutionality attacks on exemplary damage caps).

The Texas Legislature has limited the recovery of punitive damages in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 41.008. Those limitations apply to this case.

Irrespective of Ford Motor Company's worldwide net worth, cash assets, nationwide sales, etc., the maximum amount of punitive damages for which a judgment could ever be entered is two times the amount of economic damages and an amount equal to the non-economic damages, but not exceeding $750,000.00. Given the limitation on recovery, evidence of assets vastly exceeding those limits serves no *proper* purpose. They do serve several *improper* purposes, including the inference that the jury should ignore the Court's instructions and decide the case not upon the facts, but whether the defendant can afford paying a few million to these plaintiffs.

There is neither a credible nor justifiable reason for allowing this evidence to be presented to the jury.

WHEREFORE, PREMISES CONSIDERED, Ford prays that this motion be granted, and that all evidence of Ford's net worth be excluded, or in the alternative, limited as requested herein.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: /s/ Michael W. Eady
William L. Mennucci (Attorney in Charge)
State Bar No. 00788042
Federal Bar I.D. 18172
bmennucci@thompsoncoe.com
Michael W. Eady (Of Counsel)
State Bar of Texas No. 06332400
Federal Bar I.D. 14591
meady@thompsoncoe.com
701 Brazos Street
Suite 1500 Austin Centre
Austin, Texas 78701
(512) 708-8200 Telephone
(512) 708-8777 Fax

OF COUNSEL:

Gerald Giordano
SNELL & WILMER, L.L.P.
One South Church Tower
Suite 1500
Tucson, Arizona 85701
(520) 882-1214 (telephone)
(520) 884-1294 (fax)

Jaime A. Saenz
State Bar No. 17514859
RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Facsimile: (956) 541-2170

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

11

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been forwarded as set forth below to the following attorney(s) on this 10th day of June, 2005:

Benigno (Trey) Martinez
Tony Martinez
MARTINEZ, BARRERA Y MARTINEZ, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520

*Michael W. Eady*
Michael W. Eady