UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN<br>　　　　Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY, AND AUTOMOTRIZ DEL NORESTE, S.A. DE C.V.<br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. B-03-120 |

**<u>DEFENDANT FORD MOTOR COMPANY'S MOTION TO EXCLUDE, OR ALTERNATIVELY, MOTION <i>IN LIMINE</i> NO. 18 RESPECTING POST-SALE EVIDENCE AND ARGUMENTS PREDICATED UPON A POST-SALE DUTY TO WARN OR RECALL</u>**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Defendant Ford Motor Company ("Ford") hereby submits this brief in support of its motion to exclude post-sale evidence and arguments predicated upon a post-sale duty to warn or recall.

**I.　<u>TEXAS HAS REJECTED PLAINTIFFS' ASSERTED POST-SALE DUTY TO WARN OR RECALL.</u>**

The law in Texas is clear that a manufacturer such as Ford does not have a duty to warn customers of dangers that are discovered only after the allegedly defective product has been sold to the consumer: "A manufacturer is not under a continuing duty to improve the manufacturer's product, nor does a manufacturer have a duty to remedy dangerous defects in a product that are not discovered until after manufacture and sale." 59 Tex. Jur. 3d Products Liability § 29 (1999). In Texas, there is no "cause of action for a failure to warn about hazards discovered after a

product has been manufactured and sold." *Syrie v. Knoll Int'l*, 748 F.2d 304, 311 - 312 (5th Cir. 1984) (noting that "Texas does not impose on manufacturers the duty to warn about or to recall products for which a safer design has been developed"). *See also Arkwright-Boston Manufacturers Mut Ins. Co. v. Westinghouse*, 844 F.2d 1174, 1185 (5th Cir. 1988) (holding that "under Texas law there is no post-sale common law duty to warn unless the manufacturer regains some significant degree of control over the product"); *McLennan v. American Eurocopter Corp., Inc.*, 245 F.3d 403, 430 (5th Cir. 2001) ("Texas courts generally do not recognize any post-sale duty to warn of product hazards arising after the sale.").

To the contrary, absent the unusual circumstance of a manufacturer re-acquiring actual title to an allegedly defective product,[1] a manufacturer's duties concerning product liability are fixed by law at the time of sale. *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997). In *Grinnell*, the Texas Supreme Court affirmed a summary judgment in favor of the cigarette manufacturer on the plaintiffs' liability claims premised on alleged failures "to take remedial measures to prevent harm . . . after the cigarettes were placed in the stream of commerce." 951 S.W.2d at 438. *See also General Motors Corp. v. Saenz*, 873 S.W.2d 353, 356 (Tex. 1993) (stating that "determination of whether a duty to warn exists is made as of the time the product leaves the manufacturer"). Moreover, whether a product is dangerous is determined when it leaves the manufacturer's hands and enters the stream of commerce; subsequent acts have no bearing on the issue. *Turner v. General Motors Corp.*, 584 S.W.2d 844, 848 (Tex.

---

[1] Some Texas courts have recognized a very narrow exception to the general rule of no post-sale duty to warn, where, subsequent to the initial sale, the manufacturer takes title and actual control of the product and then re-sells the product to the plaintiff after having learned of dangers that were not apparent at the time of the initial sale and having undertaken a replacement program. *See Bell Helicopter Company v. Bradshaw*, 594 S.W.2d 519 (Tex. Civ. App. 1979) ((*Bradshaw*(). Courts applying *Bradshaw* have held that it represents nothing more than a traditional negligent undertaking theory. *See, e.g., McLennan v. American Eurocopter*, 245 F.3d at 430 ((Most cases, however have recognized that the *Bradshaw* control-based duty is probably no broader than the well-recognized negligence-based duty to exercise reasonable care when undertaking to provide a post-sale warning.() Needless to say, these unusual circumstances are not present in this case.

2

1979). Accordingly, the Texas Pattern Jury Charge intentionally and carefully poses product liability questions to the jury in terms of defects "at the time it [the product] left possession of [the manufacturer]." PJC 71.3, 71.4, 71.5.

