United States District Court
Southern District of Texas
FILED

JUN 2 4 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ISABEL INNIS REYNOSO, SALLY PAYAN, and ENRIQUE ROBERTO PAYAN<br>Plaintiffs<br>VS.<br><br>FORD MOTOR COMPANY and AUTOMOTRIZ DEL NORESTE, S.A. de C.V.<br>Defendants | §<br>§<br>§<br>§ CIVIL ACTION NO. B-03-120<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT
FORD MOTOR COMPANY'S MOTIONS FOR SUMMARY JUDGMENT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiffs Isabel Ennis Reynoso, Sally Payan, and Enrique Roberto Payan ("Plaintiffs") file this Consolidated Opposition to Defendant Ford Motor Company's Motions For Summary Judgment in opposition to (1) Defendant Ford Motor Company's Motion For Summary Judgment on Plaintiffs' Handling and Stability Defect Claim; (2) Defendant Ford Motor Company's Motion For Partial Summary Judgment -- Misrepresentation Claims; (3) Defendant Ford Motor Company's Motion For Partial Summary Judgment -- Manufacturing Defect Claims; (4) Defendant Ford Motor Company's Motion For Partial Summary Judgment -- Marketing Defect Claims; (5) Defendant Ford Motor Company's Motion For Summary Judgment – Personal Injury Claims Of Plaintiff Sally Payan; (6) Defendant Ford Motor Company's Motion For Partial Summary Judgment – Deceptive Trade Practices Act Claims; and (7) Defendant

Ford Motor Company's Motion For Summary Judgment On Plaintiffs' Defective Seatbelt System Claim. In support of their opposition to Defendant Ford Motor Company's various motions for summary judgment and partial motions for summary judgment, Plaintiffs would show the Court as follows:

I. **Factual Background**

Betty Reynoso Payan and her daughter Sally Payan woke up early on the morning of January 11, 2003, to go to Monterrey, Mexico, to a dermatologist and do some shopping. (Ex. 1; *Deposition of Sally Payan*, at 39:1 – 43:13). They drove the 2000 Ford Explorer. (*Id.*). At the end of the day, around 5:00, they left Monterrey to return to Matamoros. (*Id.*). Approximately forty five minutes outside of Monterrey on the superhighway, Sally Payan, who had been sleeping in the passenger's seat, suddenly awoke to see the car swerving off the road. (*Id.* at 49:11 – 52:1). The Explorer went over the grass median and crossed the oncoming lanes of traffic. (*Id.*). Sally Payan next remembers the car facing the wrong direction resting on its roof. (*Id.* at 51:17 – 52:1). Although it was raining, it was not raining hard; and Sally Payan did not notice any puddles on the road. (*Id.* at 46:15 – 47:6 and 82:4 - 6).

After the accident an ambulance arrived and took Betty Reynoso Payan to a clinic in China, Nuevo Leon, and from there she was transported to a hospital in McAllen. (*Id.* at 74:16 – 78:22). In McAllen, the doctors told Sally Payan that her mother had broken bones in her neck and that she would never walk again. (*Id.* at 82:18 – 83:2). Betty Reynoso Payan was later transferred to Harlingen for surgery on her neck. (*Id.* at 86:11-14). She was then transferred by air ambulance to Houston for physical therapy. After four hours at the physical therapy clinic she was transferred to Hermann Memorial

Hospital because she had water in her lungs and internal bleeding. (*Id.* at 88:2 – 89:11). After four major surgeries, including an amputation, Betty Reynoso Payan passed away at the Hermann Memorial Hospital 37 days after the accident occurred. (*Id.* at 90:4 - 94:10).

