UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN | § § § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-03-120 |
| | § | |
| FORD MOTOR COMPANY | § | |
| Defendant. | § | |

## DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS:

## OPPOSED MOTION TO EXCLUDE TESTIMONY OF RONALD HUSTON UNDER RULES 402, 403, AND 702 OF THE FEDERAL RULES OF EVIDENCE AND *DAUBERT V. MERRELL DOW PHARMACEUTICALS*

TO THE HONORABLE JUDGE OF THE COURT:

Defendant Ford Motor Company hereby replies in support of its Opposed Motion to Exclude Testimony of Plaintiffs' Expert, Dr. Ronald Huston, ("Ford's Motion") pursuant to Rules 402, 403, and 702, Fed.R.Evid., and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* Ford's Motion must be granted because it is undisputed that Dr. Huston is not qualified to opine on injury causation and Dr. Huston's testimony clearly concerns the cause of Betty Payan's death. Dr. Huston's testimony must also be excluded because Plaintiffs have failed to establish that Dr. Huston's testimony is based on a reliable foundation.

## I.    IT IS UNDISPUTED THAT DR. HUSTON IS NOT QUALIFIED TO TESTIFY ON CAUSE OF INJURY.

In their Response, Plaintiffs argue that Dr. Huston's testimony is admissible because it does not concern the cause of Betty Payan's injuries, but the "injury producing forces" that caused her death. *See* Plaintiffs' Response at page 8 ("He is not testifying about cause of death, which is different than injury causation..."). They argue that Dr. Huston is qualified to testify regarding injury-producing forces, restating Dr. Huston's credentials as listed in his curriculum vitae. *Id.* at page 10.

That Dr. Huston is qualified to testify in certain fields is not in dispute. However, Ford's primary contention is that Dr. Huston is not qualified to render opinions on the cause of Betty Payan's injuries. This contention is not disputed by Plaintiffs since nowhere in their Response do they argue that Dr. Huston is qualified to render such testimony.[1] Therefore, insomuch as this Court determines that Dr. Huston's testimony concerns the cause of Betty Payan's injuries, this testimony must be excluded because there is no dispute of material fact that Dr. Huston is not qualified to render such an opinion.

That Dr. Huston's principal testimony concerns the cause of Betty Payan's injuries and not merely the forces acting upon her is evident in his deposition testimony. Despite Plaintiffs' representation that, "[i]n fact, [Dr. Huston] testified that his only purpose was to testify about the biomechanics of the accident" (Plaintiffs' Response at page 7), Dr. Huston in fact testified: "my understanding of what I've been asked to do is primarily the biomechanics and **injury**

---

[1] Plaintiffs cite the cases of *Rodriguez v. Riddell Sports, Inc,* 242 F.3d 567 (5th Cir. 2001) and *Krummel v. Bombardier,* 206 F.3d 548 (5th Cir. 2000) for the proposition that "biomechanics experts have been given some leeway when testifying as to possible injuries." *See* Plaintiffs' Response at page 9. However, neither of these cases stand for the proposition Plaintiffs cite them for. In *Rodriguez,* the court never ruled on the admissibility of a plaintiff's proffered expert testimony and there is no mention in the court's ruling as to the proffered expert's medical training and background. *Rodriguez,* 242 F.3d at 581. In *Krummel,* the court's dicta merely notes that a lower court limited a biomechanic expert's testimony to the general topic of forces required to break bones.

2

**causation**." Transcript of March 15, 2005 Deposition Testimony of Dr. R. Huston ("Dr. Huston Depo.") at page 22, lines 1 to 9 (emphasis added), copy attached hereto as Exhibit A. The record further shows that Dr. Huston opines, "[i]t's my opinion that during this rollover incident... the roof came into contact with her head and **caused a compression sublaxation injury** that's reported in the medical records." *Id.* at page 38, lines 9 to 22 (emphasis added). He further testified that:

> It is my belief that the most significant injury that she had was a paralysis from a spinal cord injury. **That in turn was due to a subluxation of C6 on C7 with C6 going forward of C7.** That is what is significant. **That led then to a paralysis or quadriplegia.**

Dr. Huston Depo. at page 83, line 23 to page 85, line 10 (emphasis added), Exhibit A.

Clearly, Dr. Huston's opinion goes beyond his expertise in mechanical engineering. For Plaintiffs to represent this testimony as exclusively regarding "injury producing forces" is disingenuous. This is especially so considering that Dr. Huston testified that he does not even know specifically how much force was necessary to cause Betty Payan's injuries. *See* Dr. Huston Depo. at page 105, lines 3 to 12, Exhibit A. Accordingly, because Dr. Huston's testimony concerns the cause of Betty Payan's injuries, a topic on which he is undisputedly not qualified to opine upon, this testimony must be excluded.

## II.     DR. HUSTON'S TESTIMONY IS BASED ON UNRELIABLE DATA.

Inasmuch as this Court may decide that Dr. Huston is testifying on injury-producing forces rather than the cause of Betty Payan's injuries, this testimony must be excluded because Plaintiffs' Response establishes that Dr. Huston's opinion is based on speculation and faulty data.

