UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. B-03-120 |
| FORD MOTOR COMPANY Defendant. | § § § | |

**DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS:**

**OPPOSED MOTION TO EXCLUDE TESTIMONY OF GERALD ROSENBLUTH UNDER RULES 402, 403 AND 702 OF THE FEDERAL RULES OF EVIDENCE AND *DAUBERT V. MERRELL DOW PHARMACEUTICALS***

TO THE HONORABLE JUDGE OF THE COURT:

Defendant Ford Motor Company hereby replies in support of its Opposed Motion to Exclude Testimony of Plaintiffs' Expert, Gerald Rosenbluth, ("Ford's Motion") pursuant to Rules 402, 403, and 702, Fed.R.Evid., and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* Ford's Motion must be granted because Plaintiffs' Response fails to establish that Mr. Rosenbluth's testimony is relevant to any fact at issue; because Plaintiffs' have failed to offer proof of Mr. Rosenbluth's qualifications to testify on seatbelt design; and because Mr. Rosenbluth's proposed testimony is clearly based on the results of unreliable and unscientific testing.

I.  **MR. ROSENBLUTH'S TESTIMONY MUST BE EXCLUDED BECAUSE IT IS NOT RELEVANT TO ANY ISSUE IN DISPUTE.**

Plaintiffs' Response does not adequately explain why Mr. Rosenbluth's testimony is relevant. Rather, it is conclusory in nature and only argues that Mr. Rosenbluth's testimony is relevant because it disputes Ford's theory that Betty Payan's head impacted the roof prior to deformation. *See* Plaintiffs' Response at page 10. Yet, it is undisputed that Plaintiffs' biomechanics expert testified that he does not know, to a reasonable degree of scientific certainty, if the vehicle's seatbelt system caused or contributed to Betty Payan's injuries. *See* Transcript of March 15, 2005 Deposition of Dr. Ronald Huston ("Dr. Huston Depo.") at page 51, lines 1 to 24, Exhibit E to Ford's Motion for Summary Judgment. Moreover, Plaintiffs' biomechanics expert testified that, all other things remaining the same, Ms. Payan would have received her injuries even if the alternative seatbelt design proposed by Mr. Rosenbluth was in use at the time of the accident. *Id.* Therefore, since Mr. Rosenbluth's testimony concerns an alleged defect outside the chain of causation, it is irrelevant and can only lead to unfair prejudice and confusion of the issues. This is so regardless of the reason why Plaintiffs offer it.

II.  **PLAINTIFFS HAVE NOT ESTABLISHED THAT MR. ROSENBLUTH IS QUALIFIED TO TESTIFY ON SEATBELT DESIGN ISSUES.**

Plaintiffs state that Mr. Rosenbluth's testimony is limited to seatbelt analysis and that he is qualified to render such testimony because of his background in automotive mechanics. *See* Plaintiffs' Response at pages 5 and 6. However, despite their listing of Mr. Rosenbluth's qualifications, nowhere do Plaintiffs identify any training or experience related to seatbelt design or analysis. They concede that Mr. Rosenbluth is not a mechanical engineer, but argue that his practical education and experience qualify him as an expert on seatbelt design issues. Nevertheless, Plaintiffs do not identify any education or experience outside the automotive

Doc ID MENNB-117819
08423-071

mechanics field. Moreover, they do not dispute that Mr. Rosenbluth has never designed a seatbelt system for production vehicles sold to the public and that he has never authored any scientific papers and submitted them for publication on any aspect of automobile design or performance.

Instead of identifying relevant qualifications for this witness, Plaintiffs cite to an unpublished decision in *Tolliver v. Noar*, 2001 WL 1345735 (E.D. La. Nov. 1. 2001), as support for Mr. Rosenbluth's qualification in the present case. This reliance is misplaced since *Tolliver* involved the qualification of Mr. Rosenbluth to testify regarding fuel system design, not seatbelt system design. Plaintiffs' reliance on *Marshall v. Arzuaga*, 828 F.2d 845 (1st Cir. 1987) is similarly misplaced, because that case involved the qualification of Mr. Rosenbluth to testify regarding tire maintenance and failure.

The issue with regard to Mr. Rosenbluth's testimony is not his qualifications to testify on fuel systems design or tire maintenance, but whether he is qualified to answer the specific questions in this case that regard the design of a mass produced seatbelt system. Simply because his testimony on fuel systems and tires was accepted by other courts does not qualify him to testify on seatbelt design in the present case. Rather, he must have some qualifications specific to the issue upon which he presently opines. Accordingly, since he has no qualifications specific to seatbelt design, Mr. Rosenbluth's testimony must be excluded.

### III. PLAINTIFFS FAIL TO ESTABLISH THE RELIABILITY OF MR. ROSENBLUTH'S SURROGATE TESTING.

In its Motion, Ford identified various deficiencies in Mr. Rosenbluth's spit testing, each of which justifies exclusion of the testing. In their Response, Plaintiffs do not dispute that Mr. Rosenbluth's manipulation of the seatbelt used in testing biased the test results in Plaintiffs'

favor. Plaintiffs also fail to adequately explain why the use of a surrogate driver with a different body composition than Betty Payan, the use of a seat different from that present in the subject vehicle, and the use of an artificial "H-Point" in placing the seat, do not invalidate the test results.

