IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 3 2005

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ESTATE OF ISABEL ENNIS REYNOSO, BY HER REPRESENTATIVE OF HER ESTATE, SUSANNA REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN, *Plaintiffs* VS. FORD MOTOR COMPANY, AND AUTOMOTRIZ DEL NORESTE, S.A. DE C.V. *Defendants* | CIVIL ACTION NO. B-03-120 (JURY REQUESTED) |

**PLAINTIFFS' MOTION TO RECONSIDER ORDERS
GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO DEFECTIVE SEATBELT SYSTEM AND
GRANTING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY
OF GERALD ROSENBLUTH**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Estate of Isabel Ennis Reynoso, Sally Payan and Enrique Roberto Payan file this their *Motion to Reconsider Orders Granting Defendant's Motion for Partial Summary Judgment as to Defective Seatbelt System and Granting Defendant's Motion to Exclude Testimony of Gerald Rosenbluth* and, in support thereof, would respectfully show the honorable Court the following:

1.

On September 12, 2005, this honorable Court entered its Order and Opinion which, among other rulings, granted *Defendant Ford Motor Company's Motion for Summary Judgment on*

*Plaintiffs' Defective Seatbelt System Claim* [Dkt. No. 55] on the ground that Plaintiffs have not "... establish[ed] that a different seatbelt system would have prevented or significantly reduced the risk of injury" or "...establish[ed] a safer alternative design" [see Order and Opinion, p. 8]. Thereafter, on September 20, 2005, this honorable Court entered its Order granting *Defendant's Motion to Exclude Testimony of Gerald Rosenbluth* [Dkt. No. 57] on the ground that the testimony of a seatbelt system expert is no longer relevant to this case in light of the earlier granting of the partial summary judgment as to the seatbelt design defect claim [see Order, p. 2].

2.

In this case, summary judgment should be granted as to Plaintiffs' defective seatbelt system claims only if the record, taken as a whole, together with affidavits, if any, show that there is no genuine issue as to any material fact and that Defendant Ford Motor Company is entitled to judgment on those claims as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether to grant a summary judgment on those claims in favor of Defendant Ford Motor Company, this honorable Court is to review the evidence in the light most favorable to the non-moving party -- in this case, the Plaintiffs. See *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). The Court is also obligated to resolve factual controversies, if any exist, in favor of the non-moving Plaintiffs. See *Little v. Liquid Air Corp.*, 37 F.3d 1069,1075 (5th Cir. 1994) *en banc*. As shown below, Plaintiffs respectfully submit that an analysis of the expert testimony and evidence relating to the seatbelt system and injuries in this case, resolving differences in favor of Plaintiffs and viewing the overall evidence in the light most favorable to Plaintiffs,

reveals that factual controversies do in fact exist as to safer alternative design <u>and</u> as to the seatbelt system as a producing cause of Betty Payan's injuries. To defeat entry of a summary judgment, Plaintiffs are not required to <u>establish</u> or prove those factual elements -- only to develop evidence sufficient to raise a genuine issue as to those material facts.

3.

In support of its motion for partial summary judgment as to the seatbelt system claims, Defendant Ford Motor Company relies primarily on the deposition testimony of Ronald Huston [see Motion for Summary Judgment at pp. 5-6]. To determine whether the evidence raises a factual controversy for resolution by the jury, Plaintiffs submit that the Court needs to consider the testimony from at least three witnesses in this case -- (1) Robert Piziali, Ford Motor Company's designated biomechanical injury expert, (2) Gerald Rosenbluth, Plaintiffs' designated seatbelt expert, and (3) Ronald Huston, Plaintiffs' designated biomechanical injury expert.

Defendant Ford Motor Company provided a report, dated January 20, 2005, from Robert Piziali in which he expressed opinions regarding the mechanism of injury to Betty Payan. He concluded that Betty Payan's head was outside the vehicle window and that her paralyzing neck injury was caused by her head striking the ground and not the roof of the vehicle. His opinions in the report were:

> "Due to the rolling motion, her head was moved upward and protruded out the driver's side window. Ms. Reynoso de Payan sustained critical cervical injuries as a result of this accident. These critical injuries most likely occurred when the head was positioned out of the driver's side window while the left side and left roof rail of the vehicle were contacting the ground. <u>Ms. Reynoso de Payan's injuries are consistent with loading due to impact of the head with the ground. There is no</u>

evidence to indicate that the injury was caused by contact to the interior of the vehicle." [Emphasis added]

