IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY | § | |
| PAYAN, AND ENRIQUE ROBERTO | § | |
| PAYAN, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | C.A. No. B-03-120 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| Defendant | § | |
| | § | |

## ORDER AND OPINION

BE IT REMEMBERED that on September 12, 2005, the Court considered Defendant Ford Motor Company's Motion for Summary Judgment on Plaintiffs' Handling and Stability Defect Claim [Dkt. No. 48]; Defendant Ford Motor Company's Motion for Partial Summary Judgment - Misrepresentation Claims [Dkt. No. 49]; Defendant Ford Motor Company's Motion for Partial Summary Judgment - Manufacturing Defect Claims [Dkt. No. 50]; Defendant Ford Motor Company's Motion for Partial Summary Judgment - Marketing Defect Claims [Dkt. No. 51]; Defendant Ford Motor Company's Motion for Summary Judgment - Personal Injury Claims of Plaintiff Sally Payan [Dkt. No. 52]; Defendant Ford Motor Company's Motion for Partial Summary Judgment - Deceptive Trade Practices Act Claims [Dkt. No. 53]; and Defendant Ford Motor Company's Motion for Summary Judgment on Plaintiff's

Defective Seatbelt System Claim [Dkt. No. 55].

## I.

## Introduction and Procedural Background

Plaintiffs Isabel Ennis Reynoso, Sally Payan, and Enrique Roberto Payan brought claims against Defendants Ford Motor Company, USA ("Ford") and Automotriz Del Noreste in the 357th Judicial District Court of Cameron County, Texas for strict products liability including manufacturing, design, and marketing defects, negligence, malice and gross negligence, breach of express and implied warranties, misrepresentation, Deceptive Trade Practices Act violations, and personal injury. (Pls.' Original Pet.)  On March 23, 2004, the Court denied Plaintiffs' Motion for Remand and granted Defendant Automotriz Del Noreste's Motion to Dismiss for Lack of Personal Jurisdiction. [Dkt. No. 18]  Now pending before the Court are Defendant Ford's motions listed above as well as Defendant Ford's Opposed Motion to Exclude the Testimony of Ronald Huston [Dkt. No. 54], Plaintiffs' Opposed Motion to Exclude the Testimony of Ford's Proffered Expert Michelle Vogler [Dkt. No. 56], Defendant's Motion to Exclude Testimony of Gerald Rosenbluth [Dkt. No. 57], and Defendant Ford's Motion in Limine [Dkt. No. 69].  Herein the motions for summary judgment will be addressed.

## II.

## Factual Background

The uncontroverted facts show that on January 11, 2003 an accident occurred involving a 2000 Ford Explorer ("Explorer").   Jean Margaret Elizabeth Reynoso de Payan was the driver and Sally Payan was a passenger in the Explorer at the time of the accident.  Isabel Ennis Reynoso, known to her family as Betty Reynoso [hereinafter "Betty Reynoso"], is the mother of Susana Reynoso and Jean Margaret Elizabeth Reynoso de Payan, known to her family as Betty Payan.  [Hereinafter "Betty Payan"]  Plaintiffs are Betty Payan's daughter, Sally Payan; her son, Enrique Roberto

2

Payan; and Betty Reynoso. Betty Reynoso died after this lawsuit was filed from causes unrelated to this case.

Despite an allegation in the Plaintiff's Original Petition that the Explorer had been purchased by and belonged to Betty Payan, the summary judgment evidence is that Susana Reynoso purchased the vehicle for Betty Reynoso. Other family members were involved in researching vehicles in a general way. Eventually, Susana Reynoso made the decision to purchase the 2000 Ford Explorer and paid for the vehicle.

The vehicle was purchased to assist Betty Reynoso with her charity work and for her driver to use on her behalf. Although all family members worked and had their own cars, their use of the Explorer was very occasional and happened very rarely. On occasion, the Explorer was used by other family members particularly for trips within Mexico because the vehicle "was of Mexican registry." Everyone in the family worked and had their own cars.

