IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN,<br><br>Plaintiffs<br><br>v.<br><br>FORD MOTOR COMPANY,<br>Defendant | §§§§§§§§§§§§§<br><br>C.A. No. B-03-120 |

**ORDER & OPINION**

BE IT REMEMBERED that on September 27, 2005, the Court **DENIED** Defendant's Opposed Motion to Exclude Testimony of Ronald Huston Under Rules 402, 403, and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals* [Dkt. No. 54].

Plaintiffs designated Ronald Huston as a biomechanics expert [Dkt. No. 26]. Defendants argue that Huston is not qualified to offer injury causation testimony and that his testimony is based on unreliable data [Dkt. No. 54].

Expert Testimony under Federal Rules of Evidence 402, 403, & 702

All relevant evidence is admissible except as provided by statute or evidentiary rules, and irrelevant evidence is not admissible. Fed. R. Evid. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, delay or waste of time. Fed. R. Evid. 403. These rules govern the admissibility of all types of evidence.

1

Rule 702 specifically addresses the admissibility of expert testimony that has met the threshold relevance requirement.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Federal Rules of Evidence require trial judges to determine whether the testimony rests on a reliable foundation and is relevant to the question before them. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993).

In *Daubert*, the Court held that certain factors may assist the trial judge in determining the reliability of scientific knowledge offered by an expert; these factors include whether a theory or technique can be tested; whether it has been subjected to peer review and publication; the known or potential rate of error of the testing; and whether it has been generally accepted with the relevant scientific community *Id.* at 593-94. In addition to making this determination concerning scientific knowledge, the trial judge must perform this gatekeeping function for expert testimony based on technical and other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). However, the *Daubert* factors operate as a non-exclusive list that the trial court may consider when determining the reliability of the testimony. *Id.* The trial court has broad latitude to determine whether the *Daubert* factors are appropriate in a particular case. *Id.* at 153.

<u>Ronald Huston Is Qualified to Offer Biomechanics Testimony</u>

Ronald Huston is qualified to testify concerning the biomechanics of Betty Payan's accident because he earned a Ph.D. in engineering mechanics and has extensive experience teaching university biomechanics and injury mechanics classes. He has published articles and presented papers about the dynamics of accidents with a

particular focus on the reaction of the head and neck to different types of force. Additionally, he has authored two books concerning the dynamics of "wheeled recreational vehicles." Huston appears to be uniquely qualified to testify regarding the dynamics of Betty Payan's car accident and the forces which led to her various injuries.

Defendants cite Huston's exclusion as an expert in a previous Texas case in which he offered biomechanics and injury causation testimony about the death of a minor passenger. *See Gammill v. Jack Williams Chevrolet*, 983 S.W.2d 1, 10 (Tex. App. – Fort Worth 1996, pet denied). In *Gammill*, the court focused on Huston's examination of the minor's autopsy photographs and X-rays in order to conclude that Huston was not qualified to express opinions regarding the condition of the girl's body or the cause of her death. *Id.* at 11, 12. The court emphasized Huston's lack of medical training rather than focusing on his biomechanics qualifications. *Id.* at 11. Additionally, the court strictly applied all of the *Daubert* factors to Huston's testimony. *Id.* at 12. These factors are not a definitive checklist or test. *Kumho Tire*, 526 U.S. at 150.

In the present case, Huston relied on Betty Payan's medical records to provide the list of injuries she sustained in the accident. Huston did not examine the body or any autopsy photographs or X-rays. Instead, Huston reviewed the police report, photographs of the accident and vehicle, and inspected the vehicle. Huston offered an explanation regarding the probable injury-producing forces of the accident based on this evidence. Huston stated his opinion about the accident based on his observations of the wear on the seatbelt and the headliner in the Explorer. Nothing in Huston's testimony or report indicates an attempt to provide a diagnosis or a cause of death. His lack of a medical degree is not relevant to his qualifications for this particular case. Therefore, Huston is qualified to testify as a biomechanics expert.

Ronald Huston's Testimony is Relevant

Huston's testimony on biomechanics and injury causation is relevant to the dynamics within the vehicle during the accident. Neither the driver nor the passenger

is able to testify about what occurred during the accident. No eyewitnesses are available to describe the accident. Huston has reviewed the available police report. According to his deposition, Huston will provide information about the movement of Betty Payan during the accident based on his inspection of the vehicle and the information about her physical characteristics that he gathered from the medical records and her driver's license.

