IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISABEL ENNIS REYNOSO, SALLY PAYAN, AND ENRIQUE ROBERTO PAYAN, | § § § § | |
| Plaintiffs, | § | |
| vs. | § § | CIVIL ACTION NO. B-03-120 |
| FORD MOTOR COMPANY, et al. | § § | |
| Defendants. | § § | |

## DEFENDANT FORD MOTOR COMPANY'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION IN LIMINE NO. 12 TO EXCLUDE VOLVO DOCUMENTS

TO THE HONORABLE JUDGE OF THE COURT:

Defendant Ford Motor Company (hereinafter "Ford"), files this brief in support of its Motion in Limine No. 12 to exclude documents pertaining to the Volvo XC90 and related Volvo testing and reports (hereinafter the "Volvo Documents") because:

1. Plaintiffs' use of Volvo Documents is in violation of protective orders issued in other cases;

2. Plaintiffs have not properly disclosed the Volvo Documents and related expert opinions in this matter;

3. The Volvo Documents are irrelevant and inadmissible as to Plaintiffs' roof defect claim, and;

4. The Volvo Documents are unsupported hearsay.

This brief is supported by the following Memorandum of Points and Authorities and exhibits attached thereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **FACTUAL AND PROCEDURAL BACKGROUND**

This is a product liability action arising from a single vehicle rollover accident, occurring on January 11, 2003 in Nuevo Leon, Mexico. Betty Payan was the driver of the 2000 Ford Explorer involved in the accident and she received fatal injuries during the accident. Plaintiffs allege that the roof of the 2000 Explorer was defective and unreasonably dangerous and that this defect caused Betty Payan's death. To support their claim, they have designated Dr. Dean Jacobson to testify that the structural integrity of the Explorer's roof was allegedly defective.

In the report he prepared for the Plaintiffs, Dr. Jacobson opines that the 2003 Volvo XC90 is a reasonable alternative design to the 2000 Explorer from a roof design standpoint. *See* Jacobson Report at pages 44 at 45, relevant excerpts attached as <u>Exhibit A</u>. In his report, Dr. Jacobson specifically refers to "publications of the Volvo XC90 that show the results of a 30 mph dolly rollover test" and refers to this and other data in support of comparisons he draws between the design of the 2000 Explorer and the 2003 Volvo XC90. *Id.*

During his March 25, 2005 deposition in this matter, Dr. Jacobson admitted that he was able to obtain certain Volvo Documents related to the dolly testing and that he relied on the Volvo Documents in forming his opinions. *See* Jacobson Depo. at 91:14-23, 99:20-25, relevant excerpts attached as <u>Exhibit B</u>. Although the subpoena accompanying his deposition notice required Dr. Jacobson to produce all documents, tests and/or test data relied on in support of his opinions, Dr. Jacobson did not produce any Volvo documents at the time of his deposition. *See* subpoena attached as <u>Exhibit C</u>. Inasmuch as no Volvo Documents were requested by Plaintiffs

2

or produced by Ford in this case, Ford requested that Plaintiffs provide the documents referred to by Dr. Jacobson as well as a copy of the protective order under which they obtained. *See* Letter from A. Samberg to T. Martinez, copy attached as Exhibit D. Plaintiffs' never responded to Ford's request.

On September 23, 2005, long after close of discovery, Plaintiffs first produced a series of memoranda and a supplemental report prepared by Dr. Jacobson after his deposition and after the June 1, 2005 discovery deadline. (Plaintiffs Exhibit #71.) One memorandum dated June 20, 2005 contains notes regarding a conference with Plaintiffs' counsel wherein Plaintiffs' counsel and Dr. Jacobson discussed "Volvo Documents issues," noting that Dr. Jacobson would "[s]end [an] email to Tony [Plaintiffs' counsel] regarding Volvo," and that "Tony will include Volvo documents for trial." *See* Supplemental Report, relevant excerpts attached as Exhibit E.