In *Dion v. Ford Motor Company*, 804 S.W.2d 302 (Tex. App.--Eastland 1991, writ denied), the Court of Appeals affirmed the decision of the "trial court [that] refused to submit issues on the claim that the manufacturer had a post-sale duty to warn the tractor's owner of its propensity to rollover." *Id.* at 302. In *Dion*, a tractor manufactured by the defendant rolled over on the plaintiff, causing substantial injuries, which were the result of a lack of a rollover protection device. *Id.* At the time of the accident, rollover protection systems were standard on all tractors manufactured by the defendant and rollover prevention devices were readily available and installable on old tractors. *Id.* at 305. The defendant did not warn the plaintiff of the dangers of tractors not equipped with rollover protection devices. The court held that a manufacturer cannot be held liable for post-sale negligence unless it affirmatively acted to assume a duty to warn consumers, but then does not use reasonable means to discharge that voluntarily assumed duty. *See Dion*, 804 S.W.2d at 310 (citing the rule in *Bradshaw*). The court noted that unlike the manufacturer in *Bradshaw*, the *Dion* manufacturer never instituted and then negligently implemented a replacement program, which was the "critical factor" creating the limited post-sale duties found in *Bradshaw*. *Id.* at 310. The mere fact that the manufacturer "sold rollover protection systems to retrofit unequipped tractors and encouraged dealers to encourage owners to install rollover protection systems" was not sufficient to constitute a replacement program and create a post-sale duty to warn. *Id.*

Most recently, the Texas Supreme Court last year declined to recognize or create a general post-sale duty to warn:

3

> In *Bradshaw*, the court of appeals held that a manufacturer who regained control of a product but failed to remedy a defect before it was resold could be liable in both strict liability and negligence. *Bradshaw*, 594 S.W.2d at 531-32. In this case, the plaintiffs do not base Torrington's liability upon its status as the bearing's manufacturer or upon any control that it may have regained over the bearing. Instead, the plaintiffs contend that Torrington assumed a duty toward them by undertaking to investigate and identify defective bearing. *Thus, we are not called upon to recognize any post-sale duty to warn*, or to determine whether the control-based duty the *Bradshaw* court recognized applies. And although the plaintiffs cite several other sections of the *Restatement of Torts: Products Liability*, including sections 10, 11, 12, and 13, they expressly disavow an intent to have this Court recognize *any new duties*, and merely argue that their undertaking theory comports with mainstream case law. Thus, we express no opinion whether those *Restatement* sections are consistent with established Texas law.

*Torrington v. Stutzman*, 46 S.W.3d 829, 836-37 (Tex. 2000) (emphasis added). Had the Court desired to recognize such a duty, the opportunity to do so was present. Moreover, the *Torrington* Court refused to decide the case under sections 10, 11, 12, and 13 of the Restatement (Third) Of Torts: Products Liability.

Texas does not recognize a general post-sale duty to warn and Ford does not come under the limited *Bradshaw* exception. Accordingly, all evidence of post-sale acts, information, or communications by Ford accordingly should be excluded.

## II. BECAUSE PLAINTIFFS CANNOT BASE COMPENSATORY LIABILITY UPON FORD'S ALLEGED POST-SALE CONDUCT, NEITHER CAN PLAINTIFFS BASE PUNITIVE LIABILITY ON SUCH CONDUCT EITHER.

Even more clearly, plaintiffs cannot attempt to predicate an award of *punitive* or *exemplary* damages upon Ford's post-sale conduct. By statute, "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence *that the harm with respect to which the claimant seeks recovery* of exemplary damages *results from*: (1) fraud; (2) malice; or (3) willful act or omission or gross neglect. . . ." TEX. CIV. PRAC. & REM. CODE § 41.003(a). (Emphasis added.) Without a clear and convincing causal connection between the allegedly

4

malicious conduct and a plaintiff's legally cognizable harm (*i.e.*, a tort or statutory claim), there can be no liability for punitive damages.

Since Texas law is clear that Ford is not subject to liability for compensatory damages based on any putative post-sale duty to warn or recall, that conduct cannot subject Ford to punitive liability: "Determining whether an act or omission involves extreme risk or peril requires an examination of the events and circumstances from the viewpoint of the defendant *at the time the events occurred, without viewing the matter in hindsight.*" *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994) (emphasis added). To this must be added the defendant's "actual, subjective awareness of the risk involved" and the defendant's decision "nevertheless *to proceed* in conscious indifference to the rights, safety, or welfare of others." *Id.* (emphasis added). Thus, the malicious conduct must be an integral and contemporaneous aspect of the underlying tort. *See, e.g., Green Tree Finan. Corp. v. Garcia*, 988 S.W.2d 776, 787 (Tex. App.--San Antonio 1999, no pet.) (explaining that "the jury could only award punitive damages if it based the award on *a wrongful act that was undertaken with malice and caused harm to the" plaintiff*) (emphasis added).