Susana Reynoso, Betty's sister, purchased the 2000 Explorer new from Automotriz del Noreste in June 2000. (Ex. 2; *Deposition of Susana Reynoso*, at 8:4-12). The whole family, including Susana Reynoso's sisters, nieces, nephews and in-laws, participated in the purchase of the 2000 Explorer. (*Id.* at 7:24 – 8:6). Susana purchased the 2000 Explorer for her mother to do her many charitable activities. (*Id.* at 17:25 – 18:10). However, she also purchased the car for her family to use when traveling in Mexico beyond the 22 kilometer range. (*Id.* at 27:3 – 16)

When she purchased the 2000 Explorer, Susana Reynoso was particularly concerned about the handling and stability of the vehicle. (*Id.* at 13:1 – 14:5). She questioned Luis Elizondo, the manager at the Ford dealer, about the stability of the vehicle, and he allayed her concerns by telling her that there were no safety concerns and that his own daughter drove an Explorer. (*Id.* at 13:19-21; 14:15-18).

## II.     The Summary Judgment Standard

Summary judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery

documents that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

If the moving party meets its burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little*, 37 F.3d at 1071 (citing *Celotex*, 477 U.S. at 325). Likewise, the non-movant must present more than a mere "scintilla" of evidence. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The evidence must be viewed in the light most favorable to the non-movant. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003). Factual controversies, if any exist, are resolved in favor of the non-moving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Defendant Ford Motor Company's Motion For Summary Judgment on Plaintiffs' Handling and Stability Defect Claim

To prove a design defect products liability case, TEX. CIV. PRAC. & REM. CODE § 82.005 (a) and (b) (Vernon 2004) requires:

> (a) In a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:
> (1) there was a safer alternative design; and
> (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.
> (b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:
> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
> (2) was economically and technologically feasible at the

> time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Though the Texas Civil Practice and Remedies Code codifies certain design defect elements, the Texas Supreme Court has noted that:

> "[it] does not attempt to state *all* the elements of a product liability action for design defect. It does not, for example, define design defect or negate the common law requirement that such a defect render the product unreasonably dangerous. Additionally, the statute was not intended to, and does not, supplant the risk-utility analysis Texas has for years employed in determining whether a defectively designed product is unreasonably dangerous..."

*Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999) (emphasis added).

"Unreasonably dangerous" is defined as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Turner v. General Motors Corp.*, 584 S.W.2d 844, 846 (Tex. 1979) (reh'g denied, July 18, 1979). To determine whether or not a product is "unreasonably dangerous," a trial court must analyze several factors: (1) the product's utility, both to the user and to the public as a whole, weighed against the gravity and likelihood of injury, (2) the availability of a substitute product to meet the same need and not be unsafe or unreasonably expensive, (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs, (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions. *Id.* at 846; *Hernandez, 25.W.3d,* at 256;

*American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997) (reh'g overruled, October 2, 1997).

The Texas Supreme Court in *Hernandez,* in analyzing the alleged design defect of a butane lighter, prioritized the various factors to be considered, opining that TEX. CIV. PRAC. & REM. CODE § 82.005 (Vernon 2004) "reflects the trend in our common-law jurisprudence of elevating the availability of a safer alternative design from a factor to be considered in the risk-utility analysis to a requisite element of a cause of action for defective design." *Hernandez, 25.W.3d,* at 256. This emphasis on the availability of a safer alternative design echoes previous Texas Supreme Court holdings. *See Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995) (reh'g overruled, December 22, 1995) (if there are no safer alternatives, a product is not unreasonably dangerous as a matter of law); *American Tobacco,* 951 S.W.2d at 433 (because defendant conclusively proved that no reasonably safer alternative design existed, summary judgment was proper on all design defect claims). TEX. CIV. PRAC. & REM. CODE § CODE 82.005 (b) (Vernon 2004) mandates that a safer alternative design be one that in "reasonable probability:

> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge."

The defective electronic stability control was part and parcel of the roll over in this case. As Mr. Rosenbluth testified:

> I think where we get into the stability control issue is that would be what is part and parcel a way to sense pending rollover condition; therefore, stability control . . . to sense an impending rollover condition. And if you can sense that rollover condition, then you surely could deploy

>pretensioners as well as you can deploy the curtain air bags, which they were doing way back in 1997.

(Ex. 3; *Deposition of Gerald Rosenbluth* at p. 15:15-25).  Mr. Rosenbluth's testimony establishes the requisite elements that there existed a safer alternative design at the time the 2000 Ford Explorer was constructed and that design would have been instrumental in preventing the injuries to Betty Reynoso Payan.