Doc ID MENNB-117817
08423-071

A.    **It is undisputed that Dr. Huston does not know the dynamics of the rollover accident, yet he still opines on movement of Betty Payan inside the vehicle.**

Plaintiffs admit that Dr. Huston rendered his opinion without reviewing any accident reconstruction for this case. *See* Plaintiffs' Response at page 10. More important, they admit that Dr. Huston cannot testify on any specific dynamics of the subject rollover accident. *Id.* It is undisputed that Dr. Huston's testimony regarding the movement of the vehicle, and consequent movement of Betty Payan within it, is based only on Dr. Huston's experience in the investigation of other accidents and not any objective analysis of the subject accident itself. *Id.* (Dr. Huston is "only testifying as to what commonly happens to a similar car in a similar collision-type situation."). This testimony on other accidents, as opposed to testimony on the facts of the present case, is inadmissible speculation, which lacks foundation and is unfairly prejudicial.

B.    **It is undisputed that Dr. Huston does not know if the roof deformation occurred prior to Betty Payan's injuries, yet he still opines it caused her injuries.**

Plaintiffs' Response does not dispute that Dr. Huston cannot testify as to the amount of roof deformation that occurred during the first roll, when he believes Betty Payan received her injuries, as opposed to that which occurred during subsequent rolls and ground strikes and later removal of the vehicle by a tow truck operator. Since Dr. Huston cannot opine that the roof deformation occurred before Betty Payan's injuries, or at least offer some probability that it occurred before Betty Payan's injuries, his testimony is pure speculation that does not make any fact at issue in this action more or less probable.

4

    C.     **It is undisputed that Dr. Huston does not know what caused the rubbing mark on the vehicle's headliner, yet he still opines that it was caused by contact with Betty Payan's head.**

Plaintiffs concede that "it is impossible for [Dr. Huston] to say definitively where the rubbing mark [in the vehicle's headliner] came from" and that "there are certain things he cannot account for." Although their Response provides the reasons why Dr. Huston does not know what the rubbing mark is from, they do not explain why Dr. Huston is justified in relying upon it as evidence of the alleged contact between Ms. Payan's head and the roof during deformation.

    D.     **It is undisputed that Dr. Huston's seated height analysis is based on erroneous data, yet he still relies on this erroneous data rather than correct his prior analysis.**

In their Response, Plaintiffs admit that Dr. Huston used the wrong height for Betty Payan in his analysis, a material error that he does not correct. They argue that this error does not justify exclusion since its does not significantly effect Dr. Huston's analysis. However, this uncorrected error calls into question the validity of Dr. Huston's seated height analysis, which forms the very basis for his opinion that the roof deformation caused Betty Payan's fatal injury. It is therefore a significant error that justifies exclusion. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994) (Any step that renders an analysis unreliable renders an expert's testimony inadmissible); *Castellow v. Chevron USA,* 97 F.Supp.2d 780, 792 (S.D. Tex. 2000) (Mathematical errors call into question the validity of opinions and undermine the value of expert calculations to a factfinder).

    E.     **Plaintiffs do not sufficiently dispute that Dr. Huston's testimony is based on unreliable surrogate testing.**

In their Response, Plaintiffs concede that the surrogate driver used in their spit tests was not of the same height as Betty Payan. *See* Plaintiffs' Response at page 11 ("the surrogate was

Doc ID MENNB-117817
08423-071

about 2" shorter than Betty Payan..."). They argue that this error is permissible because it shows that Dr. Huston and Gerald Rosenbluth "were conservative in their testing." *Id.* However, the proper inquiry in assessing the validity of test results is not prejudice caused to an opposing party, but scientific validity.

As further discussed in Ford's separately filed Reply in Support of its Motion to Exclude the Testimony of Gerald Rosenbluth, Plaintiffs also fail to adequately explain why the use of a seat different from that present in the subject vehicle, and the use of an artificial "H-Point" in placing the seat, do not invalidate the test results. They also do not explain why the three inches of seatbelt slack removed by Mr. Rosenbluth during the test does not invalidate the test results.

## III.    CONCLUSION.

For the reasons cited in Ford's Motion to Exclude Dr. Huston's Testimony and as discussed above, Dr. Huston's testimony must be excluded.

Doc ID MENNB-117817
08423-071

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.


By: _____
     William L. Mennucci (Attorney in Charge)
     State Bar No. 00788042
     Federal Bar I.D. 18172
     bmennucci@thompsoncoe.com
     Michael W. Eady (Of Counsel)
     State Bar of Texas No. 06332400
     Federal Bar I.D.14591
     meady@thompsoncoe.com
     701 Brazos Street
     Suite 1500 Austin Centre
     Austin, Texas 78701
     (512) 708-8200 Telephone
     (512) 708-8777 Fax

OF COUNSEL:

Vaughn Crawford
Matthew Goldstein
SNELL & WILMER, L.L.P.
One South Church Tower
Suite 1500
Tucson, Arizona 85701
(520) 882-1214 (telephone)
(520) 884-1294 (fax)

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

7

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been forwarded by certified mail, return receipt requested, to the following attorney(s) on this _14_ day of July, 2005:

Benigno (Trey) Martinez
Tony Martinez
MARTINEZ, BARRERA Y MARTINEZ, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520

_____
William L. Mennucci

Doc ID MENNB-117817
08423-071