### A.  It is undisputed that Mr. Rosenbluth biased the test results by manipulating the seatbelt used in testing.

Plaintiffs do not dispute that Mr. Rosenbluth's manipulation of the seatbelt used in testing biased the test results in Plaintiffs' favor. Specifically, they offer no explanation for why Mr. Rosenbluth artificially tightened the test seatbelt so that there was three inches less webbing in the Mechanical Induced ELR Lock-Up Scenario tests. Therefore, this undisputed and materially significant deficiency in Mr. Rosenbluth's testing justifies exclusion of the testing and Mr. Rosenbluth's opinion insofar as it is based on the testing.

### B.  It is undisputed that differences in body composition between the surrogate driver and Betty Payan affected the test results.

Plaintiffs attempt to dispute that there was any difference in height and body composition between the surrogate driver and Betty Payan. *See* Response at page 7 and 8. They argue that, to the extent any difference did exist, it would not substantially affect the analysis. *Id.* at page 8. However, in their separately filed Response to Ford's Motion to Exclude the Testimony of Dr. Ronald Huston, Plaintiffs concede that the surrogate driver used in their spit tests was not of the same height as Betty Payan. *See* Plaintiffs' Response at page 11 ("the surrogate was about 2" shorter than Betty Payan...").

It is undisputed that the body composition of a vehicle occupant can affect tension of a seatbelt during a rollover accident (*See* Rosenbluth Depo. at page 49, line 22 to page 53, line 12, Exhibit C to Ford's Motion). Despite the undisputed fact that this difference can affect the

4

results of the spit testing (*See* Plaintiffs' Response at page 8), Plaintiffs argue that the deficiency is acceptable because it shows that Dr. Huston and Gerald Rosenbluth "were conservative in their testing." *Id.* However, the proper inquiry in assessing the validity of test results is not what possible prejudice is caused to an opposing party, but whether the tests are scientifically valid. Therefore, this undisputed and materially significant deficiency in Mr. Rosenbluth's testing justifies exclusion of the testing and Mr. Rosenbluth's opinion insofar as it is based on the testing.

    **C.**    **It is undisputed that Mr. Rosenbluth used a one-of-a-kind seat in testing that cannot be represented as an integrated seat or any seat used in mass produced automobiles.**

Plaintiffs do not dispute that the seat used in the spit testing was crafted by Mr. Rosenbluth. Rather, they argue the seat is similar to that used by Ford in Econoline vans. However, unlike Mr. Rosenbluth's creation, and as is evident in Exhibit 7 to Plaintiffs' Response, the webbing of integrated seatbelts in Econoline vans are not fed through a D-ring attached to any pillar of a vehicle.

As an explanation for why Mr. Rosenbluth chose to craft his seat rather than use one actually in production by Ford, Plaintiffs state "[t]he explanation is patently clear: he was fabricating a seat with an integrated seatbelt." Assuming Plaintiffs are serious in this response, the question remains: Why did Mr. Rosenbluth fabricate a seat with an integrated seatbelt rather than use one in actual production by Ford? Accordingly, Mr. Rosenbluth's creation must not be represented to the jury as an integrated seatbelt system or any form of seat in mass production during presentation of his testing results or otherwise. This undisputed and materially significant deficiency in the spit tests also justifies exclusion of Mr. Rosenbluth's opinion insofar as it is based on the tests.

Doc ID MENNB-117819
08423-071

> D. **It is undisputed that Mr. Rosenbluth made an error in placement of the seat within the surrogate vehicle buck.**

Although Plaintiffs' Response focuses on the Exemplar Vehicle Test Set-Up notes used by Mr. Rosenbluth to explain how Mr. Rosenbluth positioned the surrogate seat, they do not explain why the H-Point used in the buck created by Mr. Rosenbluth was 37.50 inches, over two inches less than the actual H-Point. They do not dispute that this error in Mr. Rosenbluth's analysis results in the unjustified removal of two inches of space between the surrogate's head and the roof, skewing the results in favor of Plaintiffs' theory of defect.

## IV. CONCLUSION

For the reasons cited in Ford's Motion to Exclude Gerald Rosenbluth's Testimony and as discussed above, Mr. Rosenbluth's testimony must be excluded.

Doc ID MENNB-117819
08423-071

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: _____
William L. Mennucci (Attorney in Charge)
State Bar No. 00788042
Federal Bar I.D. 18172
bmennucci@thompsoncoe.com
Michael W. Eady (Of Counsel)
State Bar of Texas No. 06332400
Federal Bar I.D.14591
meady@thompsoncoe.com
701 Brazos Street
Suite 1500 Austin Centre
Austin, Texas 78701
(512) 708-8200 Telephone
(512) 708-8777 Fax

OF COUNSEL:

Vaughn Crawford
Matthew Goldstein
SNELL & WILMER, L.L.P.
One South Church Tower
Suite 1500
Tucson, Arizona 85701
(520) 882-1214 (telephone)
(520) 884-1294 (fax)

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

Doc ID MENNB-117819
08423-071

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing instrument has been forwarded by certified mail, return receipt requested, to the following attorney(s) on this _14_ day of July, 2005:

Benigno (Trey) Martinez
Tony Martinez
MARTINEZ, BARRERA Y MARTINEZ, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520

                                       _____
                                       William L. Mennucci

Doc ID MENNB-117819
08423-071