Without advising Plaintiffs or their counsel, Piziali thereafter completely changed his opinion as to the mechanism and cause of Betty Payan's paralyzing neck injury. At the time of his deposition on March 30, 2005, Piziali testified that (i) the neck injury "...most likely happened with her head somewhere inside the vehicle as opposed to outside the vehicle" [see attached excerpt from Piziali Deposition, at p. 56], (ii) Betty Payan's head "... was actually probably on the roof before the roof hit the ground. When the roof hit the ground, the head stopped because the roof stopped ... and then the torso kept going. And the torso loading the neck is what caused the injury" [see attached excerpt from Piziali Deposition, at p. 74], and (iii) the neck injury occurred before most if not all of the roof deformation [see attached excerpt from Piziali Deposition, at p. 79].

Ronald Huston's deposition testimony, which was the primary basis for Defendant Ford Motor Company's summary judgment motion and which was cited in this honorable Court's Order and Opinion, was given on March 15, 2005 -- two weeks before Plaintiffs and their counsel learned that Piziali had changed his opinions and would testify to an entirely different mechanism and cause of Betty Payan's paralyzing neck injury.[1] In the questions and answers cited by Defendant, Ronald Huston was asked whether the alternative seatbelt design would have prevented the paralyzing neck injury, assuming "all other things remaining the same" (including the roof deformation). The cited testimony could not and did not address the subsequent theory and opinion of Piziali that the roof

---

[1] In fact, Robert Huston indicated that he was disadvantaged by giving his deposition without the benefit of the other experts testimony which might cause him to enhance or change his opinions. See attached excerpt from Huston Deposition, at p. 35, lines 6-25.

deformation had not occurred at the time of injury and that Betty Payan essentially dove into the roof while it was still intact but on the ground. Ronald Huston's testimony did however otherwise address that factual scenario when he stated that:

> "Well, the conclusions that I made were that with a restraint system that keeps the occupant away from the roof, <u>and without the roof of course coming toward the occupant</u>, that then the significant loading which was experienced in this accident <u>would have been avoided</u>." [Emphasis added] [See attached excerpt from Huston Deposition, at p. 50]

Defendant Ford Motor Company asserts that Ronald Huston's testimony was based on "mere speculation" in that the absence of roof deformation was a fact not present in this cause; however, their own expert witness testified to exactly that two weeks later when Robert Piziali opined that the paralyzing neck injury occurred <u>before</u> the roof deformation.

Plaintiffs' seatbelt system expert, Gerald Rosenbluth, expressly and directly addressed the very issue of whether an alternative seatbelt system design would have kept Betty Payan "away from the roof" and avoided the loading on her head and neck that caused the paralyzing injury. Rosenbluth testified that an alternative restraint system design would keep the occupant further back in the seat and, with a reduction of the roof deformation (as discussed by Ronald Huston and even opined by Robert Piziali), would at least lessen the severity of the injury if not prevent it. The relevant testimony from Gerald Rosenbluth is as follows:

> "Q.   ... It's your opinion that the 2000 Ford Explorer is defective in its design for the driver's side seat belt and seat assembly, right?
> A.   Essentially. The seat belt as designed is ineffective in an accident foreseeable on the part of a manufacturer.
> Q.   In this case, in this accident, everything else remaining equal, if we simply used your alternative design, a seat-integrated restraint coupled with a