On January 11, 2003, Sally and Betty Payan traveled from Matamoros to Monterrey for a medical appointment, lunch, and some shopping. Sally Payan was sleeping while her mother drove. Approximately 45 minutes into the return trip in the rain, the vehicle swerved to the left, crossed the center median, rolled over, and ended up on its roof on the opposite side of the highway. Sally Payan sustained very minor injuries and was able to extricate herself from the vehicle. Betty Payan was injured and stuck inside the vehicle.

Betty Payan received medical care in several locations before she died approximately 30 days after the accident. Less than half an hour after the accident, an ambulance arrived and transported her to a clinic in China, Nuevo Leon. From there, she was transported by ambulance to McAllen and then to Harlingen for surgery. After the surgery, Betty Payan traveled to Houston for physical therapy and treatment at Texas Institute of Rehabilitation and Research ("TIRR") and Hermann Memorial Hospital, where she died.

3

III.

## Summary Judgment Standard

Summary judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," *Celotex Corp.*, 477 U.S. at 327, the party "need not negate the elements of the nonmovant's case." *Little*, 37 F.3d at 1075 (*citing Celotex*, 477 U.S. at 323).

If the moving party meets this burden, the non-movant must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. Fed R. Civ. P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little*, 37 F.3d at 1071 (*citing Celotex*, 477 U.S. at 325). When the moving party has carried its burden under Rule 56(c), the nonmovant must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must present more than a mere scintilla of evidence. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). Summary judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts

4

and law demonstrating a basis for recovery that would support a jury verdict." *Little*, 37 F.3d at 1071.

## IV.

### Design Defect

Plaintiffs allege defective design of the 2000 Ford Explorer was the cause of Betty Payan's death, specifically criticizing the handling and stability system and the seatbelt system. Defendants contend Plaintiffs have offered no evidence of the existence of a defect in the handling and stability system or of the defect as the proximate cause of the injury. Defendants also indicate none of Plaintiffs' expert witnesses are offering testimony concerning the handling and stability of the 2000 Ford Explorer. Defendants contend that Plaintiffs' designated experts have not established a causal connection between the seatbelt system and the injuries sustained by Betty Payan.

Texas has adopted the Restatement (Second) of Torts section 402A to define strict tort liability. *Smith v. Aqua-Flo*, 23 S.W.3d 473, 476 (Tex. App.–Houston [1st Dist.] 2000, pet. denied). One who sells any product in a defective condition unreasonably dangerous to the user or consumer is subject to liability for the physical harm caused if: (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. RESTATEMENT (SECOND) OF TORTS § 402A (1965). *See McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788 (Tex. 1967); *McLennan v. American Eurocopter Corp., Inc.*, 245 F.3d 403, 426 (5th Cir. 2001). A product may be unreasonably dangerous due to a defect in the manufacturing process or in its design or because of the manufacturer's failure to provide adequate warnings or instructions on the product's use. *McLennan*, 245 F.3d at 426.

Under Texas law, in a products liability action based on a design defect, the claimant must prove by a preponderance of the evidence that there was a safer

alternative design and that the defect was a producing cause of the personal injury. TEX. CIV. PRAC. & REM. CODE § 82.005. A "safer alternative design" means a product design that in reasonable probability would have prevented or significantly reduced the risk of the claimant's personal injury or death without substantially impairing the product's utility and was economically and technologically feasible at the time the product left the control of the manufacturer or seller by application of existing and reasonable achievable scientific knowledge. *Id.* A safer alternative design is a requisite element of a cause of action for defective design. *Dyer v. Danek Med., Inc.*, 115 F.2d 732, 738 (N.D. Tex. 2000)(*citing Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999)). If no evidence is offered that a safer design existed, the product is not unreasonably dangerous as a matter of law. *Aqua-Flo*, 23 S.W.3d at 477 (*citing American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 433 (Tex. 1997)).