Huston's Testimony is Reliable Under <i>Daubert</i> and <i>Kumho Tire</i>

Huston relies on his engineering background in order to form the opinions expressed in his testimony. While courts may consider the same factors to assess the reliability of opinions based on engineering principles, the *Kumho Tire* court distinguished engineers from other scientists. Engineering testimony rests upon scientific foundations, the reliability of which may be an issue in some cases. *Kumho Tire*, 526 U.S. at 150. In other cases the relevant reliability concerns may focus upon personal knowledge or experience. *Id.* Therefore, the factors in *Daubert* may or may not be pertinent "depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Id.*

In the present case, Huston did not rely exclusively on his personal knowledge to form his opinions. Huston reviewed publications other than his own as well as the medical records from Betty Payan's hospitalization. In addition, Huston inspected the vehicle and photographs of the accident scene. Huston performed a test in a simulated driver's seat using a surrogate to represent the driver. In this case it is most appropriate to apply the non-exclusive factors identified by the *Daubert* court along with the latitude granted to the trial court for engineering testimony in *Kumho Tire*.

In the field of mechanical engineering, generally principles are tested using models and simulations. Huston tested the biomechanics of Betty Payan's body in the vehicle during the accident using a surrogate in a simulated driver's seat. *See* Exhibit E. The seat assembly measurements were based on the measurements from the 2000

Explorer following the accident. The surrogate driver was selected to match Betty Payan's height and weight based on her driver's license and her earlier medical records. The parties dispute the accuracy of the driver's license measurements at the time of the accident, but the surrogate's measurements are within one inch and two pounds of these measurements. The passage of time and the injuries sustained in the accident may account for a higher weight in the later medical records. The parties' concerns about the weight and height measurements of the surrogate should be addressed during cross-examination. Huston based his opinion upon a theory that can be and was tested.

Huston and others have published articles concerning biomechanics and injury causation. Huston has published relevant articles concerning dynamics in accidents and specific injury simulations for over thirty years.[1] Additionally, Huston has presented conference papers on similar topics. A wide range of organizations including NASA, the National Science Foundation, the National Institute of Occupational Safety & Health, and the National Highway Transportation Safety Association have provided Huston with research grants. Huston's theory has been published and reviewed by peers through publications, presentations, and grant applications.

Huston worked with Automotive Consulting Services, Incorporated to perform the test using the surrogate. The results from this test include five tests in the test sequence. The report labels the measurements taken, identifies the type of simulation, and records the distance in inches. The rate of error is determined by the variation in results for the same measurement under the same conditions. While some variation exists according to the results of these tests, these variations are best explored during

---

[1] See generally R.E. Hessel, Ronald Huston, & J.M. Winget, *Dynamics of a Crash Victim- A Finite Segment Model*, AIAA Journal, Vol. 13, No. 2, 1976, 173 (exploring the biomechanics of the human body in an accident); Ronald Huston, D.R. Lemmon, & M. Wu, *Head Injury Reduction in Automobile/Pedestrian Impact*, Shock & Vibration, Vol. 1, No. 6, 1994, 559 (focusing on injuries to the head); Ronald Huston, *A Review of the Effectiveness of Seat Belt Systems: Design and Safety Considerations*, International Journal of Crashworthiness, Vol. 6, No. 2, 2001, 243 (indicating recent publication about biomechanics and car accidents).

cross-examination.  The data is available to determine that the rate of error is not so great as to make Huston's testimony unreliable.

Biomechanics is an accepted topic within the field of mechanical engineering as indicated by the existence of conferences and journals devoted to the topic as well as courses taught in major university engineering departments.  The American Society of Biomechanics will hold its thirtieth annual meeting in 2006.  Huston has published articles with The Journal of Biomechanics and Annals of Biomedical Engineering. Massachusetts Institute of Technology, Princeton University, and Texas A & M University offer courses in biomechanics within their mechanical engineering departments. These courses and journals in addition to the extensive publications in the field by Huston and others are indicators of the general acceptance of biomechanics and injury causation within the mechanical engineering field.

Huston's testimony is reliable when assessed using the specific factors of testing, peer review, error rate, and acceptability.  Additionally, Huston offers the personal knowledge and experience of a professor of engineering with extensive publication in the field of biomechanics.

The Court **DENIES** Defendant's Opposed Motion to Exclude Testimony of Ronald Huston Under Rules 402, 403, and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*.

DONE this 27th day of September, 2005, at Brownsville, Texas.

_____
Hilda G. Tagle
United States District Judge