The email referenced in Dr. Jacobson's memorandum was attached to his supplemental report and included a news article titled, "Ford pushes to seal memos on vehicle roof strength." *See* Email and Article, attached as Exhibit F. The article reports on Ford's interest in maintaining the confidentiality of the Volvo Documents and specifically describes how: "Ford has asked a court in Florida to issue an order preventing the public from viewing crash reports from its Volvo subsidiary…Ford says the papers contain corporate trade secrets." *Id.* In fact, the Florida Court has since entered an Order enforcing the Protective Order with respect to those documents. (*See* Exhibit G, Order dated 5/27/2005 entered in *Duncan v. Ford Motor Company*)

Trial in this matter is set to begin on October 12, 2005, and Plaintiffs finally provided notice of what documents they intend to offer at trial in an exhibit list, which was filed on September 13, 2005 as part of the Joint Pretrial Order. *See* Plaintiffs' First Exhibit List, copy attached as Exhibit H. The Volvo Documents were first disclosed at that time. *Id.* Plaintiff

failed, however, to identify the documents with enough specificity that Ford's counsel knew exactly what was at issue until September 23, 2005, and only then did so by disseminating a copy of the documents to counsel for Ford in this case.

At the September 28, 2005, pretrial conference in this matter, Plaintiffs stated that they obtained the Volvo Documents subject to protective orders in other cases and contended that those protective orders permits the use of these documents by them at trial. This Court therefore ordered that the parties file briefs on the issues raised in Ford's Motion in Limine No. 12 and that Plaintiffs provide Ford with copies of any applicable protective orders

Following the pretrial conference, Plaintiffs provided to Ford signature pages of exhibits to protective orders from the cases *Gobert v. Ford*, *Duncan v. Ford*, and *Morales v. Ford*. See Exhibit I. Although Plaintiffs provided a copy of the signature page wherein Plaintiffs' counsel agreed to abide by the protective order entered in the *Gobert* case, Plaintiffs failed to provide a copy of the *Gobert* Protective Order itself. Plaintiffs also failed to identify which Volvo Documents were obtained under each order. Ford therefore requested correction of these deficiencies, but Plaintiffs failed to respond to this request. *See* Email Correspondence from A. Samberg to M. Martinez, attached as Exhibit J.

In their Response, Plaintiffs submitted copies of materials related to the protective orders for *Morales* and *Duncan* only. They omit any reference to the *Gobert* Protective Order. Several additional executed affidavits to the *Morales* Protective Order are provided with Plaintiffs' Response. Significantly, the signatures on these Protective Orders' affidavits by the Plaintiffs' attorney and his experts, all bear dates that are well after the close of discovery in this case which by itself confirms that the documents and opinions related thereto were untimely disclosed. Furthermore, the signatures by Plaintiffs' experts, and the late disclosed reports showing

4

reference to these documents prior to signatures on the Protective Orders, likewise demonstrates that the Volvo documents have been utilized in this case in violation of the Protective Orders.[1]

## II. PLAINTIFFS' USE OF THE VOLVO DOCUMENTS VIOLATES THE PROTECTIVE ORDERS ENTERED IN *GOBERT, DUNCAN* AND *MORALES*.

### A.   Plaintiffs' Use Violated the *Gobert* Protective Order.

On May 24, 2005, Plaintiffs' counsel signed the Affidavit to the protective order in *Gobert v. Ford*. *See Gobert* Affidavit, attached as Exhibit K. Ford obtained a copy of the *Gobert* Protective Order, which is attached as Exhibit L. There is **no sharing** provision in the *Gobert* Order. As such, Plaintiffs' receipt of documents produced in that case was in violation of the Order and, if permitted, their use of these documents at trial will constitute a further violation of the Order. It is also reasonable to assume that this absence of a sharing provision in the *Gobert* Order is the reason why Plaintiffs failed to respond to Ford's request to produce a copy of the Order and, of more concern, why Plaintiffs failed to advise this Court that they received Volvo Documents under the *Gobert* Order.