As the Fourth Circuit has recently emphasized in a decision reversing a $250 million punitive damage verdict in a product liability case, punitive damages pursuant to claims of negligence or strict liability for defective design must be based on "conscious wrongdoing *contemporaneous*" with the design of the vehicle. *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (original emphasis). The court held that neither compensatory nor punitive damages could be based upon an alleged failure of DaimlerChrysler to warn or recall the vehicles when, years after the design and sale of the vehicle, DaimlerChrysler allegedly became aware of a product defect. Rather, the court made plain that a plaintiff must

5

Doc ID EADYM-115669
08423-071

"demonstrate clearly and convincingly a consciousness of wrongdoing *at the time of the tortious conduct at issue*," *id.* at 452, *i.e.*, at the time of design and manufacture of the subject vehicle, and not merely that the defendant learned of or even recklessly disregarded a problem at some *later* point in time:

> When DaimlerChrysler learned of a defect in its original design, it arguably acted improperly in response to that discovery by covering up and destroying evidence. But even were that so, such a response does not demonstrate that *at the time of the conduct forming the basis for the negligent design and strict liability claims* (1984 and 1985), it knew the latch to be a problem.

*Id.* at 451-52. (Emphasis added.)

### III. IN THE ABSENCE OF FAIR NOTICE OF A POST-SALE DUTY TO WARN OR RECALL, IT WOULD VIOLATE FUNDAMENTAL PRINCIPLES OF DUE PROCESS TO IMPOSE PUNITIVE DAMAGES.

Plaintiffs may not introduce evidence relating to Ford's post-sale conduct under the guise of a claim for punitive damages for the additional reason that, in view of the long line of Texas authority rejecting a post-sale duty to warn, the imposition of punitive damages on such a theory would violate the fundamental Due Process principle that forbids the retroactive imposition of punishment: "[T]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Landgraf v. USI Film Products, Inc.*, 511 U.S. 244, 265 (1994) (internal quotation marks omitted). This principle is firmly rooted in American jurisprudence, because "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly...." *Id.* at 284. This broad principle is of special weight where a person is to be subjected not merely to civil liability, but to civil or criminal punishment: "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of

6

the severity of the penalty that a State may impose." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996).

The application of these fundamental principles to punitive or exemplary damages is unambiguous. Punitive damages are "quasi-criminal" and "operate as 'private fines' intended to punish the defendant and deter future wrongdoing." *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S. Ct. 1678, 1683 (2001). Indeed, "[t]he very labels given 'punitive' or 'exemplary' damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions. Retroactive imposition of punitive damages would raise a serious constitutional question." *Landgraf*, 511 U.S. at 281. *See also Aetna Life Ins. v. Lavoie*, 475 U.S. 813, 828 (1986) (noting that "the retrospective imposition of punitive damages under a new cause of action" would "raise important issues"). Thus, "the basic protection against 'judgments without notice' afforded by the Due Process Clause, is implicated by civil penalties." *BMW* at 575, n.22 (citations omitted); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort").

Moreover, in addition to Due Process concerns, the Texas courts have observed that the prohibition against ex post facto laws applies "to laws that are punitive in nature." *Thomas v. Wichita Gen'l Hosp.*, 952 S.W.2d 936, 941 (Tex. App.--Fort Worth 1997, pet. denied) (looking to law's "purpose and effect," rather than mere label "criminal" or "civil," to determine whether ex post facto prohibition implicated). The State Constitution provides protections to defendants beyond those enshrined in federal law: "The Texas Constitution goes further than the United States Constitution for the former is not confined to forbidding ex post facto laws, *i.e.*, retroactive penal legislation, but it also lays a ban on any retroactive law. In prohibiting

7

retroactive laws, the Texas Constitution seeks to safeguard rights not guaranteed by other constitutional provisions such as the impairment of the obligation of contracts and due process of law clauses." *Ex parte Abahosh*, 561 S.W.2d 202, 203 (Tex. Crim. 1978). The Texas Supreme Court has noted that even where strictly penal legislation is not at issue, the potential unfairness of applying new rules of liability to conduct that formerly was not actionable can militate in favor of prospective application where, among other things, a judicial decision creates a new cause of action. *See, e.g., Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 515 & n.29 (Tex. 1992) (citing cases).

Numerous jurisdictions have recognized that where a judicial decision creates a new rule of civil liability, it would be unfair and impermissible to subject a defendant to punitive sanctions:

> If we held that punitive damages could be awarded in the present case we would be permitting the jury to punish defendants for conduct which they would not have determined beforehand was even actionable. The assessment of punitive damages has some of the same functions as the sanctions of criminal law. The sanctions of the criminal law cannot constitutionally be imposed when the criminality of the conduct is not capable of being known beforehand.