### IV.    Defendant Ford Motor Company's Motion For Partial Summary Judgment -- Misrepresentation Claims

To establish a cause of action for misrepresentation by seller of chattels to consumer, the plaintiff must prove: (1) the defendant is engaged in the business of selling chattels; (2) the defendant made to the public a misrepresentation of a material fact concerning the character or quality of the chattel sold by him; (3) harm to the plaintiff was caused by justifiable reliance upon the representation. RESTATEMENT (SECOND) OF TORTS § 402B (1977). *See also Crocker v. Winthrop Laboratories*, 514 S.W.2d 429 (Tex.1974).  Defendant argues that Plaintiff cannot prove the second and third elements.

Susana Reynoso testified that she specifically questioned the Ford salesman regarding the stability and handling of the 2000 Ford Explorer.  Faced with her questioning, the salesman told her that in fact the vehicle was safe and did not have stability or handling problems.  He assuaged her concerns by telling her that his own daughter drove an Explorer and that he would not let her if there were any safety problems with the Explorer.

Unlike in *Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493 (Tex. App. – Eastland 2002, rev. denied), this was not a matter of mere puffery or opinion on the part

of the salesman. The salesman was responding to Susana Reynoso's direct questioning about specific issues with the 2000 Explorer. (Ex. 2; *Deposition of Susana Reynoso*, at 13:1 – 14:5; 13:19-21; 14:15-18). The summary judgment evidence further demonstrates that Susana Reynoso relied on those statements. She requested a comparison of the stability of Ford's Expedition and Explorer models. The salesman's representation that the Explorer did not have stability and handling issues were sufficient to cause Susana Reynoso to purchase the Explorer as opposed to the Expedition.

V.  **Defendant Ford Motor Company's Motion For Partial Summary Judgment -- Manufacturing Defect Claims**

Ford argues Plaintiffs' claim for manufacturing defect must be dismissed because Plaintiffs have not designated an expert to testify that the components in question were not manufactured as designed. Expert testimony is not required. The Court need look no further than *Parsons v. Ford Motor Co.*, 85 S.W.3d 323, 330 (Tex. App.-Austin 2002, rev. denied):

> Moreover, a plaintiff need not identify the specific defect that caused the injury. However, the plaintiff must trace the defect to the manufacturer. A plaintiff may prove a manufacturing defect existed from evidence of the product's malfunction. This rule developed because a consumer or end-user is not in a position to know the manufacturing process or how the defect might have occurred. A malfunction, in turn, may be established by testimony from the product's user about the circumstances surrounding the event in question. **Expert testimony is not necessarily required to establish a manufacturing defect.**

(citations omitted and emphasis added). Lay testimony and circumstantial evidence, including the roof intrusion into the occupant area of the 2000 Ford Explorer and the failure of the seatbelt to prevent the passenger from impacting the collapsed roof of the 2000 Explorer, are sufficient for Plaintiffs claim to be sent to the jury.

8

*PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT
FORD MOTOR COMPANY'S MOTIONS FOR SUMMARY JUDGMENT*

### VI. Defendant Ford Motor Company's Motion For Partial Summary Judgment – Marketing Defect Claims

Texas recognizes the theory of strict tort liability premised upon the RESTATEMENT (SECOND) OF TORTS § 402A, which provides, in relevant part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

*See also Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 477 (Tex. App.-Houston [1st Dist.] 2000, writ denied). A product may be unreasonably dangerous due to a defect in the manufacturing process (manufacturing defect) or in its design (design defect), or because of the manufacturer's failure to provide adequate warnings or instructions on the product's use (marketing defect). *See Aqua-Flo, Inc.*, 23 S.W.3d at 473; *Keene Corp. v. Gardner*, 837 S.W.2d 224, 228 (Tex. App.-Dallas 1992, writ denied).