|     |     |
| --- | --- |
|     | rollover sensor and a pretensioner, would that change, everything else being equal, have saved Ms. Payan from getting a serious neck injury? |
| A.  | Would it have made a difference relative to her C6-7 subluxation injury mechanism? |
| Q.  | Sure. |
| A.  | And that's primarily a question that should be addressed to Dr. Huston. I would defer to Dr. Huston's answer to that question, was that he thought it would make a significant difference, but he couldn't quantify it. |
| Q.  | You don't have an opinion yourself as to whether simply replacing the seat belt and seat system in this Explorer with your reasonably safe alternative design would have prevented the paralysis injury in this case? You don't have an opinion on that today, fair? |
| A.  | To a point I have an opinion, just short of a biomechanical analysis, and that <u>it would have at least reduced or minimized the propensity for the incapacitating C6-C7 injury mechanism</u>. |
| Q.  | What's the basis for that opinion? |
| A.  | We have a roof collapse of approximately inches, somewhat less, toward the B-pillar. And I can do that and probably give you the exact numbers, but let's just say approximately -- we have 5 inches at the -- directly above the H point, and what we did do was measure -- what we did was measure at that H point. And you're getting somewhat less than 9 inches, but let's just go -- as we keep the occupant just a little further back, as you get to the B-pillar, you're probably at 5 inches, 6 inches, something like that, in that order. We know that if we pretension, as we have done so, statically, integrated EOR with an ETR lock-up, and we're roughly with an ETR, at 180 we have 4 - 4-1/2 inches. Therefore, we have an inch or two of displacement, which probably could be absorbed by the human body, but, again, now we're teetering on the biomechanical. I can only give you the measurements and the data. I can't interpret that data biomechanically, or at least I shouldn't. And I should rely on Dr. Huston. But when Dr. Huston stated that if we reduce the roof crush, and we don't have to reduce that roof collapse 100 percent, the further back we keep the occupant toward the B-pillar, the less roof crush we have to deal with. In this instance, test A-2 with the ETR, we had 4-1/2 inches of clearance. <u>So if you get an inch, 2 inches, even, you may have a headache, but you're surely not going to have a C6-C7 subluxation</u>. So the answer to your question is probably yes, with that explanation." [Emphasis added] [See attached excerpt from Rosenbluth Deposition, at pp. 72-74] |

> "Q. Assume that I asked you that question, Mr. Rosenbluth. I mean, what you're saying is that if you put this surrogate in a perfectly stiff roof with the original equipment manufactured belt and did a static three to five G roll event, her head is going to be in touch with that roof liner without any roof deformation at all, right?
> A. <u>It's going to make contact, but not impact</u>, and I think there's a difference there.
> Q. Tell me what you think the difference is between contact and impact.
> A. <u>Contact is a headache. Impact is a broken neck.</u> [Emphasis added] [See attached excerpt from Rosenbluth Deposition, at pp. 78-79]

Accordingly, Gerald Rosenbluth's testimony and Robert Huston's testimony, considered separately and taken together, is evidence that an alternative seatbelt system design would have prevented or significantly reduced the risk of injury. That evidence is certainly sufficient to raise a genuine issue of fact as to these elements in which case a summary judgment would be improper.

4.

Based on the foregoing, Gerald Rosenbluth's testimony is relevant to issues properly before this honorable Court. Alternatively, even if the Court should decline reconsideration of the summary judgment, Gerald Rosenbluth's expert testimony as to the functioning of the seatbelt system to keep Betty Payan away from the vehicle roof prior to deformation is relevant to the issue of whether a safer alternative roof design would have prevented or significantly reduced the risk of injury. Plaintiffs understand that the Court has granted Defendant's motion to exclude Gerald Rosenbluth's testimony solely on the basis of relevance in light of its other rulings. Plaintiffs' submit that Defendant has not established that Gerald Rosebluth's testimony should be excluded on any other grounds including *Daubert v. Merrell Dow Pharmaceuticals*.

William L. Mennucci
Michael W. Eady
701 Brazos Street
Austin, TX 78701

Vaughn Crawford, Esq.
Amy M. Samberg, Esq
**Snell & Wilmer, L.L.P.**
One South Church Tower, Suite 1500
Tucson, Arizona 85701

_/s/ Tony Martinez_

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that this motion to reconsider be granted and that this honorable Court deny (i) *Defendant Ford Motor Company's Motion for Summary Judgment on Plaintiffs' Defective Seatbelt System Claim* [Dkt. No. 55] and (ii) *Defendant's Motion to Exclude Testimony of Gerald Rosenbluth* [Dkt. No. 57]

Respectfully submitted,

**Martinez, Barrera y Martinez, L.L.P.**
1201 East Van Buren
Brownsville, Texas 78520
Telephone (956) 546-7159
Fax (956) 544-0602

By: _____

(Designated Attorney in Charge)      Tony Martinez
State Bar No. 1313900
Federal I.D. No. 1943
Trey Martinez
State Bar No.
Federal I.D. No.

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been furnished to counsel of record as listed below via e-mail and/or Certified Mail, Return Receipt Requested and/or First Class U. S. Mail on the _22nd_ day of September, 2005.

Jaime Arturo Saenz, Esq.
**Rodriguez, Colvin, Chaney & Saenz, L.L.P.**
1201 East Van Buren
Brownsville, TX 78520