Texas common law supplements the statutory requirements for a defective design products liability claim. *Hernandez*, 2 S.W.2d at 256. Determining if a design is unreasonably dangerous requires balancing the utility of the product against the risks involved in its use. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995). The Texas Supreme Court has identified five factors relevant to the risk-utility analysis:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its cost; (4) the user's anticipated awareness of the danger inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product or the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer.

*Dyer*, 115 F.2d at 738.

Texas law does not require a manufacturer to destroy the utility of the product in order to make it safe. *Shears*, 911 S.W.2d at 384. The law of products liability demands that manufacturers take feasible steps to make their products reasonably safe. *Id.* at 385. However, the law should not impose liability in such a way as to

6

eliminate whole categories of useful products from the market. *Id.* Plaintiffs must offer evidence of a safer design for the same specific purpose that would be equally effective and not unreasonably expensive. *Dyer*, 115 F.2d at 738.


## V.
## Have the Plaintiffs Shown a Safer Alternative Design?

Plaintiffs allege the Explorer was defective and unreasonably dangerous due to "the failure of the vehicle to withstand adequate force to prevent roof crush and vehicle steering/instability under conditions such as those involved." (Pls.' Original Pet.) Plaintiffs contend that their expert Gerald Rosenbluth established the elements of a safer alternative design for the handling and stability system. (Pls.' Opp'n to Def.'s Mot. Summ. J. 6)  However, Mr. Rosenbluth agreed that he would not be testifying as a handling and stability expert; he stated that he would defer to an accident reconstruction expert or a handling and stability expert with regards to the availability of an electronic stability control system for the 2000 Explorer model. (Rosenbluth Dep. 18:12-21)  Plaintiffs have not designated a handling and stability expert or offered any evidence of a technologically and economically feasible alternative design for the handling and stability system.  Plaintiffs have merely hinted at the technological feasibility of an alternative handling and stability system by referring to systems in Volvo and Mercedes models. (Rosenbluth Dep. 16:4; 17:22-18:1)  While the use of an alternative design by another manufacturer may establish technological feasibility, it does not establish economic feasibility. *Honda of America Manu., Inc. v. Norman*, 104 S.W.3d 600, 607 (Tex. App.–Houston [1st Dist.] 2003, pet. denied).  Plaintiffs have failed to provide evidence of a safer alternative design with regards to the handling and stability system, and thus, Plaintiffs have failed to establish a design defect claim as a matter of law.  Defendant Ford Motor Company's Motion for Summary Judgment on Plaintiffs' Handling and Stability Defect Claim is **GRANTED.**

Seatbelt design defect cases can be complex because there are many available seatbelt systems used by car manufacturers. *Norman*, 104 S.W.3d at 606-608 (describing three alternative seatbelt systems after the system in place at the time of the accident pinned the driver against the seat, prevented her from releasing the belt, and contributed to her drowning in her car); *see also Ford Motor Co. v. Miles*, 967 S.W.2d 377, 378 (Tex. 1998). One component of a safer alternative design is a product design that in reasonable probability would have prevented or significantly reduced the risk of the claimant's injury or death. TEX. CIV. PRAC. & REM. CODE § 82.005.

Plaintiffs have designated Gerald Rosenbluth as a seat belt analyst expert. *See* Ex. A (Pls.' Designation Experts) However, Mr. Rosenbluth will not testify about injury causation; he deferred to Ronald Huston, another expert witness. *See* Ex. B (Rosenbluth Dep. 32:5-12) Mr. Huston testified about an integrated seat belt and pretensioners, but he did not testify that an alternative design would have prevented the injury. *See* Ex. E (Huston Dep. 51:1-25) Mr. Huston believes that "in this accident she still would have received these injuries." (Huston Dep. 51:9-11) Neither Mr. Rosenbluth nor Mr. Huston establish that a different seatbelt system would have prevented or significantly reduced the risk of injury. On the contrary, Mr. Huston indicates that even with a different seatbelt system Betty Payan would have received the same injuries. Plaintiffs have not established a safer alternative design. Defendant Ford Motor Company's Motion for Summary Judgment on Plaintiffs' Defective Seatbelt System Claim is **GRANTED.**

## VI.

### Misrepresentation

Plaintiffs allege that Defendants misrepresented the safety of their products. (Pls.' Original Pet.) Defendant contends Plaintiffs provide no evidence of an express representation, the only type actionable under Restatement (Second) of Torts § 402B.