### B.   Plaintiffs' Use Violates the *Duncan* and *Morales* Protective Orders.

In their Response in Opposition to Ford's Motion in Limine No. 12, Plaintiffs state that they obtained Volvo Documents via protective orders issued in the cases of *Duncan v. Ford* and *Morales v. Ford*. Section 6 of the *Duncan* Protective Order provides:

---

[1] Mr. Martinez's signature on the *Morales* Protective Order bears the date of September 27, 2005. The signature on the *Duncan* Protective Order certification is unsigned but the Plaintiff's attorneys in *Duncan* produced a log in July 2005 which did **not** contain Mr. Martinez's name. As to the Plaintiffs' experts, Dean Jacobson's affidavit is dated September 30, 2005; Dr. Ronald Huston's affidavit is dated October 1, 2005; Jerald Rosenbluth's affidavit is dated October 3, 2005, and; Steve Irwin's affidavit is undated, but bears an October 3, 2005 facsimile header. *See* Affidavits, Exhibit M.

Doc ID MENNB-123203
08423-071

> Before being given access to any protected document to persons described in subparagraph 5(c) or 5(e) above, each person to who a party's representatives intend to deliver, exhibit, or disclose any protective document or material contained therein shall be advised of the terms of this order, shall be given a copy of this Order, and shall agree in writing, in the form attached hereto as Exhibit "A", to be bound by its terms.

*Duncan* Protective Order at Section 6, copy attached as <u>Exhibit N</u>.

Plaintiffs did not provide any affidavits for their experts evidencing the receipt of documents under the *Duncan* Protective Order. *See* Exhibit A to Plaintiffs' Response. Plaintiffs therefore cannot demonstrate compliance with the *Duncan* Protective Order and his assertion that the documents his experts have relied upon, and his trial exhibits, came from *Duncan* constitute violation of that protective order absent evidence of a signed certification by each expert acknowledging the terms of the *Duncan* Protective Order. Furthermore, the *Duncan* Protective Order itself has **no provision** for use of the exhibits in a trial separate from the *Duncan* matter itself. <u>See Exhibit N</u>.

Perhaps recognizing the problems associated with the *Duncan* and *Gobert* protective orders, Plaintiffs next argue that the *Morales* Protective Order permits the plaintiffs' attorneys in *Morales* to share Volvo Documents obtained in that action with Plaintiffs' attorneys in the present case. To the contrary, the *Morales* Protective Order clearly does **not** permit use of such documents at trial in this matter and Plaintiffs have violated the *Morales* Order in several ways. First, the *Morales* Order contains a provision allowing disclosure to attorneys involved in roof defect litigation against Ford (paragraph 2(f) of Exhibit O), but the Order demands a specific procedure for such use:

> **Before** persons described in subparagraphs 2(c) of (2(f) (sic) above are **given access** to any Protective Document, each person to whom a party's representative intends to deliver, exhibit, or disclose any Protected Document or material

6

contained therein shall be advised of the terms of this Order, shall be given a copy of this order, and shall agree in writing, in the form attached thereto as Exhibit A, to be bound by its terms.

*Morales* Protective Order at Section 3 (emphasis added), Ex. O.

The affidavits produced by Plaintiffs in Exhibit A to their present Response were each completed just days ago in early October 2005, months after Plaintiffs had already given the documents to their experts. The provision of the Volvo Documents to Plaintiffs' experts therefore constitutes another violation of the protective order.

Furthermore, the *Morales* Protective Order itself have **no provision** for use of the exhibits in a trial separate from the *Morales* matter itself. Paragraph 2(d) allows use of the exhibits at trial "in this case," thereby limiting use to the *Morales* trial. See paragraph 2(d), Exhibit O. There is no provision in the *Morales* order allowing use of the documents at trial in other unrelated matters and attempted use violates the *Morales* order.

The *Morales* Protective Order expressly states that, "[t]he 49th judicial District Court shall retain full and complete and exclusive jurisdiction over any disputes concerning this protective order by agreement of the parties." By executing the affidavit to the Motion, Plaintiff agreed to submit to the jurisdiction of the *Morales* Court and agreed to be bound "to the provisions of the protective order, including all promises undertaken in the order, as if originally agreed to by [him]." *See* Affidavit, Exhibit M. Plaintiffs therefore violated this Order. Accordingly, the Volvo Documents obtained from these violations, as well as the opinions of Plaintiffs' experts that flow from the documents, must be excluded.