*Nees v. Hocks*, 536 P.2d 512, 517 (Ore. 1975) (reversing punitive damage award as a matter of law where judicial decision effectively established cause of action that was not clearly established before). "It would be unfair to punish [defendants] for conduct which they could not have known beforehand was actionable in this jurisdiction. Using this same reasoning, other courts have likewise held that punitive damages should not be awarded in the case which initially adopts this new cause of action." *Hansen v. Harrah's*, 675 P.2d 394, 397 (Nev. 1984) (citing cases). *See also Murphy v. City of Topeka-Shawnee County Dept. of Labor Servs.*, 630 P.2d 186, 193 (Kan. Ct. App. 1981) ("[I]nasmuch as this is the first recognition of such a cause of action by [one of this State's] court[s] of appellate jurisdiction, we believe the allowance of punitive

8

damages in this case would be extremely unjust.") (rejecting, as a matter of law, imposition of punitive damages where "it was not *clearly known* to defendants" that their conduct could give rise to compensatory liability) (emphasis added); *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 361 (Ill. 1979) ("[T]he cause of action asserted here was novel and there was no statutory or judicial pronouncement which would have caused the defendant to believe that its conduct was actionable and there was authority which would reasonably cause one to believe that it was not. Under these circumstances, although we hold that the plaintiff is entitled to compensatory damages, we conclude that it would be extremely unfair to sustain an award against the defendant for punitive damages."); *Phipps v. Clark Oil & Refin'g Corp.*, 408 N.W.2d 569, 572-73 (Minn. 1987) (holding punitive damages not recoverable in case where possibility of compensatory liability could not have been determined beforehand); *Vigl v. Arzola*, 699 P.2d 613, 621 (N.M. Ct. App. 1983), *rev'd in part on other grounds*, 687 P.2d 1038 (N.M. 1984) (same); *Haynes v. Shoney's, Inc.*, 803 F. Supp. 393, 401 (N.D. Fla. 1992) (retroactive application of "a change in a statute which permits punitive damages for the first time may raise due process and ex post facto concerns") (noting without reaching issue) (citing *Woods v. Beavers*, 922 F.2d 842 (6th Cir. 1991) and *Curtis Publishing Co. v. Butts*, 351 F.2d 702, 727-28 (5th Cir. 1965), *aff'd*, 388 U.S. 130 (1967)).

In view of the substantial authority holding that Texas law does not recognize a post-sale duty to warn in cases such as this one, it would be manifestly unfair and violate Due Process to subject Ford to punitive damage liability under any new rule recognizing such a post-sale duty.

IV. **ANY ARGUMENT TO THE JURY THAT FORD HAD A DUTY TO WARN AFTER THE SALE, OR RECALL THE VEHICLE IS IMPROPER.**

Counsel should not be permitted to argue to the jury that Ford had a duty to warn consumers or recall this vehicle after the original sale. No such duty exists. Such argument is a

9

misstatement of Texas law and is misleading to the jury, suggesting they decide the facts not based upon the Court's charge of existing law, but upon legal principles which do not in fact govern the manufacturer's conduct.

## V.     CONCLUSION.

For all the foregoing reasons, Ford respectfully asks this Court to enter an order precluding plaintiffs from introducing any post-sale evidence and prohibiting all arguments predicated upon a post-sale duty to warn or recall.

Doc ID EADYM-115669
08423-071

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: /s/ Michael W. Eady
William L. Mennucci (Attorney in Charge)
State Bar No. 00788042
Federal Bar I.D. 18172
bmennucci@thompsoncoe.com
Michael W. Eady (Of Counsel)
State Bar of Texas No. 06332400
Federal Bar I.D. 14591
meady@thompsoncoe.com
701 Brazos Street
Suite 1500 Austin Centre
Austin, Texas 78701
(512) 708-8200 Telephone
(512) 708-8777 Fax

OF COUNSEL:

Gerald Giordano
SNELL & WILMER, L.L.P.
One South Church Tower
Suite 1500
Tucson, Arizona 85701
(520) 882-1214 (telephone)
(520) 884-1294 (fax)

Jaime A. Saenz
State Bar No. 17514859
RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Facsimile: (956) 541-2170

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

Doc ID EADYM-115669
08423-071

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been forwarded as set forth below to the following attorney(s) on this 10th day of June, 2005:

Benigno (Trey) Martinez
Tony Martinez
MARTINEZ, BARRERA Y MARTINEZ, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520

*Michael W. Eady*
Michael W. Eady

Doc ID EADYM-115669
08423-071