To prove an allegation of a marketing defect, plaintiffs must prove: (1) that the product was defective; (2) that the defect rendered the product unreasonably dangerous; (3) that the product reached plaintiffs, as ultimate consumers, without substantial change in its condition from the time of the original sale; and (4) that the product was the producing cause of plaintiff's injuries. *See Syrie v. Knoll Intl.*, 748 F.2d 304, 306 (5th Cir. 1984). "A product may be unreasonably dangerous if a manufacturer fails to warn of a foreseeable risk arising from the use of the product, and the 'lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous.'" *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 549-50 (Tex. App.-San Antonio 2001, no writ)

(quoting *Aqua-Flo, Inc.*, 23 S.W.3d at 480). To prove this allegation, plaintiffs must prove: (1) that there was either an inherent risk associated with use of the 2000 Explorer or a risk that might arise from a use that was intended or reasonably anticipated at the time of sale; (2) that Ford either knew or should have foreseen the risk of harm; (3) that Ford failed to provide any warning or failed to provide an adequate warning of the danger when the 2000 Explorer was sold; (4) that Ford's failure to warn rendered the 2000 Explorer unreasonably dangerous; and (5) that Ford's failure to warn was the producing cause of plaintiffs' injuries. *See Reese v. Mercury Marine Div. of Brunswick Corp.*, 793 F.2d 1416, 1420 n. 1 (5th Cir. 1986).

Ford argues that Plaintiffs cannot prove a marketing defect because of a lack of expert testimony in the area of warnings. In *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107 (Tex. App.-San Antonio 2004, rev. denied), the court held that expert testimony was needed because of the vast number of warnings relevant to mounting, operating, maintaining and repairing a tire. In this case, Plaintiffs allege that the 2000 Ford Explorer failed "to include, provide or carry with them adequate or proper warnings and instructions as to dangers associated with the use of the product and how to avoid such dangers." (*Plaintiffs' Original Petition* at ¶V). In essence, Ford failed to warn the end consumer of the 2000 Explorer's propensity to roll over. Ford had a duty to warn its customers of that propensity.

### VII. Defendant Ford Motor Company's Motion For Summary Judgment – Personal Injury Claims Of Plaintiff Sally Payan

Sally Payan has suffered mental anguish and does not need to first prove any personal injury in order to be able to recover mental anguish damages. Mental anguish

damages are recoverable in a limited set of circumstances: (1) the foreseeable result of a breach of duty arising out of certain special relationships; (2) common law torts involving intentional or malicious conduct; and (3) personal injury cases where the defendant's conduct causes serious bodily injury. *Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 95 (Tex. App.--Houston [14th Dist.] 1998, pet. denied) (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 494-96 (Tex. 1997)). One example of such a case is when, as here, a plaintiff pleads a DTPA cause of action. *See Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex. 1984). However, even in the absence of one of the three above-described situations, the recovery of mental anguish damages may be recovered in wrongful death actions. *Id.* (citing *Likes*, 962 S.W2d at 496); *see also Moore v. Lillebo*, 722 S.W.2d 683 (Tex. 1986). Moreover, the finder of fact is "best suited to determine whether and to what extent the [appellant]'s conduct caused compensable mental anguish...." *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 654 (Tex.1987).

First, in this case, there is no dispute that Sally Payan was the daughter of Betty Reynoso Payan and is attempting to recover wrongful death damages. Additionally, Sally Payan has pled a DTPA cause of action. Under either scenario she is entitled to the damages pled even if the finder of fact concludes that she has not suffered a physical injury.

### VIII. Defendant Ford Motor Company's Motion For Partial Summary Judgment – Deceptive Trade Practices Act Claims

To pursue a DTPA cause of action, a plaintiff must be a consumer. *See* TEX. BUS. & COM. CODE ANN. § 17.50. The elements of a DTPA cause of action are: 1) The plaintiff is a consumer; 2) the defendant engaged in false, misleading, or deceptive acts; and 3)

these acts constituted a producing cause of the consumer's damages. *Id.* Therefore, consumer status is an essential element of a DTPA cause of action. *Mendoza v. American Natl. Ins. Co.,* 932 S.W.2d 605, 608 (Tex. App.-- San Antonio 1996, no writ). The question of consumer status under the DTPA is question of law for the court to decide. *Lukasik v. San Antonio Blue Haven Pools, Inc.,* 21 S.W.3d 394, 401 (Tex. App.--San Antonio 2000, no pet.). To qualify as a consumer, a plaintiff must meet two requirements: (1) the person must seek or acquire goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint. *Id.* Consumer status is established merely by seeking to acquire services, even if the services are not actually acquired, and no money need change hands to establish consumer status. *Sears, Roebuck & Co. v. Wilson,* 963 S.W.2d 166, 170 (Tex. App.--Fort Worth 1998, no pet.). Thus, it is not necessary for there to have been a written agreement, an actual purchase, or any consideration paid for plaintiff to be a consumer.