8

(Def.'s Mot. Partial Summ. J.– Misrepresentation)

One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation. RESTATEMENT (SECOND) OF TORTS § 402B (1965). This rule is limited to misrepresentations made by the seller to the public at large. *Id.* § 402B comment h. Texas adopted section 402B. *Crocker v. Winthrop Laboratories*, 514 S.W.2d 429, 431 (Tex. 1974)(holding the drug company liable for advertising the drug Talwin as a non-addictive medication when the plaintiff became dependent upon the drug). Texas law of section 402B covers only affirmative or express misrepresentations. *Rehler v. Beech Aircraft Corp.*, 777 F.2d 1072, 1077 (5th Cir. 1985). *See also Franks v. Nat'l Dairy Prod. Corp.*, 282 F.Supp. 528, 533 (W.D. Tex. 1968).

## VII.

### Did the Salesperson Make a Misrepresentation Under Restatement § 402B?

Plaintiffs argue that the statements made by Luis Elizondo, the salesperson at Automotriz Del Noreste, to Susana Reynoso constitute a misrepresentation covered by section 402B. (Pl.'s Opp'n Def.'s Mot. Summ. J.) Although Plaintiffs contend Susana Reynoso purchased the 2000 Ford Explorer instead of another make or model in reliance on statements by Mr. Elizondo, Ms. Reynoso stated she shopped for a vehicle from Mr. Elizondo because he was friends with her brother-in-law. Additionally, she selected the Ford Explorer over the Expedition due to greater availability and a lower price. Although Ms. Reynoso says she looked at advertisements prior to the purchase, she identifies Mr. Elizondo's statement that he believed the Explorer to be safe enough to let his daughter drive one as the primary statement upon which she relied.

Statements by a salesperson at a car dealership to a potential buyer have been

characterized as a personal opinion or sales talk. *Chandler v. Gene Messer Ford Inc.*, 81 S.W.3d 493, 499 (Tex. App.–Eastland 2002, pet. denied)(holding "automobile salesman's representations regarding the safety of vehicle with dual air bags did not constitute misrepresentations of material fact"). A salesperson's statement that a car was safer with air bags was not a public misrepresentation when made to an individual purchaser. *Id.* Plaintiffs attempt to distinguish the facts in the present case from those in *Chandler*. (Pl.'s Opp'n Def.'s Mot. Summ. J.) The plaintiffs in *Chandler* presented more evidence of misrepresentation including advertisements of Ford products made to the public, yet their claim was unsuccessful. *Id.* at 500. Here, Plaintiffs present one statement made by one salesman to an individual buyer concerning his decision to let his daughter drive the same make and model the buyer was interested in purchasing. Plaintiffs' argument fails for several reasons. Mr. Elizondo's statements were not made "to the public" in any manner; therefore, section 402B does not apply. Also, his statements were his personal opinion, not misrepresentations of material fact. *See Chandler* at 500. Finally, his comments can be described as puffing or sales talk rather than misrepresentations of material fact. *Id.* at 499. Defendant Ford Motor Company's Motion for Partial Summary Judgment – Misrepresentation Claims is **GRANTED**.