If this Honorable Court issued a Protective Order specifically limiting the use of documents produced in a case pending before it, surely it would expect any party obtaining those documents -- even if properly so under the terms of that Order -- to come back to this Court

7

before attempting to disseminate them in another courthouse, in another case. Similarly, it is to be expected that the *Morales*, *Gobert* and *Duncan* Courts are the proper Courts to grant or deny permission for the dissemination of the documents obtained pursuant to Protective Orders under their jurisdiction before this Court should ever need to make a determination as to relevance or other admissibility criteria. There is absolutely no evidence that Plaintiffs' counsel has taken any of the necessary steps with the issuing Courts to insure that dissemination to jurors in this trial would be permitted under their respective Protective Orders; it is certainly not permitted under the terms of the Orders as written. Accordingly, the Volvo Documents obtained from these violations, as well as the opinions of Plaintiffs' experts that flow from the documents, must be excluded.

### III.    PLAINTIFFS DID NOT PROPERLY DISCLOSE THE VOLVO DOCUMENTS.

None of the Volvo documents were properly disclosed prior to or at the depositions of Plaintiffs' expert witnesses and no supplementation occurred before close of discovery on June 1, 2005 . Instead, Plaintiffs waited until September 23, 2005 to provide copies of these proposed trial exhibits to Ford. As a result, Plaintiffs have violated this Court's Scheduling Order and the disclosure requirements of Rule 26, Federal Rules of Civil Procedure. Pursuant to Rules 26(e), Fed.R.Civ.P., a party is under a duty to supplement, at appropriate intervals, its disclosures and responses to discovery if the party learns that the information disclosed or provided in response to discovery requests is incomplete. Rule 37(c)(1), Fed.R.Civ.P., provides that a party, who without substantial justification, fails to amend a prior disclosure or response to discovery as required by Rule 26(e), is not, unless such failure is harmless, permitted to use as evidence at trial any information not so disclosed.

Doc ID MENNB-123203
08423-071

In the present case, Ford served its First Set of Requests for Production and Interrogatories and its First Requests for Disclosure on Plaintiffs shortly after Plaintiffs filed their Original Petition. *See* Ford's Requests and Plaintiffs' Responses, copies attached as <u>Exhibit P</u>. Ford's Request for Production Number 28 specifically requested: "Please produce copies of each documents [sic] that you may utilize as an exhibit or offer into evidence at the time of trial." *Id.* Plaintiffs responded to this interrogatory on October 16, 2003, stating, "Plaintiff will supplement." *Id.* Ford's Request for Production Number 30 specifically requested: "Please produce copies of any document (sic) which support your claim that defect (sic) existed in the vehicle at the time of the accident." *Id.* Again, Plaintiffs response to this interrogatory was, "Plaintiff will supplement." *Id.*

Plaintiffs never supplemented these responses and they never disclosed that they intended to use the Volvo documents as evidence until less than thirty (30) days before trial. Similarly, the subpoena accompanying the deposition notices for each of Plaintiffs' expert required them to produce, at the time of their depositions, any and all documents, tests, or test data relied on in support of the their opinions. With regard to Dr. Jacobson, while he noted that he reviewed and relied on certain Volvo Documents, none of these materials were produced at his deposition or thereafter. *See* <u>Exhibit C</u>.