Additionally, a plaintiff need not be the purchaser of the goods or services.

> Plaintiffs establish their standing as consumers by their relationship to the transaction, not by a contractual relationship with the defendant. Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's consumer status under the DTPA Thus, although the term "consumer" includes one who acquires goods or services by purchase or lease, the plaintiff need not herself be the one who purchases or leases the goods or services to be a consumer. A third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party. The relevant inquiries to be made in determining consumer status are (1) to whom the representations were made; (2) who suffered damages from the representations; and (3) who was affected by the defendant's alleged misconduct.

*Bohls v. Oakes,* 75 S.W.3d 473, 479 (Tex. App. – San Antonio 2002, pet. denied) (citations omitted).

In this case, Susana Reynoso purchased the 2000 Ford Explorer for her mother Isabel Ennis Reynoso. However, Susana Reynoso's testimony is that her sisters, including Betty Reynoso Payan, her bother-in-law, nieces and nephews all assisted her in the purchasing and decision making process. (Ex. 2; *Deposition of Susana Reynoso*, at 9:9-12; 12:2-17). Moreover, the 2000 Explorer was the vehicle that Betty Reynoso Payan would take when she went to Monterrey, Mexico, like when this accident occurred. (Ex. 1; *Deposition of Sally Payan* at 34:22-35:4 (stating that she and her mother had driven the Explorer to Monterrey at least once before the time of the accident) ). Based on Susana Reynoso and Sally Payan's testimony, Betty Reynoso Payan, and in fact her entire family, was not only involved in the purchasing process but was intended as a user of the vehicle. As such, Betty Reynoso Payan and Sally Payan are consumers for DTPA purposes.

### IX. Defendant Ford Motor Company's Motion For Summary Judgment On Plaintiffs' Defective Seatbelt System Claim

Plaintiffs' causes of action for products liability, negligence, gross negligence, misrepresentations, breach of implied warranty and DTPA regarding a defective seatbelt system do require Plaintiffs to prove proximate cause between the defect and Plaintiffs' injuries. *See, e.g., Allen v. W.A. Virnau & Sons, Inc.*, 28 S.W.3d 226, 231-32 (Tex. App. – Beaumont 2000, rev. denied). However, Ford mischaracterizes Dr. Huston's testimony and its significance in relation to causation. Dr. Huston testified that "the conclusions I made were that with a restraint system that keeps the occupant away from the roof, and without the roof of course coming toward the occupant, that then the significant loading which was experienced in this accident would not have happened." (Ex. 4; *Deposition of*

*Dr. Ronald Huston* at 50:20 – 25). Dr. Huston clearly testified that the defective restraint system played a role in producing the injury in this case.

## X. Conclusion

For the foregoing reasons, Plaintiffs oppose Defendant Ford Motor Company's various motions and partial motions for summary judgment and request those motions be denied. Plaintiffs' request a hearing be set on the motions and partial motions for summary judgment.

Respectfully submitted,
**MARTINEZ, BARRERA Y MARTINEZ L.L.P.**
1201 E. Van Buren Street
Brownsville, Texas 78520
Ph. (956) 546-7159
Fax (956) 544-0602

_____
Tony Martinez
State Bar No. 1313900
Federal ID: 1943

**RANDOLPH KIMBLE WHITTINGTON**
Law Office of Randolph Kimble Whittington
2014 East Harrison Street
Harlingen, Texas 78550
Ph. (956) 423-7200
Fax (956) 423-7999

_____
R. K. Whittington
State Bar No. 21404500
Federal ID: 1091

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document has been forwarded to counsel of record on this the 24 day of June, 2005.

_____
R. K. Whittington