## VIII.
## **Manufacturing Defect**

Plaintiffs allege a strict products liability claim based on a manufacturing defect. (Pls.' Original Pet.) Defendant contends Plaintiffs have offered no evidence and no expert testimony about the alleged manufacturing defect and therefore, Plaintiffs' claim should fail. (Def.'s Mot. Summ J. - Manufacturing Defect)

Under Texas law, a plaintiff has a manufacturing defect claim when a finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997). In *Nissan Motor Co. v.*

10

*Armstrong*, the Texas Supreme Court reviewed past cases concerning products liability actions involving automobiles. 145 S.W.3d 131, 137 (Tex. 2004). Texas courts have required competent expert testimony and objective proof that a defect caused the acceleration in cases alleging spontaneous acceleration. *Id.* In other types of cases alleging vehicle defects, the Texas Supreme Court has held a specific defect must be identified by competent evidence and other possible causes must be ruled out. *Id.* A plaintiff must present evidence that the vehicle is defective. *Id.* at 138. However, expert testimony is not necessarily required to establish a manufacturing defect. *Parsons v. Ford Motor Co.*, 85 S.W.3d 323, 330 (Tex. App.–Austin 2002, pet. denied).

A plaintiff does not need an expert in all cases to establish a product defect. *Sipes v. General Motors Corp.*, 946 S.W.2d 143, 154 (Tex. App. –Texarkana 1997, writ denied). However, issues may arise on technical matters of design and engineering that would be beyond evidence that lay witnesses with no expertise in these fields could offer. *Id.* More significant than the presence or absence of expert testimony is whether the movant has met the summary judgment burden of proof. *Id.* at 155.

Strict liability focuses on the product's condition. *Id.* The mere fact that an accident occurred is not sufficient proof that the automobile was defective. *Id.* (*citing Hernandez v. Nissan Motor Corp.*, 740 S.W.2d 894, 895 (Tex. App.–El Paso 1987, writ denied). A strict liability case does not require a showing of how the product became defective. *Id.* Circumstantial proof may be adequate to show a defect when a plaintiff has no evidence of a manufacturing defect. *Id.* Evidence of a product's malfunction may serve as circumstantial evidence of a defect. *Id.* However, a specific defect must be established by competent evidence. *Armstrong*, 145 S.W.3d at 137.

While in its pleadings Defendant overstates the expert testimony requirement in a manufacturing defect case, on the other hand, Plaintiffs oversimplify the present facts by analogizing them to *Parsons*. In *Parsons*, a vehicle caught fire in the garage after the ignition was turned off. *Parsons*, 85 S.W.3d at 326-27. Both the driver and her husband were able to testify to the events leading up to and following the incident. *Id.* at 328. Additionally, both had driven the car regularly. *Id.* at 326. Here, a car accident

11

occurred on a rainy superhighway in a three-year-old vehicle driven by someone unfamiliar with its operation. The driver is unavailable to comment on the circumstances of the accident. The passenger is unable to recall the circumstances of the accident because she was sleeping before it occurred and lost consciousness during it. Plaintiffs have presented no accounts of witnesses or emergency personnel. Plaintiffs have offered no testimony from the individual most familiar with the vehicle, Betty Reynoso's driver.

Plaintiffs have not offered expert testimony concerning the specifications for Ford Explorers or any deviations from these specifications present in the Explorer involved in the accident. Additionally, Plaintiffs have not offered competent proof of a specific defect. Plaintiffs have not provided enough information about the cause of the accident to establish circumstantial evidence of a defect because they have not offered proof of a malfunction. Plaintiffs have not offered sufficient proof to establish that the Explorer was defective as a result of a manufacturing defect. Therefore, Defendant Ford Motor Company's Motion for Partial Summary Judgment –Manufacturing Defect Claims is **GRANTED**.