Proper production of these documents in this case is complicated by the very existence of the protective orders themselves, but that does not relieve Plaintiffs' counsel of the responsibility to abide by those protective orders. Plaintiffs' counsel was required to take appropriate procedural steps in the Courts issuing the protective orders to receive permission to disclose the documents to anyone not already listed in the Order. Plaintiffs' counsel was presumably required to ensure that copies were not disseminated without ensuring that those receiving the

Doc ID MENNB-123203
08423-071

documents submitted themselves to the terms of the Order. While those may have been time-consuming steps, and may have made it difficult for Plaintiffs' counsel to timely fulfill his discovery supplementation obligations in this case, it does not excuse failing to follow the terms of the Protective Orders. Plaintiffs' counsel undertook obligations with respect to obtaining these documents pursuant to the various Protective Orders he signed; he undertook discovery obligations in this Court when he chose to file and pursue this case. Neither set of obligations provides an excuse for ignoring the other.

The prejudice to Ford as a result of this late disclosure is obvious. Ford has been completely deprived of the opportunity to examine the Plaintiffs' experts on the substance of information contained in the Volvo documents. Furthermore, Ford has been deprived of the opportunity to consult with its own experts in an effort to develop responsive opinions or otherwise defend assertions related to the Volvo documents. Avoiding this type of unfair prejudice is precisely the purpose behind Rule 26, Federal Rules of Civil Procedure and, as a result, the Volvo documents must be excluded from trial.

### IV.   DOCUMENTS RELATED TO THE 2003 VOLVO XC90 ARE IRRELEVANT IN AN ACTION INVOLVING A 2000 FORD EXPLORER.

Plaintiffs have failed and are unable to demonstrate that documents relating to the Volvo XC-90 first sold to the public in the 2003 model year, are relevant to the design of the 2000 Ford Explorer. Documents relating to a vehicle first released for sale to the public several years after sale of the subject vehicle cannot properly be utilized to demonstrate an economic or technological feasibility for the subject 2000 Explorer.

To be admissible, the Volvo documents must be relevant. Fed.R.Evid. 402. Relevant evidence means evidence having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 401. In the present case, Plaintiffs offer the Volvo documents as proof of a reasonable alternative design. This is an essential element of their products liability claim under Texas law, which explicitly provides that, in a product liability action, the claimant bears the burden to prove that there was an alternative design that was economically and technologically feasible *"at the time the product left the control of the manufacturer."* TEX.CIV.PRAC. & REM. CODE §82.005 (Vernon 2003) (emphasis added); *Nissan Motor Company v. Armstrong,* 145 S.W.3d 131, 139 (Tex. 2004) ("Whether a product was defective must be judged against the technological context existing at the time of its manufacture."); *Smith v. Aqua-Flo, Inc.,* 23 S.W.3d 473, 477 (Tex. App. – Houston [1st Dist.] 2000, pet. denied).

Consistent with Rule 402, Fed.R.Evid., many courts across the country have held that the Volvo documents in question are not discoverable in cases where the subject vehicle was manufactured before Volvo produced the XC90 in 2003. *See* Orders Protecting Volvo Documents from cases of *Hernandez v. Ford* (United States District Court for the Southern District of Texas, Corpus Christi Division, 2005); *Williams v. Michelin* (United States District Court, Middle District of Florida, Orlando Division, 2005); *Guasp v. Ford* (United States District Court for the Northern District of Florida, Gainesville Division, 2005), *Muth v. Ford* (United States District Court for the Western District of Texas, San Antonio Division, 2003); *Woodward v. Ford* (Superior Court of Laurens County, Georgia, 2005); *Kawaski v. Ford* (Circuit Court of State of Oregon, Klamath County, 2005), and; *Dutton v. Ford* (Superior Court of California, County of Yolo, 1004); copies attached as <u>Exhibit Q</u>.

In the present case, Plaintiffs allege that the roof structure of the 2000 Explorer is defective and they offer the Volvo Documents as proof of a reasonable alternative design that

11

was safer and economically feasible at the time the 2000 Ford Explorer left Ford's control. The subject Ford Explorer was manufactured and released for sale on May 10, 2000. *See* Invoice, attached as <u>Exhibit R</u>. Plaintiffs concede the 2003 XC90 was not available when the 2000 Explorer was designed and manufactured. Therefore, there is no dispute that Plaintiffs cannot present the Volvo XC90 as a reasonable alternative design because the XC90 was not in production at the time the subject 2000 Ford Explorer was manufactured.