## IX.

## Marketing Defect

Plaintiffs allege the Explorer "was defective by reason of Defendant's failure to include, provide or carry with them adequate and proper warnings and instructions as to dangers associated with the use of the product and how to avoid such dangers." (Pls.' Original Pet.) Defendant Ford contends that Plaintiffs have presented no evidence of a failure to warn claim because Plaintiffs have not indicated any specific warning or instruction that was inadequate or absent. (Def.'s Mot. Sum. J. - Marketing Defect)

Texas has adopted the Restatement (Second) of Torts section 402A to define strict liability. *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 476 (Tex. App. –Houston [1st

Dist.] 2000, pet. denied).  A product may be unreasonably dangerous due to a defect in its manufacture or design or a failure to provide adequate warnings or instructions. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995).  A marketing defect is found if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous. *Id.*

A marketing defect cause of action consists of five elements: (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury. *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 116 (Tex. App.–San Antonio 2004, pet. denied).  An adequate warning must be reasonably calculated to reach the ultimate user of a product.  *Reese v. Mercury Marine Div. of Brunswick Corp.*, 793 F.2d 1416, 1422 (5th Cir. 1986).  Such a warning must also convey a fair indication of the nature and extent of the danger.  *Id.*

Proving causation in a failure to warn case has peculiar difficulties.  *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993).  A plaintiff must show that adequate warnings would have made a difference in the outcome.  *Id.*  When a manufacturer fails to give adequate warnings or instructions, a rebuttable presumption arises that the user would have read and heeded such warnings or instructions.  *Id.* at 358 (*citing Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832 (Tex. 1986)).  However, the presumption operates differently where there is no warning than it operates where the improper use is addressed by the manufacturer's warning, but not adequately.  *Id.* at 359.  There is no presumption that a plaintiff who ignored instructions that would have kept him from injury would have followed better instructions.  *Id.*

In *Goodyear Tire v. Rios*, expert testimony was required in a marketing defect case concerning a failure to warn that a patch repair of a tire was less safe than a patch

13

and plug repair.  143 S.W.3d at 118.  When a lay person's general experience and common sense will not enable that person to determine the issue, expert testimony is required.  *Id.*

## X.

## Did a Marketing Defect Exist in the 2000 Ford Explorer?

A marketing defect claim requires evidence of a lack of warning or evidence of the inadequacy of the available warnings.  Plaintiffs must establish that the lack of warning or inadequacy of the warning was the producing cause of the injury.  Plaintiffs have presented no evidence or testimony concerning the available warnings or possible alternative warnings.

Sally Payan testified that she never looked at the owner's manual or visor warnings in the Explorer.  She was unaware whether an owner's manual came with the vehicle.  Susana Reynoso testified that the dealership provided an owner's manual with the vehicle; however, aside from looking up the maintenance schedule, no one in the family read the manual.  Plaintiffs' experts did not comment on the warnings or instructions in the owner's manual or on the vehicle.

Plaintiffs have provided no evidence that the 2000 Ford Explorer was unreasonably dangerous due to a inadequate or lacking warnings or instructions.  Without proof of the existence of a marketing defect, the question of causation is not reached.  As a result of lack of proof, no genuine issue of material fact exists with regards to the Plaintiffs' marketing defect claim.  Therefore, the Defendant Ford Motor Company's Motion for Partial Summary Judgment - Marketing Defect is **GRANTED.**

## XI.

## Personal Injury and Mental Anguish

Plaintiffs allege personal injury damages including related mental anguish

14

damages for Betty Reynoso, Enrique Roberto Payan, and Sally Payan.  Additionally, Plaintiffs assert personal injury claims for Sally Payan for personal injuries suffered in the accident.  Defendant moved for summary judgment on Sally Payan's personal injuries only.  Defendant did not move for summary judgment on the claims of the Betty Payan's parent, Betty Reynoso, and surviving children, Sally and Enrique Roberto Payan.  Defendant did not request relief from mental anguish claims under either the wrongful death claim or Deceptive Trade Practices Act ("DTPA") claims even though Plaintiffs raised only these claims in Plaintiffs' Consolidated Opposition to Defendant Ford Motor Company's Motions for Summary Judgment. (Pls.' Opp'n Def.'s Mot. Summ. J.)