Nevertheless, Plaintiffs argue that the Volvo Documents are relevant because, "[a]lthough Volvo did not introduce its 2003 XC90 sports utility vehicle until later 2002, the S80 technology from the 1990's and the testing was part of the XC90 development program" that Ford "gained access" to when it purchased Volvo in 1999. This argument fails because, regardless of the status of its development, the XC90 was not in production at the time the subject 2000 Explorer was manufactured. As such, the prototype technology and testing that led to the XC90's final production in model year 2003 is no more relevant than the XC90 itself is. In other words, if Ford's ability to meet the standards of the XC90 at the time the subject vehicle was manufactured is not relevant, then the prototype technology and development behind the XC90 is also not relevant.

Finally, many of the Volvo documents identified on Plaintiffs' exhibit list were not available at the time the subject Ford Explorer was manufactured on May, 10, 2000 – or the records are undated. Since this evidence did not exist before the subject vehicle left Ford's control, Ford could not have "gained access" to it. Such documents cannot be relevant and must be excluded.

Doc ID MENNB-123203
08423-071

## V.   THE VOLVO DOCUMENTS ARE INADMISSIBLE HEARSAY.

The Volvo Documents contain out of court statements, the substance of which is offered to prove the truth of the matter asserted. These statements are hearsay and they are unrelieved by any exception to the hearsay rule. They are therefore inadmissible as evidence under Rule 802, Fed.R.Evid., and must be excluded from trial. Volvo is a separate corporate entity from Ford. It is a foreign subsidiary that was not acquired by Ford until March 31, 1999. As a result, Plaintiffs have failed and are unable to establish any exception to the hearsay rule that would permit utilization of these documents under Rule 802.

## VI.   CONCLUSION

For the foregoing reasons, Defendant Ford Motor Company respectfully requests that this Court grant its Motion in Limine No. 12 and preclude Plaintiffs from entering into evidence, making any reference to, or entering any expert testimony based upon opinions derived from the Volvo Documents. Ford further requests such other and further relief as the Court deems appropriate.

Volvo documents designated as "confidential" pursuant to the terms of a protective order should not be shown to the jury or made public without adequate protection. Therefore, should this Court deny Ford's Motion in Limine No. 12, in whole or in part, Ford respectfully requests leave to file a Motion for Protective Order to govern the use of any Volvo documents at trial.

DATED this 5th day of October, 2005

        Respectfully submitted,

        THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: /s/ William L. Mennucci
William L. Mennucci, Esq.
State Bar No. 00788042
Michael W. Eady, Esq.
State Bar No. 06332400

701 Brazos Street
Suite 1500 Austin Centre
(512) 708-8200 Telephone
(512) 708-8777 Fax

-and-

Amy M. Samberg, Esq.
Matthew A. Goldstein, Esq.
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630
(520) 882-1200

Timothy O'Neill
SNELL & WILMER L.L.P.
1200 Seventeenth Street
Suite 1900, Tabor Center
Denver, Colorado 80202
TEL: 303.634.2000
FAX: 303.634.2020

Doc ID MENNB-123203
08423-071

David Prichard
Prichard, Hawkins McFarland & Young, L.L.P.
10101 Reunion Place
Suite 600
San Antonio, TX 78216
TEL: (210) 477-7401
FAX: (210) 477-7450

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

    I hereby certify by my signature below that a true and correct copy of the foregoing has been served on all counsel of record via certified mail on October 6, 2005 and electronic filing on this 5th day of October, 2005:

Tony Martinez, Esq.
Martinez, Barrera & Martinez, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520

Randolph Kimble Whittington, Esq.
Law Office of Randolph Kimble Whittington
2014 East Harrison Street
Harlingten, Texas 78550

Carla Saenz, Esq.
GRIFFITH SAENZ & HILL
1325 Palm Blvd # A
Brownsville, Texas 78520
(956) 541-2864 Telephone

**Attorneys for Plaintiffs**

_____
William L. Mennucci, Esq.

Doc ID MENNB-123203
08423-071