Wrongful death claims by family members may result in mental anguish damages. *See Moore v. Lillebo*, 722 S.W.2d 683 (Tex. 1987).  Injuries to the familiar relationship are significant injuries and are worthy of compensation.  *Id.* at 684. Destruction of the parent-child relationship results in mental anguish, and when such emotional injuries are alleged, a plaintiff should be permitted to prove them.  *Id.*

A DTPA claim with a mental anguish component requires a finding that the defendant committed a knowing violation of the statute.  *Verinakis v. Med. Profiles Inc.*, 987 S.W.2d 94, 98 (Tex. App.–Houston[14th Dist.] 1996, pet. denied).  Plaintiffs must prove a DTPA violation and show that defendant knowingly violated the statute in order to recover mental anguish damages.  *Low*, 79 S.W.3d 561, 566 (Tex. 2002).

Sally Payan testified that although she suffered a "seat belt burn," she did not incur any pain or injuries from the accident.  Plaintiffs concede "even if the finder of fact concludes that she has not suffered a physical injury" she is entitled to wrongful death damages for the death of her mother and mental anguish damages as part of the DTPA claim.  Defendant agrees that Sally Payan may potentially receive damages for a wrongful death claim or a DTPA claim if she proves these independent causes of action.  However, Sally Payan may not receive damages related to her own personal injuries because she did not suffer personal injuries in the accident.  Defendant Ford Motor Company's Motion for Summary Judgment – Personal Injury Claims of Plaintiff

15

Sally Payan is **GRANTED**.

## XII.

## Deceptive Trade Practices Act Claims

Plaintiffs allege that Defendant violated the Texas Deceptive Trade Practices Act ("DTPA") through misrepresentations and breach of a warranty of merchantability. Defendant contends Plaintiffs are not "consumers" as defined in the DTPA and are not covered. Additionally, Defendant argues in the alternative that no violation of the DTPA is present under these facts. (Def.'s Mot. Summ. J. – DTPA)

A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in Section 17.46 and relied on by the consumer to the consumer's detriment or (2) breach of an express or implied warranty. TEX. BUS. & COM. CODE ANN. § 17.50(a)(1),(2). A consumer means an individual . . . who seeks or acquires by purchase or lease, any goods or services. *Id.* § 17.45(4). *See Kennedy v. Sale*, 689 S.W.2d 890, 891 (Tex. 1985).

### A.

### Consumer

Consumer status is an essential element of a DTPA cause of action. *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 400 (Tex. App.– San Antonio 2000, no pet.). The question of consumer status under the DTPA is a question of law for the court to decide, unless there is a dispute concerning factual issues. *Id.* at 401. A plaintiff must qualify as a consumer to maintain a private cause of action under the DTPA by having sought or acquired goods or services by purchase or lease. For example, in *Rodriguez v. Ed Hicks Imports*, the court held that a man who was

16

inspecting his girlfriend's car and suffered burns from water gushing out of the radiator and who had never visited the dealership or spoken to the salesperson had no relationship to the transaction and therefore, was not a consumer under the DTPA. 767 S.W.2d 187, 191 (Tex. App. – Corpus Christi 1989, writ denied).

### B.
### Seek or acquire

A person need not be a direct purchaser to satisfy the requirement that he seek or acquire goods or services. *Lukasik*, 21 S.W.3d at 401. Consumer status is established merely by seeking to acquire services, even if the services are not actually acquired, and no money need change hands to establish consumer status. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.–San Antonio 2002, pet. denied). A person's objective is of paramount importance in determining consumer status. *Martin v. Lou Poliquin Enterprises, Inc.*, 696S.W.2d 180, 183 (Tex. App.–Houston [14[th] Dist.] 1985, writ denied). A DTPA consumer is one who in good faith initiates the purchasing process. *Id.* at 184. An individual initiates the purchasing process when he (1) presents himself to the seller as a willing buyer with the subjective intent or specific objective of purchasing and (2) possesses at least some credible indicia of the capacity to consummate the transaction. *Id.* at 184-85. *See also Houston v. Mike Black Auto Sales, Inc.*, 788 S.W.2d 696, 699 (Tex. App.–Corpus Christi 1990, no writ).

### C.
### Relationship to Transaction

A plaintiff establishes his standing as a consumer by the terms of his relationship to the transaction, not by a contractual relationship with the defendant. *Rodriguez*, 767 S.W.2d at 191. The goods or services sought or acquired by the consumer must form

17

the basis of the complaint. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983).

### D.
### Intended beneficiaries and Incidental beneficiaries

In very limited situations, a third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party. *Lukasik*, 21 S.W.3d at 401. If the transaction was not intended for the plaintiff's direct benefit, the plaintiff is no more than an incidental beneficiary. *Id.* at 402. An incidental beneficiary is not a consumer under the DTPA and lacks standing to assert a DTPA cause of action as a matter of law. *Id.* The DTPA does not require the consumer be an actual purchaser of the goods, as long as the consumer is the beneficiary of those goods. *Arthur Andersen v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex. 1997). A minor was a "consumer" of the garage door opener that was purchased for his benefit, installed in the home where he lived, and used by him. *Wellborn v. Sears, Roebuck & Co.*, 970 .2d 1420, 1427 (5th Cir. 1992). Even though the parent did not purchase the garage door opener specifically for his benefit, she did consider the additional security for her son as one reason for the purchase. *Id.*

In *Chamrad v. Volvo Cars of North America*, the court held a man who made three preliminary trips to a California dealership with his fiancé before she purchased a Volvo from a Texas dealership had a tenuous relationship to the transaction and was no more than an incidental beneficiary. 145 F.3d 671, 672 (5th Cir. 1998). As a result of this designation as an incidental beneficiary of the transaction, he did not qualify as a consumer under the DTPA. *Id.*

### XIII.
### Were Plaintiffs Consumers Under the DTPA?

The purchaser, Susana Reynoso, is not a party to this case. Plaintiffs in this case did not "purchase" the Explorer involved in the accident. Plaintiffs did not "seek" the Explorer in that they did not visit the dealership or decide which vehicle should be purchased. Neither Sally Payan or Enrique Roberto Payan "acquired" the vehicle because neither was more than an incidental beneficiary who would use the vehicle infrequently. Therefore, neither Sally Payan or Enrique Roberto Payan were consumers as defined in the DTPA.

In contrast, the evidence is uncontroverted that Betty Reynoso was the intended beneficiary of the purchase. The Explorer was purchased for her, kept at her house, and driven and maintained by her driver. Although Betty Reynoso did not participate in any part of the purchase such as speaking to a salesperson or visiting the dealership, she arguably meets the criteria as a consumer.

Defendant Ford Motor Company's Motion for Partial Summary Judgment– Deceptive Trade Practices Act Claims is **GRANTED IN PART** for DTPA claims made by Sally Payan and Enrique Roberto Payan and **DENIED IN PART** for DTPA claims made by Betty Reynoso.

## XIV.

## Conclusion

The Court **GRANTS** Defendant Ford Motor Company's Motion for Summary Judgment on Plaintiffs' Handling and Stability Defect Claim [Dkt. No. 48]; Defendant Ford Motor Company's Motion for Partial Summary Judgment - Misrepresentation Claims [Dkt. No. 49]; Defendant Ford Motor Company's Motion for Partial Summary

Judgment - Manufacturing Defect Claims [Dkt. No. 50]; Defendant Ford Motor
Company's Motion for Partial Summary Judgment - Marketing Defect Claims [Dkt. No.
51]; Defendant Ford Motor Company's Motion for Summary Judgment - Personal Injury
Claims of Plaintiff Sally Payan [Dkt. No. 52]; and Defendant Ford Motor Company's
Motion for Summary Judgment on Plaintiff's Defective Seatbelt System Claim [Dkt. No.
55]. The Court **GRANTS IN PART AND DENIES IN PART** Defendant Ford Motor
Company's Motion for Partial Summary Judgment - Deceptive Trade Practices Act
Claims [Dkt. No. 53].

DONE at Brownsville, Texas, this 12th day of September 2005.

Hilda G. Tagle
United States District Judge